## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

<table>
<tr><td><strong>HDH GROUP, INC.,</strong></td><td>)<br>)</td><td></td></tr>
<tr><td><strong>Plaintiff,</strong></td><td>)<br>)</td><td></td></tr>
<tr><td><strong>vs.</strong></td><td>)<br>)</td><td><strong>Case No.: 2:24-cv-00988-WSS</strong></td></tr>
<tr><td><strong>UNITED STATES OF AMERICA,</strong></td><td>)<br>)</td><td></td></tr>
<tr><td><strong>Defendant.</strong></td><td>)<br>)</td><td></td></tr>
<tr><td>_____</td><td>)<br>)</td><td></td></tr>
<tr><td><strong>UNITED STATES OF AMERICA,</strong></td><td>)<br>)</td><td></td></tr>
<tr><td><strong>Counterclaim Plaintiff,</strong></td><td>)<br>)</td><td></td></tr>
<tr><td><strong>vs.</strong></td><td>)<br>)</td><td></td></tr>
<tr><td><strong>HDH GROUP, INC.,</strong></td><td>)<br>)</td><td></td></tr>
<tr><td><strong>Counterclaim Defendant.</strong></td><td>)</td><td></td></tr>
</table>

## MEMORANDUM OF LAW IN SUPPORT OF HDH GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS THE UNITED STATES COUNTERCLAIM

### INTRODUCTION

HDH Group, Inc., Plaintiff, respectfully requests that the Court, pursuant to Fed. R. Civ.

P. 56 ("Rule 56"), grant it summary judgment on its claim for the recovery demanded in its

Complaint, the return of $989,000 paid to the Defendant as a partially assessed fraud penalty.

Simultaneously, HDH Group, Inc., as Counterclaim Defendant, respectfully requests that the

Court, pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), dismiss the United States'

Counterclaim. Both the Motion to Dismiss the United States' Counterclaim and the Motion for

Summary Judgment on Plaintiff's claims may be granted at this early juncture in the proceedings

because the statutes governing the imposition of the penalty, that is the sole subject of this litigation, are unconstitutional.[1]

On June 27, 2024, the United States Supreme Court released its decision in *SEC v. Jarkesy*, 603 U.S. 109 (2024). In *Jarkesy*, the Supreme Court held that citizens must be afforded a right to jury trial without preconditions **before** a fraud penalty is sought by the United States. *Id.* at 125 (emphasis added).

Following the holding in *Jarkesy*, Defendant unconstitutionally denied Plaintiff its rights by assessing the tax shelter promoter penalty and requiring it to pay fifteen percent of the assessed penalty under §§ 6700 and 6703 prior to allowing Plaintiff the right to a trial by jury. Any jury trial that could occur moving forward as a result of Plaintiff's Complaint in this case would be too late, as *Jarkesy* required the IRS to give Plaintiff a jury trial **before** imposing a penalty.

## PROCEDURAL POSTURE

On July 9, 2025, Plaintiff, HDH Group, Inc., timely filed its Complaint in this Court seeking a refund of penalties that it paid to the United States as a consequence of the assessment of the of the tax shelter promoter penalty imposed by 26 U.S.C. § 6700 ("§ 6700"). Under 26 U.S.C. § 6703(c)(1) ("§ 6703(c)(1)"), Plaintiff was required to pay fifteen percent (15%) of the penalty under § 6700 prior to bringing this suit. Plaintiff paid the amount required by § 6703(c)(1). In the Complaint, Plaintiff seeks recovery of the amount paid, $989,000, which equates to the total penalties paid by Plaintiff for tax years 2013 through 2018 under § 6700. *See* Pl.'s Compl., ECF No. 1.

---

[1] Because the argument justifying the motion to dismiss and motion for summary judgment are identical, Plaintiff is filing only this one brief in support of each of the motions.

Subsequently, on November 8, 2024, Defendant, United States, filed Defendant's Answer and Counterclaim (the "Answer") in response to Plaintiff's Complaint. The Answer included a Counterclaim against Plaintiff requesting the balance of the eighty five percent (85%) penalty assessment that was not paid by Plaintiff (the "Counterclaim").

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to present the defense of failure to state a claim upon which relief can be granted through a motion to dismiss. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, plaintiff (in this case, the counterclaim Plaintiff United States of America) is obligated to provide reasons that it is entitled to relief beyond labels, mere legal conclusions, and/or a list of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The facts alleged "must be enough to raise a right to relief above the speculative level." *Id.* (citing 5 C. Wright & Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). Further, the plaintiff's complaint must have more than facts "'that merely create a suspicion [of] a legally cognizable right of action'." *Id.*

Federal Rule of Civil Procedure 56 requires a court to grant summary judgment when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56[2]. Once a party moving for summary judgment has shown that there are no genuine issues of material fact, the burden shifts to the nonmoving party to specifically show genuine factual issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Additionally, when

---

[2]In the instant case, the Motion for Summary Judgment is timely despite the early stage of the case because this motion is being filed at least thirty days before the close of discovery under Rule 56, which is permissible under Rule 56(b).

the contentions in a case raise questions of law, a court can utilize a motion for summary

judgement to decide the questions of law. *Dupree v. Younger*, 598 U.S. 729, 737 (2023).

## ARGUMENT

Under the recent United States Supreme Court decision in *SEC v. Jarkesy*, 603 U.S. 109

(2024), the imposition of the Promoter Penalty against Plaintiff without the opportunity for

Plaintiff to have a jury trial violated Plaintiff's constitutional rights under Article III and the

Seventh Amendment of the Constitution of the United States. U.S. Const. art. III; U.S. Const.

amend. XII. Plaintiff has the constitutional right to a jury trial prior to the imposition by the

government against Plaintiff of the § 6700 tax shelter promoter fraud penalty ("Promoter

Penalty"). The assessment, collection, and jurisdictional procedures of §§ 6703(c) and 7422(a),

which control access to a jury before the United States District Court, require a prepayment of

the Promoter Penalty prior to filing suit. Therefore, the statutes are unconstitutional.

In the instant case, even if all the facts contained in the Counterclaim are deemed true,

they simply cannot override the unconstitutionality of §§ 6700 and 6703. Sections 6700 and

6703 do not meet the constitutional demands laid out by the Supreme Court in *Jarkesy* and

therefore require that Plaintiff's motion to dismiss be granted. Similarly, Plaintiff is entitled to

summary judgment on all its counts in the Complaint because there is no genuine dispute of

material fact and Plaintiff is entitled to judgment as a matter of law for the same reason.

The United States admitted in its Answer to paragraph 21 of the Complaint that Plaintiff

gained entry to the United States District Court solely by reason of § 6703(c). Def.'s Answer and

Countercl., ECF No. 16. Section 6703(b) and (c) provide as follows:

> **(b) Deficiency procedures not to apply** - Subchapter B of chapter 63
> (relating to deficiency procedures) shall not apply with respect to the
> assessment or collection of the penalties provided by sections 6700, 6701,
> and 6702.

**(c) Extension of period of collection where person pays 15 percent of penalty**

**(1) In general** - If, within 30 days after the day on which notice and demand of any penalty under section 6700 or 6701 is made against any person, such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution of a proceeding begun as provided in paragraph (2). Notwithstanding the provisions of section 7421(a), the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court. Nothing in this paragraph shall be construed to prohibit any counterclaim for the remainder of such penalty in a proceeding begun as provided in paragraph (2).

**(2) Person must bring suit in district court to determine his liability for penalty**

If, within 30 days after the day on which his claim for refund of any partial payment of any penalty under section 6700 or 6701 is denied (or, if earlier, within 30 days after the expiration of 6 months after the day on which he filed the claim for refund), the person fails to begin a proceeding in the appropriate United States district court for the determination of his liability for such penalty, paragraph (1) shall cease to apply with respect to such penalty, effective on the day following the close of the applicable 30-day period referred to in this paragraph.

28 U.S.C. §§ 6703(b), 6703(c).

Accordingly, under both the Rule 56 and Rule 12(b)(6) standards, all the facts needed for the Court to render a ruling on the law are before the Court and a ruling on both motions at this time is proper.

**BACKGROUND OF THE PROMOTER PENALTY, CALCULATION OF THE PENALTY AMOUNT, METHOD OF GOVERNMENT ENFORCEMENT AND GAINING JURISDICTION TO UNITED STATES DISTRICT COURT**

The Promoter Penalty was originally enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324 (1982), as a deterrent to taxpayers overstating deductions and incorrectly omitted items of income. Sections 6700(a) and 6703(a) of 26 U.S.C. have remained almost unchanged since their enactment in 1982, except for the

calculation of the penalty amount. The Promoter Penalty is imposed on any person (promoters, salespersons, marketers, and their assistants) who (1) (A) organizes (or assists in the organization of) (i) a partnership or other entity, (ii) any investment plan or arrangement, or (iii) any other plan or arrangement; or (B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph A, and (2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale)--(A) a statement regarding the allowability of any deduction or credit, the excludability of any income, or the securing of any tax benefit by holding an interest in the entity or participating in the plan or arrangement, which the person knows, or has reason to know, is **false or fraudulent** as to any material matter. 26 U.S.C. § 6700 (emphasis added).

Thus, the following five specific elements must be present for a finding of an IRC § 6700 violation: (1) There must be a person; (2) The person must organize (or assist in the organization of) or participate (directly or indirectly) in the sale of a partnership entity, investment plan or arrangement, or any other plan or arrangement; (3) The person (or assistant) must make a false or fraudulent statement of the tax benefit (deduction, credit, income exclusion) for which the arrangement or plan is designed to provide; (4) The person must know or have reason to know that the statement is false; and (5) The statement must be made regarding a material matter. 26 U.S.C. § 6700. The Promoter Penalty under § 6700(a) is fifty percent (50%) of the gross income earned from the activity. In this case, the IRS determined that the gross income amount was $13,128,897 and thus imposed the penalty amount against HDH Group, Inc. of $6,564,449 for the tax years ended December 31, 2013, through December 31, 2018. *See* Pl.'s Compl., ECF No. 1, paragraphs 14-20. The Plaintiff timely paid the required 15% of $6,564,449, which totaled $985,667. Pl.'s Compl., ECF No. 1, paragraphs 14, 22.

The Promoter Penalty may be challenged only by the special claim for refund procedures pursuant to IRC § 6703(c). IRC 6703(c)(1) allows the promoter to pay at least fifteen percent (15%) of the amount of the assessed penalty within thirty days of the assessment and file an administrative claim for refund ("Claim for Refund") of the amount paid using Form 6118, *Claim for Refund of Tax Return Preparer and Promoter Penalties* within that same thirty-day time limit. The Claim for Refund is a completely administrative procedure of the IRS. It does not provide for any type of hearing or official proceeding whereby the promoter can offer evidence in a neutral forum or be heard by any fact finder. The decision regarding whether to grant the refund is in the sole discretion of the IRS.

Once the § 6700 penalty was assessed, the Plaintiff then had two methods available to obtain review in the United States District Court. The first option was to proceed under § 6703(c)(2), pay fifteen percent of the assessment, file a claim for refund of the penalty paid, and then, if the claim was denied, file an action in the United States District Court for a refund within 30 days of the claim denial. This was the path chosen by the Plaintiff. If a party chooses to proceed under § 6703(c), then the IRS is prohibited from collecting the balance of the penalty owed until the case is finally determined. 26 U.S.C. § 6703(c)(2).

The only other path to the United States District Court is significantly more difficult and, requires full payment of the assessed penalty. In *Humphrey v. United States*, 854 F.Supp.2d 1301 (N.D. Ga. 2011), the court found that penalties assessed under § 6700 are divisible so that each individual sale is treated as a separate transaction. The holding was subsequently codified by Congress in 26 U.S.C. § 6700(a)(2)(b). Under this analysis, the taxpayer satisfies the full payment rule upon whom a § 6700 penalty has been assessed, if it determines the amount of tax associated with one of its sales and pays the tax associated with such sale. *Humphrey*, 854

F.Supp.2d at 1304. The taxpayer then must file a claim for refund, and subsequently, after either six months without an answer, or within two years of a denial, file suit in the United States District Court under the provisions of 26 U.S.C. §§ 6532(a) and 7422(a).

§ 7422(a) & (i) provide as follows:

**(a) No suit prior to filing claim for refund**
No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

**(i) Special rule for actions with respect to tax shelter promoter and understatement penalties**
No action or proceeding may be brought in the United States Court of Federal Claims for any refund or credit of a penalty imposed by § 6700 (relating to penalty for promoting abusive tax shelters, etc.) or § 6701 (relating to penalties for aiding and abetting understatement of tax liability).

26 U.S.C. §7422(a), (i) ("§ 7422").

Reviewing a claim for refund is completely an administrative procedure of the IRS. The review process does not provide for any type of hearing or official proceeding whereby the alleged promoter can offer evidence in a neutral forum or be heard by any fact finder. The decision regarding whether to grant the refund is in the sole discretion of the IRS.

The practical problem with § 7422(a) is that after a taxpayer pays the severable portion of the penalty, the IRS then moves forward to collect the full amount of penalty due. As an example, assume that the IRS has assessed a full penalty amount of one million dollars against a taxpayer. The taxpayer pays the required portion of one transaction amount (in this example, $50,000) and then files a claim for refund for that $50,000. Even though the taxpayer's claim for refund is pending, the IRS can immediately attempt to collect the remaining balance of

$950,000. Thus, the filing of a claim for refund, even when filed under the protection of § 6703(c)(1), does not stop the IRS from collecting the penalty owed.

This was forcefully shown by the IRS to the Plaintiff. Only four months after Plaintiff timely paid fifteen percent of the IRS's penalty assessment and filed a claim for refund under § 6703(c)(1), and while Plaintiff awaited the required 6 months for a determination on its claim for refund, the IRS Collection Division issued to Plaintiff notices of levy to collect the entire balance of penalty. See Concise Statement of Material and Undisputed Facts, paragraph 4; Pl.'s Compl., ECF No. 1, paragraphs 22, 23; Affidavit of Evan Muffly, paragraph 4. Collection activity was only held in abeyance after the Plaintiff was able to prove that it met the § 6703(c) statutory requirements. Even then, the Plaintiff had to provide proof to the Collection Division that Plaintiff had timely filed this case in the United States District Court. The Collection Division reaffirmed that it was going to seek to enforce collection of the entire remaining balance due if Plaintiff did not provide the necessary proof.

Thus, jurisdiction granted under the second option requires payment in full of the § 6700 penalty, even if one does gain access to an Article III court.

The § 6700 penalty may be assessed at any time as there is no statute of limitations for the government to assert a claim against a taxpayer under the United States Tax Code. In this case, the audit commenced in September 2015 and the assessment was made in November 2023. *See* Concise Statement of Material and Undisputed Facts, paragraphs 1-2; Pl.'s Compl., ECF No. 1, paragraphs 10-15, 24-25, 32; Def.'s Answer and Countercl. ECF No. 16, paragraph 29.

### THE FRAUD ELEMENT OF THE § 6700 PENALTY

The key requirement under § 6700(a)(2)(A) is that a person make a false or fraudulent statement about the tax benefit to be derived. The requirement of a false or fraudulent statement

places the Promoter Penalty squarely within *Jarkesy* parameters. The Court in *Jarkesy* held that

when the U.S. Securities and Exchange Commission (the "SEC") sought civil penalties against a

defendant for securities fraud, the Seventh Amendment entitled the defendant to a jury trial

before a penalty could be imposed. *SEC v. Jarkesy*, 603 U.S. 109 (2024). In *Jarkesy,* the

government sought to impose civil penalties without a jury trial through one of its administrative

agencies (the SEC). Similarly, in this case, the government imposed a civil penalty for fraud

against Plaintiff without a jury trial through an administrative agency, the IRS.

The SEC remedy for securities violations, like those at issue in *Jarkesy*, and the

procedures for enforcing those remedies closely parallel the IRS remedies and procedures for

violations by tax shelter promoters that are at issue in the case at bar.

Both the SEC and the IRS can remedy violations by taxpayers through imposing civil

penalties. As set forth in *Jarkesy*, historically, the SEC could only enforce civil penalties in

federal court (with the exception of cases against registered entities). *Id.*; *See also* Insider

Trading Sanctions Act of 1984, §2, Pub. L. No. 98-376, 98 Stat. 1264; Securities Enforcement

Remedies and Penny Stock Reform Act of 1990, §§101, 201–202, Pub. L. No. 101-429, 104 Stat.

932–933, 935–938. However, in 2010, Congress passed the Dodd-Frank Wall Street Reform and

Consumer Protection Act (Dodd-Frank Act), Pub. L. No. 111-203, 124 Stat. 1376 (2010). The

Dodd-Frank Act permitted the SEC to impose civil penalties in federal court or through its own

in-house proceedings. Dodd-Frank Act, §929P(a), Pub. L. No. 111-203, 124 Stat. 1862–1864

(codified in relevant part as amended at 15 U. S. C. §§ 77h–1(g), 78u–2(a), 80b–3(i)(1));

*Jarkesy*, 603 U.S. at 109.

Important to the holding in *Jarkesy* was the fact that unlike federal court proceedings,

SEC in-house proceedings have no jury as required by the Seventh Amendment, are not presided

10

over by an impartial Article III judge, and are not governed by the Federal Rules of Evidence and the ordinary rules of discovery. *Jarkesy*, 603 U.S. at 125, 135-136 (citing U.S. Const. art. III, § 1 and U.S. Const. amend. VII).

Although prior to *Jarkesy* the SEC was not required to file an action in federal court to enforce a civil fraud penalty, an alleged violator could utilize the SEC in-house forum to dispute a penalty, even if this forum was stacked in favor of the SEC. The SEC at least maintained a forum outside of federal court where the purported violator could mount a defense without pre-payment of the proposed penalty. For purported tax-shelter promoters, not only is the IRS free to impose the Promoter Penalty without a federal court proceeding (unlike the SEC rules), the IRS has no in-house forum (like the SEC in-house forum) available prior to the imposition of the Promoter Penalty. To make matters worse for the alleged promoter, the only way the promoter can get to federal court is to pre-pay a substantial portion of the already assessed penalty under § 6703(c)(2) or, as explained above, to pay all of the penalty under §§ 6532(a) and 7422(a).

The rules for assessment and collection of the Promoter Penalty are governed by and described in 26 U.S.C. §§ 6703(b) and (c). There are no pre-assessment appeal rights (deficiency proceedings) for the Promoter Penalty. Section 6703(b) specifically states that deficiency procedures used for income and other types of taxes and penalties do not apply to the assessment or collection of the Promoter Penalty. Thus, the IRS will assess the Promoter Penalty and send the promoter a demand for payment without first providing a notice of deficiency or an IRS in-house forum for adjudication prior to assessment, let alone a forum in federal court.

Here, Plaintiff was not afforded a right to use the Internal Revenue Service Office of Appeals ("Appeals Office"). This branch of the IRS operates independently in the IRS, separate and apart from the audit division and the IRS internal legal counsel, IRS District Counsel. The

11

main function of the Appeals Office is to attempt to settle tax disputes between the IRS and

taxpayers in an informal, independent forum. There are no witnesses or discovery and the IRS

agents who conduct the audit do not participate. The Appeals Office's sole function is to review

the matter prior to any litigation and to attempt to settle the matter based solely upon the hazards

of litigation. The IRS is able to dispense a large majority of its contested audits through the

successful functioning of the Appeals Office.

Further, there is no right of review of the assessment in United States Tax Court. In

normal deficiency proceedings, the Tax Court provides a forum for review prior to assessment

and payment of a tax or penalty. Unlike many other contested audits and penalties, there is no

pre-assessment forum for Promoter Penalties, and after assessment, there is no pre-payment

forum to dispute the imposition of the Promoter Penalty. These are exactly the circumstances that

the Supreme Court found untenable in *Jarkesy*, 603 U.S. at 112-113.

In *Jarkesy*, the Court examined the straightforward question whether the Seventh

Amendment entitles a defendant to a jury trial when the SEC seeks civil penalties against him for

securities fraud. *Id.* The Court analyzed the question by following the approach set forth in

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) and *Tull v. United States*, 481 U.S. 412

(1987). The threshold issue in *Jarkesy* was whether the action implicated the Seventh

Amendment. The Court answered in the affirmative, stating that the SEC's antifraud provisions

replicated common law fraud, and it has been well established that common law claims must be

heard by a jury. *Jarkesy*, 603 U.S. at 113. Like the SEC's antifraud provisions, the IRS antifraud

provisions also replicate common law fraud.

Because the action in *Jarkesy* implicated the Seventh Amendment, the Court then

considered whether the "public rights" exception to Article III jurisdiction applied. *Id.* at 112.

The "public rights" exception has been held to permit Congress to assign certain matters to agencies for adjudication even though such proceedings would not afford the right to a jury trial. *Id.* The Court found that the "public rights" exception did not apply to *Jarkesy* because the SEC antifraud provisions did not fall within any of the distinctive areas involving governmental prerogatives where a matter may be resolved outside of an Article III court, without a jury. *Id.* The Court definitively stated that the Seventh Amendment therefore applied, and a jury trial is required. *Id.* (citing U.S. Const. amend VII).

The text of the Seventh Amendment states:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S. Const. amend VII.

The Seventh Amendment right to a jury trial covers all actions at common law (rather than actions in equity, admiralty, or maritime law) and extends to a particular statutory claim if the claim is "'legal in nature.'" *Jarkesy*, 603 U.S. at 126 (quoting *Granfinanciera*, 492 U.S. at 53). However, the United States Supreme Court stated that whether that claim is statutory was immaterial to its analysis in *Jarkesy* because an action by the government to recover civil penalties under a statutory provision is a type of action in debt requiring trial by jury. *Jarkesy*, 603 U.S. at 122 (citing *Tull*, 481 U. S., at 414-5, 417–25). In *Tull*, the Court instructed courts to determine whether a suit is legal in nature by considering the cause of action and the remedy it provides. *Jarkesy*, 603 U.S. at 122 (citing *Tull*, 481 U. S., at 414-5, 417–25). In *Tull*, the Court also concluded that because some causes of action sound in both law and equity, the remedy was the "more important" consideration. *Jarkesy*, 603 U.S. at 123 (citing *Tull*, 481 U. S., at 421) (brackets and internal quotation marks omitted).

The remedy for fraud sought by the SEC in *Jarkesy* was a civil penalty in the form of monetary relief. It is the same remedy for fraud sought by the IRS in this case pursuant to the Promoter Penalty. Monetary relief is a common law remedy. *Jarkesy*, 603 U.S. at 123. Monetary relief is a legal remedy if it is designed to punish or deter the wrongdoer. *Id*. Only courts of law issue monetary penalties to "punish culpable individuals." *Id*. (citing *Tull,* 481 U.S., at 422). Monetary damages that are designed solely to "restore the status quo" are not a legal remedy. *Id*. Using the principle that monetary relief sought to punish rather than restore the status quo, the Court recognized that "'civil penalt[ies are] a type of remedy at common law that could only be enforced in courts of law.'" *Jarkesy*, 603 U.S. at 123 (citing *Tull,* 481 U.S., at 422). In other words, a civil penalty that serves <u>solely</u> to compensate the government has a remedial purpose, while a civil penalty that serves another purpose (even if it also has a remedial purpose) is legal in nature and must be enforced in a court of law.

In *Jarkesy*, the Court reviewed the six statutory factors upon which the Securities Exchange Act and Investment Advisors Act based their civil penalties: (1) whether the alleged misconduct involved fraud, deceit, manipulation, or deliberate or reckless disregard for regulatory requirements; (2) whether it caused harm; (3) whether it resulted in unjust enrichment, accounting for any restitution made; (4) whether the defendant had previously violated securities laws or regulations, or had previously committed certain crimes; (5) the need for deterrence; and (6) other "'matters as justice may require.'" *Jarkesy*, 603 U.S. at 123 (citing 15 U.S.C. §§78u–2(c), 80b–3(i)(3)). After applying these factors to the facts, the Court found that the relevant SEC civil penalties concentrated on the need to punish *Jarkesy*, not on the need to restore the status quo to his victims. Therefore, the Court found that the civil penalties were legal rather than equitable. *Jarkesy,* 603 U.S. at 124.

14

The five specific elements that must be present to find a § 6700 violation, focus on the "bad" acts of the alleged promoter, and most importantly, a false or fraudulent statement made by the person who knows or had reason to know that the statement was false. Those elements indicate that the Promoter Penalty is sought as a punishment, not as a need to restore the status quo to anyone who was harmed by the actions of the promoter. Unlike the six SEC factors listed in *Jarkesy*, the Promoter Penalty factors do not include the element of causing harm and do not include accounting for any restitution made by the wrongdoer. Furthermore, there is no obligation for the Government to use any of the penalty monies collected to repay those who were harmed. Given that the Promoter Penalty elements do not even require a person to cause harm, nor do the elements create any obligation to compensate or reimburse those who were harmed, there is no way that the Promoter Penalty can be characterized as an attempt to restore the status quo to those who were harmed. Therefore, it logically follows that the Promoter Penalty is a legal remedy designed to punish the promoter which requires a jury trial prior to being assessed, rather than an equitable remedy.

The United States Supreme Court in *Jarkesy* also considered the criteria to determine the size of the penalty. 603 U.S. at 124. The size and criteria of the Promoter Penalty indicate that penalty is a punitive measure against the promoter. Currently, the Promoter Penalty is a draconian 50 percent of the gross income derived from the activity. The higher the gross income, the higher the penalty amount. Thus, a taxpayer who did not obtain any "net income" is still subject to this enormous penalty. The Internal Revenue Code does not contain any other provisions which impose such onerous penalties. The penalty amount is based purely on two items: the allegations of the "bad acts" outlined in the five elements necessary to impose the Promoter Penalty and the gross income derived therefrom. The penalty amount is not remotely

related to restoring the status quo of those who are harmed. Again, under this analysis, the only logical conclusion is that the Promoter Penalty is a legal remedy designed to punish the promoter which requires a jury trial prior to being assessed, rather than an equitable remedy which does not require a jury trial.

The Court confirmed its conclusion that a jury trial was necessary before assessment of the penalty by examining the relationship between the elements of fraud in the SEC case and the elements of common law fraud. *Jarkesy*, 603 U.S. at 123-4. The Court found that the close relationship between federal securities law fraud and common law fraud confirmed that the securities fraud penalty was legal in nature. *Id*. That same close relationship exists between the IRS Promoter Penalty that the Government seeks to impose on HDH and common law fraud.

The five specific elements that must be present for a finding of an IRC § 6700 violation include several of the same elements that are necessary to establish common law fraud: (1) a false or fraudulent statement; (2) involving a material matter; (3) that the person making the statement knows or should have known is false or fraudulent. 26 U.S.C. §6700. The common law elements of fraud are virtually a perfect match with the Promoter Penalty elements, except the Promoter Penalty does not consider the victims of the fraud. Under Pennsylvania law, a plaintiff must plead the following elements to establish a cause of action for common law fraud: 1) a misrepresentation, 2) a fraudulent utterance thereof, 3) an intention by the maker that the recipient will thereby be induced to act, 4) justifiable reliance by the recipient upon the misrepresentation, and 5) damages to the recipient as a proximate result. *Rao v. Sleep Number Bed, Inc.*, No. 2:23-cv-2150, 2024 WL 4817375 (W.D. Pa. November 18, 2024), citing *Scaife Co. v. Rockwell-Standard Corp.*, 285 A.2d 451, 454 (Pa. 1971). Both the Promoter Penalty in this case and common law fraud target the same basic conduct.

The United States Supreme Court in *Jarkesy* examined the close relationship between the conduct targeted by the SEC and the conduct targeted by common law fraud and concluded that the basic conduct targeted was the same for each—misrepresenting or concealing material facts. *Jarkesy*, 690 U.S. at 125. The Court found that the very use by Congress of the word "fraud" itself in securities legislation incorporated common law fraud into securities law, creating an enduring link between them. *Id*. Importantly, the Court found that this close relationship between federal securities fraud and common law fraud confirmed that the action in *Jarkesy* was "legal in nature" *Id*.

The legislative history of the Promoter Penalty establishes that Congress intended to incorporate the common law meaning of fraud into the statutory provision. Staff of Joint Comm. on Tax'n, 97th Cong. 2d Sess., General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982 ("Bluebook"), at 210–212 (Comm. Print 1982). The *Jarkesy* case teaches that when Congress uses a term with a well-established common law meaning, Congress meant to incorporate that meaning into the statute.

## CONCLUSION

Sections 7422(a) and 6703(c)(1) do not provide the Plaintiff with a trial by jury before a penalty is imposed as mandated by the Seventh Amendment to the United States Constitution and the United States Supreme Court in *SEC v. Jarkesy*, 603 U.S. 109 (2024). Accordingly, these statutes are unconstitutional and the Plaintiff's Motion to Dismiss under Rule 12(b)(6) and Motion for Summary Judgment under Rule 56 should be granted.

Respectfully Submitted,

/s/ Ralph Minto, Jr.
Ralph Minto, Jr.
PA Id. No. 51746

David B. Spear
PA Id. No. 62133

Michelle L. Kopnski
PA Id. No. 52096

Minto Law Group, LLC
Stone Quarry Crossing
811 Camp Horne Road, Suite 320
Pittsburgh, PA 15237
412-201-5525
rminto@mintolaw.com
dspear@mintolaw.com
mkopnski@mintolaw.com

Counsel for Plaintiff