**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HDH GROUP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 2:24-CV-00988 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Counter-Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| HDH GROUP, INC., | ) |
| | ) |
| Counterclaim Defendant. | ) |
| _____ | ) |

## <u>APPENDIX</u>

Defendant/Counterclaim Plaintiff the United States submits this appendix in connection with its response to Plaintiff/Counterclaim Defendant HDH's Concise Statement of Material Facts in support of its Motion for Summary Judgment.

1. Exhibit A: Declaration of IRS Supervisory Revenue Officer Mary Bailey

2. Exhibit B: Plaintiff's Complaint (ECF 1)

3. Exhibit C: United States' Answer and Counterclaim (ECF 16)

//

//

Dated: April 25, 2025

Respectfully submitted,

 */s/* Christopher Rajotte
ELISABETH K. KRYSKA
Maryland Bar No. 2211280290
CHRISTOPHER RAJOTTE
Florida Bar No. 107742
ALAN D. BAILEY
Kentucky Bar No. 100427
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-6717 (Kryska)
          (202) 514-6491 (Rajotte)
          (202) 514-6075 (Bailey)
Fax: (202) 514-6770
Elisabeth.K.Kryska@usdoj.gov
Christopher.Rajotte@usdoj.gov
Alan.Bailey@usdoj.gov

# Appendix Exhibit A

# Declaration of IRS Supervisory Revenue Officer Mary Bailey

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HDH GROUP, INC.,

      Plaintiff,

      v.

UNITED STATES OF AMERICA,

      Defendant.

_____

UNITED STATES OF AMERICA,

      Counter-Claimant,

      v.

HDH GROUP, INC.,

      Counterclaim Defendant.

_____

Case No. 2:24-CV-00988

## <u>DECLARATION OF MARY BAILEY[1]</u>

I, Mary Bailey, declare:

1.     I am over 18 years old and competent to serve as a witness.

---

[1] The name Mary Bailey is not my real name. It is a pseudonym that I use in my official capacity as an employee of the IRS. This pseudonym—used for privacy and safety reasons—has been registered with the IRS, in accordance with IRS procedures (Internal Revenue Manual 10.5.7), and all IRS procedures governing the use of pseudonyms have been followed.

1

2.      I am employed by the Internal Revenue Service ("IRS") as a supervisory revenue officer of the Abusive Tax Avoidance Transactions (ATAT) group.  My post of duty is Florence, Kentucky.

3.      I have been a supervisory revenue officer since January 2023.  From January 2023 to August 2024, I was a supervisory revenue officer of a general program revenue officer group. Since August 2024, I have been a supervisory revenue officer for the ATAT group.

4.      Prior to that, from 2009 to January 2023, I worked as a revenue officer for the IRS. Revenue officers are the primary IRS collection agents.

5.      Between August 2024 and March 2025, Revenue Officer Cynthia Jones ("RO Jones") worked as a revenue officer in the group which I currently supervise.

6.      Revenue officers and their supervisors use the IRS's Integrated Collection System (ICS) to record collection activity on a case-by-case basis, including documentation of contacts with taxpayers or their representatives, the issuance or receipt of correspondence to or from taxpayers, and collection actions taken by a revenue officer in furtherance of a particular case.

7.      Through ICS, I have access to and personal knowledge of the records of cases worked by revenue officers within the group I supervise, including the cases worked by RO Jones.

8.      Based on my review of the ICS history, in June 2024, RO Jones was assigned to the collection of the Internal Revenue Code ("IRC") § 6700 penalties assessed against HDH Group, Inc. for the 2013 to 2018 tax years.

9.      Additionally, in my role as supervisory revenue officer, I have access to and personal knowledge of HDH's account transcripts for the IRC § 6700 penalty assessments, as well as information included in the IRS's Integrated Data Retrieval System (IDRS).  IDRS serves

as the central repository of information regarding actions taken by the IRS with respect to a taxpayer's account.

10.    From my review of the IDRS information pertaining to HDH's penalty assessments, CP504B notices were sent to HDH with respect to the 2013 to 2018 penalty assessments in April 2024.

11.    My review of the ICS history related to HDH's 2013 to 2018 § 6700 penalty assessments shows that the first activity date was May 11, 2024.  That date indicates the date HDH's case was assigned to the collection group I currently supervise, and therefore, the CP504B notices issued by HDH prior to that date were not generated by the collection group I supervise.

12.    Based on my review of the IDRS, as well as my knowledge and experience, any collection related notices issued to HDH prior to the date the case was assigned to a collection group could only have been computer-generated at an IRS service center, and would have been sent as part of a large batch of communications sent automatically by the IRS to different taxpayers.

13.    Based on my review of the ICS history, in June 2024, RO Jones spoke by phone with HDH's power of attorney, Ralph Minto.

14.    Based on my review of the ICS history, after speaking with HDH's power of attorney, RO Jones agreed to defer the filing of a notice of federal tax lien (NFTL) related to the penalty assessments until August 23, 2024.

15.    Based on my review of the ICS history and HDH's penalty account transcripts, on or about July 19, 2024, after receiving confirmation that HDH had filed this case in the United States District Court for the Western District of Pennsylvania, RO Jones placed HDH's accounts

for the 2013 to 2018 penalty assessments in uncollectible status, thereby stopping collection activity on those accounts.

16.     Based on my review of the ICS history and HDH's penalty account transcripts, in August 2024, a litigation hold was placed on HDH's accounts for the 2013 to 2018 penalty assessments.  No collection activity will take place with respect to these penalties unless and until the litigation holds are lifted.

17.     Based on my review of the ICS history and IDRS, no further collection-related correspondence was sent to HDH with respect to the penalty assessments after the April 2024 CP504B notices.

18.     To my understanding and based on my experience, the IRS generally may not levy a taxpayer's property until a Final Notice of Intent to Levy (IRS Letter 1058) advising the taxpayer of its right to a collection due process (CDP) hearing has been issued and the period in which the taxpayer may file a request for a CDP hearing has expired.  Other than with respect to a few, discrete types of property (e.g., a state or federal tax refund), or in certain narrow circumstances (e.g., a jeopardy levy), any notice of intent to levy received by a taxpayer which did not advise the taxpayer of its right to request a CDP hearing could not have resulted in a levy of the taxpayer's property.

19.     Based on my review of the ICS history and IDRS, RO Jones did not serve a Final Notice of Intent to Levy on HDH advising HDH of its CDP rights with respect to HDH's penalty assessments.

20.     Based on my review of the ICS history and IDRS, RO Jones did not file a Notice of Federal Tax Lien with respect to HDH's penalty assessments.

Pursuant to 28 U.S.C. § 1746, I declare under penalties of perjury that the foregoing is true and correct.

Executed this __25__ day of April, 2025 in Florence, Kentucky.

_____
Mary Bailey

Appendix Exhibit B

Plaintiff's Complaint (ECF 1)

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HDH GROUP, INC.,** | ) | Civil Acton No.: |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA and** | ) | |
| **INTERNAL REVENUE SERVICE,** | ) | **Jury Trial Demanded** |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

## I.     INTRODUCTION

Plaintiff, HDH Group, Inc. ("HDH" or "Plaintiff"), brings this civil action for refund of its partial payment of penalties pursuant to 26 U.S.C. § 6703(c)(1) that Defendant United States of America, through its agency, Defendant Internal Revenue Service (the "IRS"), improperly assessed against it for tax years 2013–2018 pursuant to 26 U.S.C. § 6700 (the "IRC § 6700 Penalty"). Plaintiff also seeks a finding that the penalties in the total amount of $6,564,449 were improperly assessed against Plaintiff for its role in operating a captive insurance program for its clients, a part of which involved providing advice and assistance to its clients in establishing captive insurance companies pursuant to 26 U.S.C. § 831(b).

## II.     PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff, HDH, is a corporation organized under the laws of the Commonwealth of Pennsylvania with an address of 210 Sixth Avenue, 30th Floor, Pittsburgh, PA 15222.  The last four digits of its employer identification number are 8002.

2.    Defendants are the United States of America and its agency, the IRS (hereinafter sometimes referred to as "Defendants" or "Government"). The IRS is the revenue service for the United States federal government, which is responsible for collecting U.S. federal taxes and administering the Internal Revenue Code (the "IRC"), the main body of federal statutory tax law.

3.    This is a civil action against the United States for a refund of amounts paid to the IRS pursuant to 26 U.S.C. § 7422(a) as required by the improper determination by the IRS that Plaintiff is liable for the IRS § 6700 Penalty.

4.    This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1340, and 1346(a)(1).

5.    Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1402 (a)(2) because this is a civil action against the United States pursuant to 28 U.S.C. § 1346(a) and Plaintiff is a corporation with its principal place of business located in Pittsburgh Pennsylvania.

### III.    STATEMENT OF CLAIM

6.    Plaintiff is in the business of selling, designing, operating, implementing, and managing insurance and other products, including until the end of 2018, the operation of a captive insurance program.

7.    At all times during the years 2013-2018, Plaintiff properly advised and assisted its clients in establishing captive insurance companies pursuant to 26 U.S.C. § 831(b).

8.    Captive insurance companies have been explicitly encouraged and promoted by Congress by conferring upon them favorable tax treatment pursuant to 26 U.S.C. § 831(b).

9.     The IRS did not issue any guidance in the form of treasury regulations regarding the formation or operation of captive insurance companies or any guidance on what would be considered insurance for federal income tax purposes.

10.    To the present time, the IRS has not provided such guidance.

11.    At the time Plaintiff began managing captives under its captive program, the only IRS guidance in existence was Revenue Ruling 2002-89.

12.    Revenue Ruling 2002-89 set forth the requirements for a captive insurance arrangement to constitute insurance for federal income tax purposes.

13.    All captives managed by Plaintiff met the requirements of Revenue Ruling 2002-89 to constitute insurance for federal income tax purposes.

14.    This action arises under 26 U.S.C. § 6700 for recovery of $989,000 ($166,000, $229,000, $215,000, $229,000, $106,000, and $44,000) for tax years 2013, 2014, 2015, 2016, 2017, and 2018, respectively), in total penalties paid by Plaintiff and collected by Defendants pursuant to the assessment by Defendants of the 26 U.S.C. § 6700 penalty (the "IRC § 6700 Penalty") for each of those tax years.

15.    By Letter dated November 13, 2023, the IRS asserted the IRC § 6700 Penalty against Plaintiff in the amount of $1,103,515 for tax year 2013.

16.    By Letter dated November 13, 2023, the IRS asserted the IRC § 6700 Penalty against Plaintiff in the amount of $1,523,539 for tax year 2014.

17.    By Letter dated November 13, 2023, the IRS asserted the IRC § 6700 Penalty against Plaintiff in the amount of $1,427,367 for tax year 2015.

18.    By Letter dated November 13, 2023, the IRS asserted the IRC § 6700 Penalty against Plaintiff in the amount of $1,524,803 for tax year 2016.

19.     By Letter dated November 13, 2023, the IRS asserted the IRC § 6700 Penalty against Plaintiff in the amount of $699,595 for tax year 2017.

20.     By Letter dated November 13, 2023, the IRS asserted the IRC § 6700 Penalty against Plaintiff in the amount of $285,630 for tax year 2018.

21.     Pursuant to IRC § 6703(c), if, within 30 days after the day on which notice and demand of any penalty under IRC § 6700 is made against any person, such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, then the person may file suit in District Court within 30 days following denial of the claim (or, if earlier, within 30 days after the expiration of 6 months after the day on which he filed the claim for refund), and no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution of the District Court proceeding.

22.     By letter dated December 8, 2023, Plaintiff timely submitted to the IRS partial payments of the penalties demanded (which amounts exceeded the required 15 percent as set forth in IRC § 6703(c)) as follows:

    a.     in the amount of $166,000 for tax year 2013;

    b.     in the amount of $229,000 for tax year 2014;

    c.     in the amount of $215,000 for tax year 2015;

    d.     in the amount of $229,000 for tax year 2016;

    e.     in the amount of $106,000 for tax year 2017

    f.     in the amount of $44,000 for tax year 2018.

23.     Plaintiff timely filed IRS Forms 6118, Claim for Refund of Tax Return Preparer and Promoter Penalties as follows:

a. On December 11, 2023, Plaintiff filed IRS Form 6118 Claim for Refund of Tax Return Preparer and Promoter Penalties for tax year 2013;

b. On December 11, 2023, Plaintiff filed IRS Form 6118 Claim for Refund of Tax Return Preparer and Promoter Penalties for tax year 2014;

c. On December 11, 2023, Plaintiff filed IRS Form 6118 Claim for Refund of Tax Return Preparer and Promoter Penalties for tax year 2015;

d. On December 11, 2023, Plaintiff filed IRS Form 6118 Claim for Refund of Tax Return Preparer and Promoter Penalties for tax year 2016;

e. On December 11, 2023, Plaintiff filed IRS From 6118 Claim for Refund of Tax Return Preparer and Promoter Penalties for tax year 2017;

f. On December 11, 2023, Plaintiff filed IRS From 6118 Claim for Refund of Tax Return Preparer and Promoter Penalties for tax year 2018;

24. By letter dated June 10, 2024, the IRS disallowed all of Plaintiff's claims for refund for each tax year 2013, 2014, 2015, 2016, 2017, and 2018.

25. 26 U.S.C. § 6700 imposes a so called "promoter penalty" on any person (promoters, salespersons, marketers, and their assistants) who (1) (A) organizes (or assists in the organization of) (i) a partnership or other entity, (ii) any investment plan or arrangement, or (iii) any other plan or arrangement; or (B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph A, and (2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale)--

(A) a statement regarding the allowability of any deduction or credit, the excludability of any income, or the securing of any tax benefit by holding an interest in the entity or participating in the plan or arrangement, which the

person knows, or has reason to know, is false or fraudulent as to any material matter…

26.     The Government bears the burden of proof with respect to each element required under IRC § 6700 to show that a "promoter" made a false or fraudulent statement, and therefore, is liable for the IRC § 6700 Penalty.

27.     The Government cannot meet its burden of proof because it cannot show that all five elements required for an IRC § 6700 violation are present.

28.     The five elements that must be present for a finding of an IRC § 6700 violation are:

     a.     There must be a person.

     b.     The person must organize (or assist in the organization of) or participate (directly or indirectly) in the sale of a partnership, entity, investment plan or arrangement, or any other plan or arrangement (hereinafter collectively, "plan or arrangement").

     c.     The person (or assistant) must make a false or fraudulent statement of the tax benefit (deduction, credit, income exclusion) for which the arrangement or plan is designed to provide.

     d.     The person must know or have reason to know that the statement is false.

     e.     The statement must be with respect to a material matter.

29.     The IRS conducted an audit of Plaintiff's captive insurance program which began by notice to plaintiff dated September 28, 2015 (the "Audit").

30.     The Audit concluded over eight years later with the November 13, 2023 assertion of the IRC § 6700 Penalty against Plaintiff.

31.     Plaintiff waited over eight years for clarity from the IRS on its administrative review.

32.     The IRS conducted an exhaustive examination of Plaintiff with regard to its activities in forming and operating Mt. Washington Group ("MWG") (formerly Grant Street Assurance, LLC), a subsidiary of HDH, which administered a contractual quota share reinsurance risk pool (the "Mt. Washington Pool") for approximately eighty (80) captive insurance companies.

33.     During the Audit, Plaintiff provided the IRS over a million of pages of documents and at all times fully cooperated with the IRS.

34.     Simultaneously with its investigation of Plaintiff, the IRS investigated the tax liabilities of the captive insurance companies which were part of the Mt. Washington Pool, the tax liabilities of the businesses insured by those captives, and the tax liabilities of the owners of the captive insurance companies and businesses.

35.     At the conclusion of the Audit, by letter dated March 22, 2023, Plaintiff received Form 886-A from the IRS (the "Audit Report").

36.     The IRS concluded in the Audit Report that the captive insurance companies in the Mt. Washington Pool were not legitimate insurance companies qualifying for IRC § 831(b) status, and thus, any statements made by Plaintiff to its captive clients were false and misleading.

37.     As a result of the Audit, the IRS determined that Plaintiff's involvement with its captive insurance program is that of a tax shelter promoter which engaged in tax shelter transactions as defined by the IRC supporting the imposition of the IRC § 6700 Penalty.

38.     The IRS took the position that Plaintiff made false tax statements to clients in setting up captives under its captive program because the Plaintiff sold its captive program to clients as legitimate insurance.

39.     The foundation of the IRS's position is that the captive insurance companies being managed by Plaintiff were not legitimate insurance companies that qualified for IRC § 831(b) status, and that Plaintiff knew that they did not so qualify.

40.     It follows then, that if those captive insurance companies were legitimate insurance companies that qualified for IRC § 831(b) status, there could be no IRC § 6700 violation by Plaintiff.

41.     The captive insurance companies managed by Plaintiff were legitimate insurance companies that qualified for IRC § 831(b) status.

42.     In its audit of several of the captive insurance companies which were part of the Mt. Washington Pool, the IRS admitted that those companies were legitimate insurance companies that qualified for IRC § 831(b) status by issuing "no change" letters and allowed those companies to continue to operate as captive insurance companies, with some of them still operating as such at the present time.

43.     This admission by the IRS makes it inconsistent for the IRS to now contend that the captive insurance companies managed by Plaintiff were not legitimate insurance companies that qualified for IRC § 831(b) status.

44.     Plaintiff relied on these admissions by the IRS during the long more than eight-year Audit period as confirmation that its captive insurance arrangements were acceptable to the IRS.

45.    Nevertheless, when Plaintiff learned that its captive insurance arrangements were not acceptable to the IRS, Plaintiff closed its captive program in 2018 to comply with the wishes of the IRS.

46.    The facts, legal arguments, and conclusions presented by the IRS in the Audit Report do not support a finding that Plaintiff met the following required elements required for the imposition of the IRC § 6700 Penalty: (i) that Plaintiff; (ii) organized or participated in the sale of a plan or arrangement; (iii) that statements were made by Plaintiff about the allowability of any deduction or other tax benefit of the plan or arrangement and that such statements allegedly made were false or fraudulent, (iv) that Plaintiff knew of had reason to know that such statements allegedly made were false or fraudulent; and (v) that such statements allegedly made were made as to any material matter.

47.    The IRS cannot meet its burden of proof that Plaintiff organized or participated in the sale of a plan or arrangement.

48.    Again, there has never been any guidance from the IRS as to what constitutes a "plan or arrangement".

49.    The captives managed by Plaintiff were separate companies with separate owners, director, officers, and insureds.

50.    Plaintiff's captive insurance program did not equate to the sale of a plan or arrangement that constituted a "tax shelter" which is a requirement for the imposition of the IRC § 6700 Penalty.

51.    The IRS cannot meet its burden of proof that statements were made by Plaintiff about the allowability of any deduction or other tax benefit of the plan or arrangement and that such statements allegedly made were false or fraudulent.

52.     Specifically, Plaintiff did not at any time make any false or fraudulent statement with regard to the allowability of any deduction or other tax benefit.

53.     At all times, Plaintiff engaged in the legitimate business of managing legitimate captive insurance companies qualifying for IRC § 831(b) status that participated in the Mt. Washington Pool. Therefore, on their face, none of its statements could have been false or fraudulent.

54.     During its discussions with potential clients of its captive insurance program, Plaintiff spoke about the benefits of forming a captive insurance company and participating in the Mt. Washington Pool, but only if the client had a substantial degree of uninsurable risk, meaning either economically unavailable or simply not offered in the marketplace.

55.     During those discussions, Plaintiff focused only upon insurance matters, its only area of expertise.

56.     Plaintiff occasionally spoke to potential clients in general terms about possible tax benefits of forming an IRC § 831(b) captive, but only if their insurance needs were real.

57.     At the time that Plaintiff made those statements, they were true, and continue to be true, because it was legal (and continues to be legal) for insured companies to take a deduction for premiums paid into their captive insurance company if other criteria were met.

58.     Plaintiff did not at any time function as a tax advisor to any of its clients.

59.     Plaintiff did not at any time make any statement regarding the specific allowability to any client of any deduction or credit, the excludability of any income, or the securing of any tax benefit by holding an interest in an entity (captive insurance company) or participating in any plan or arrangement.

60.     Plaintiff did not have a marketing department; Plaintiff did not advertise; Plaintiff did not conduct or participate in seminars; Plaintiff did not have a website dealing with captives; Plaintiff did not have any videos dealing with captives.

61.     Plaintiff's marketing material consisted of only one four-page general overview of captives.

62.     Plaintiff did not provide its clients with any promotional materials containing any statements regarding any possible tax benefits to forming a captive.

63.     Plaintiff, by specific contractual provisions between Plaintiff and its clients, left the determination of any possible tax benefit up to the tax advisors of the individual captives and their insured.

64.     The IRS cannot meet its burden of proof that Plaintiff knew of had reason to know that Plaintiff's statements allegedly made were false or fraudulent.

65.     The IRS recognizes that Congress explicitly encouraged and promoted captive insurance companies by conferring upon them favorable tax treatment under IRC § 831(b), but nevertheless, sought to eliminate captive insurance arrangements as being tax shelters.

66.     In the Audit Report, the IRS makes an after the fact determination that the captive insurance companies established by Plaintiff did not qualify as legitimate insurance companies that qualified for IRC § 831(b) status.

67.     The IRS used this after the fact determination to make its further finding that any statements made by Plaintiff to its captive clients were false and misleading at the time they were made, notwithstanding the fact that the IRS permitted after the Audit many of Plaintiff's clients to continue to use their § 831(b) captives.

68.     The captive insurance companies established by Plaintiff were legitimate insurance companies that qualified for IRC § 831(b) status, so no statements made by Plaintiff regarding the establishment of the captive insurance companies were false or misleading at the time they were made.

69.     Without its after the fact determination that the captive insurance companies did not qualify as legitimate insurance companies, the IRS could not have asserted that any statements made by Plaintiff were knowingly false or misleading at the time they were made.

70.     The final decision of the IRS in late 2023 that the captive insurance companies did not qualify as legitimate insurance companies simply could not have impacted the knowledge of Plaintiff from 2013-2018 the years of the penalty assessments in this case.

71.     Any statements made by Plaintiff to its captive clients regarding its captive insurance program were true at the time they were made and continue to be true at this time.

72.     The IRS cannot meet it burden of proof that Plaintiff's statements allegedly made were made as to any material matter.

73.     In this instance, a material matter is a statement regarding the allowability of any deduction or other tax benefit.

74.     As stated above, Plaintiff did not make any statements regarding the specific allowability to any client of any deduction or credit, the excludability of any income, or the securing of any tax benefit by holding an interest in and entity (captive insurance company) or participating in any plan or arrangement.

## COUNT I

(Tax Refund under IRC § 6700)

75.     Plaintiff incorporates paragraphs 1–74 of its Complaint as if set forth in full.

76.     For the reasons described in this Complaint and for the reasons set forth in Plaintiffs Claims for Refund, Plaintiff owes no penalty under 26 U.S.C. § 6700 for tax year 2013.

77.     Plaintiff made a timely Claim for Refund on December 11, 2023.

78.     The IRS denied the claim by letter dated June 10, 2024.

79.     Accordingly, Plaintiff is entitled to a refund of the penalty amount of $166,000 that it paid pursuant to 26 U.S.C. § 6703 for tax year 2013.

80.     As a result, Plaintiff is entitled to judgment in its favor and against the United States of $166,000 plus prejudgment interest.

## COUNT II

(Tax Refund under IRC § 6700)

81.     Plaintiff incorporates paragraphs 1–80 of its Complaint as if set forth in full.

82.     For the reasons described in this Complaint and for the reasons set forth in Plaintiffs Claims for Refund, Plaintiff owes no penalty under 26 U.S.C. § 6700 for tax year 2014.

83.     Plaintiff made a timely Claim for Refund on December 11, 2023.

84.     The IRS denied the claim by letter dated June 10, 2024.

85.     Accordingly, Plaintiff is entitled to a refund of the penalty amount of $229,000 that it paid pursuant to 26 U.S.C. § 6703 for tax year 2014.

86.     As a result, Plaintiff is entitled to judgment in its favor and against the United States of $229,000 plus prejudgment interest.

## COUNT III

(Tax Refund Under IRC § 6700)

87.     Plaintiff incorporates paragraphs 1–86 of its Complaint as if set forth in full.

88.     For the reasons described in this Complaint and for the reasons set forth in
Plaintiffs Claims for Refund, Plaintiff owes no penalty under 26 U.S.C. § 6700 for tax year 2015.

89.     Plaintiff made a timely Claim for Refund on December 11, 2023.

90.     The IRS denied the claim by letter dated June 10, 2024.

91.     Accordingly, Plaintiff is entitled to a refund of the penalty amount of $215,000
that it paid pursuant to 26 U.S.C. § 6703 for tax year 2015.

92.     As a result, Plaintiff is entitled to judgment in its favor and against the United
States of $215,000 plus prejudgment interest.

## COUNT IV

(Tax Refund Under IRC § 6700)

93.     Plaintiff incorporates paragraphs 1–92 of its Complaint as if set forth in full.

94.     For the reasons described in this Complaint and for the reasons set forth in
Plaintiffs Claims for Refund, Plaintiff owes no penalty under 26 U.S.C. § 6700 for tax year 2016.

95.     Plaintiff made a timely Claim for Refund on December 11, 2023.

96.     The IRS denied the claim by letter dated June 10, 2024.

97.     Accordingly, Plaintiff is entitled to a refund of the penalty amount of $229,000
that it paid pursuant to 26 U.S.C. § 6703 for tax year 2016.

98.     As a result, Plaintiff is entitled to judgment in its favor and against the United
States of $229,000 plus prejudgment interest.

## COUNT V

### (Tax Refund Under IRC § 6700)

99.     Plaintiff incorporates paragraphs 1–98 of its Complaint as if set forth in full.

100.     For the reasons described in this Complaint and for the reasons set forth in Plaintiffs Claims for Refund, Plaintiff owes no penalty under 26 U.S.C. § 6700 for tax year 2017.

101.     Plaintiff made a timely Claim for Refund on December 11, 2023.

102.     The IRS denied the claim by letter dated June 10, 2024.

103.     Accordingly, Plaintiff is entitled to a refund of the penalty amount of $106,000 that it paid pursuant to 26 U.S.C. § 6703 for tax year 2017.

104.     Accordingly, Plaintiff is entitled to judgment in its favor and against the United States of $106,000 plus prejudgment interest.

## COUNT VI

### (Tax Refund Under IRC § 6700)

105.     Plaintiff incorporates paragraphs 1–104 of its Complaint as if set forth in full.

106.     For the reasons described in this Complaint and for the reasons set forth in Plaintiffs Claims for Refund, Plaintiff owes no penalty under 26 U.S.C. § 6700 for tax year 2018.

107.     Plaintiff made a timely Claim for Refund on December 11, 2023.

108.     The IRS denied the claim by letter dated June 10, 2024.

109.     Accordingly, Plaintiff is entitled to a refund of the penalty amount of $44,000 that it paid pursuant to 26 U.S.C. § 6703 for tax year 2018.

110.     As a result, Plaintiff is entitled to judgment in its favor and against the United States of $44,000 plus prejudgment interest.

## COUNT VII

### (Laches)

111.     Plaintiff incorporates paragraphs 1-110 of its Complaint as if set forth in full.

112.     The IRS waited more than eight years after initiating its audit of Plaintiff to impose the IRC § 6700 Penalty against HDH Group, which was inexcusable.

113.     Plaintiff suffered severe prejudice from Defendants' inexcusable delay in the form of the likely unavailability of relevant witnesses, the likely loss of key files, and due to witnesses' memories fading over time.

114.     Due to Defendants' conduct as described above, Plaintiff has suffered damages as noted above and below.


### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

1.      find that no penalty should be imposed against Plaintiff pursuant to IRC § 6700;

2.      find and order that the partial payment by Plaintiff of the penalty imposed against Plaintiff pursuant to IRC § 6700 must be refunded to Plaintiff in the amounts of $166,000 for tax year 2013, $229,000 for tax year 2014, $215,000 for tax year 2015, $229,000 for tax year 2016, $106,000 for tax year 2017, and $44,000 for tax year 2018, together with an increase in such amounts for applicable interest;

3.      find that Plaintiff is entitled to its recoverable costs of court and attorneys' fees; and

4.      grant such other relief to Plaintiff as this Court may deem fitting and proper.

Respectfully Submitted,

**JURY TRIAL DEMANDED**

s/ *David B. Spear*
David B. Spear
PA Id. No. 62133

s/ *Ralph Minto, Jr.*
Ralph Minto, Jr.
PA Id. No. 51746

s/ *Michelle L. Kopnski*
Michelle L. Kopnski
PA Id. No. 52096

Minto Law Group, LLC
Stone Quarry Crossing
811 Camp Horne Road, Suite 320
Pittsburgh, PA 15237
412-201-5525
dspear@mintolaw.com
rminto@mintolaw.com
mkopnski@mintolaw.com
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Complaint was served upon

the following in accordance with the applicable rules of court, this 9th day of July, 2024:

United States of America
c/o Merrick B. Garland
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

United States of America
c/o Eric G. Olshan, United States Attorney
United States Attorney's Office for the Western District of Pennsylvania
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

Internal Revenue Service
c/o Daniel I. Werfel
Commissioner of the IRS
1111 Constitution Avenue NW
Washington, DC 20002

s/ *David B. Spear*
David B. Spear

Appendix Exhibit C

United States' Answer and Counterclaim
(ECF 16)

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| HDH GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-CV-00988 |
| | ) | |
| UNITED STATES OF AMERICA and | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT UNITED STATES' ANSWER AND COUNTERCLAIM**

The United States of America answers Plaintiff's complaint as follows:

1.      *Plaintiff, HDH, is a corporation organized under the laws of the Commonwealth of Pennsylvania with an address of 210 Sixth Avenue, 30th Floor, Pittsburgh, PA 15222. The last four digits of its employer identification number are 8002.*

**ANSWER**: Admit.

2.      *Defendants are the United States of America and its agency, the IRS (hereinafter sometimes referred to as "Defendants" or "Government"). The IRS is the revenue service for the United States federal government, which is responsible for collecting U.S. federal taxes and administering the Internal Revenue Code (the "IRC"), the main body of federal statutory tax law.*

**ANSWER**: The United States admits that the United States is a proper defendant in this case. The United States denies that the IRS is a proper party to this case. The IRS is an agency of the United States, and as such, is not authorized to sue or be sued *eo nomine* absent explicit authorization. *Blackmar v. Guerre*, 342 U.S. 512, 514-515 (1952); *Beneficial Consumer Discount Co. v. Poltonowicz*, 47 F.3d 91, 94 (3d Cir. 1995). Accordingly, "a suit purporting to bring claims against the IRS is deemed to be a suit against the United States." *Abell v. Sothen*, 214 Fed. Appx.

743, 750-51 (10th Cir. 2007); *Bosset v. United States,* No. 07-cv-967, 2007 WL 3034656, at * 3 (M.D. Fla. October 16, 2007) ("The Internal Revenue Service is likewise not a proper party…because a federal agency may not be sued in its own name without express congressional authority. It is clearly established that the Internal Revenue Service is among those agencies for which such authority has not been given. The proper party in this action, therefore, is the United States.") (internal citations omitted). Additionally, IRC (26 U.S.C.) § 7422(f)(1), which governs actions for refunds of tax penalties, states that a proceeding for such a refund "may be maintained only against the United States…."

3.      *This is a civil action against the United States for a refund of amounts paid to the IRS pursuant to 26 U.S.C. § 7422(a) as required by the improper determination by the IRS that Plaintiff is liable for the IRS § 6700 Penalty.*

**ANSWER**: The United States admits that HDH Group, Inc. seeks a refund in this action pursuant to 26 U.S.C. § 7422(a). The United States denies all other allegations in paragraph 3. By way of further response, HDH Group, Inc. has not paid in full the penalties assessed against it.

4.      *This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1340, and 1346(a)(1).*

**ANSWER**: The United States admits that the cited statutes may confer this Court with jurisdiction. The United States lacks knowledge or information sufficient to form a belief as to whether all jurisdictional prerequisites have been satisfied.

5.      *Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1402 (a)(2) because this is a civil action against the United States pursuant to 28 U.S.C. § 1346(a)*

and Plaintiff is a corporation with its principal place of business located in Pittsburgh Pennsylvania.

**ANSWER**: Admit.

6.    Plaintiff is in the business of selling, designing, operating, implementing, and managing insurance and other products, including until the end of 2018, the operation of a captive insurance program.

**ANSWER**: The United States admits Plaintiff sold, designed, operated, implemented, and managed what it claimed to be valid captive insurance through its purported captive insurance program until the end of 2018. The United States denies that Plaintiff's program involved valid captive insurance. The United States lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in paragraph 6.

7.    At all times during the years 2013-2018, Plaintiff properly advised and assisted its clients in establishing captive insurance companies pursuant to 26 U.S.C. § 831(b).

**ANSWER**: Deny.

8.    Captive insurance companies have been explicitly encouraged and promoted by Congress by conferring upon them favorable tax treatment pursuant to 26 U.S.C. § 831(b).

**ANSWER**: The United States admits that the Tax Reform Act of 1986 amended the Internal Revenue Code to add 26 U.S.C. § 831(b), which permits smaller "microcaptive" insurance companies to elect favorable tax treatment, provided that certain requirements are met. The United States lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in paragraph 8.

9. *The IRS did not issue any guidance in the form of treasury regulations regarding the formation or operation of captive insurance companies or any guidance on what would be considered insurance for federal income tax purposes.*

**ANSWER**: The United States admits that there were no specific Treasury Regulations regarding the formation or operation of captive insurance companies or providing a definition of insurance for federal income tax purposes during the years at issue. The United States denies any remaining allegations in paragraph 9, including any express or implied allegation that no guidance regarding what constituted insurance for federal income tax purposes existed during the years at issue.

10. *To the present time, the IRS has not provided such guidance.*

**ANSWER**: The United States admits that, as of the date of this answer, there are no specific Treasury Regulations addressing captive insurance companies or the definition of insurance. The United States denies all other allegations in paragraph 10, including any express or implied allegation that no guidance regarding what constituted insurance for federal income tax purposes existed during the years at issue.

11. *At the time Plaintiff began managing captives under its captive program, the only IRS guidance in existence was Revenue Ruling 2002-89.*

**ANSWER**: The United States admits that Revenue Ruling 2002-89 was published on December 30, 2002. The United States denies that this was the only guidance in existence as to what constituted insurance for federal income tax purposes at the time Plaintiff began managing captives under its captive program. The United States denies that the purported captives managed under Plaintiff's program were valid captive insurance companies or issued valid captive

4

insurance. The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 11.

12. *Revenue Ruling 2002-89 set forth the requirements for a captive insurance arrangement to constitute insurance for federal income tax purposes.*

**ANSWER**: The United States admits that Revenue Ruling 2002-89 considered two arrangements between a theoretical domestic parent corporation and its wholly owned domestic insurance subsidiary and analyzed whether each arrangement would constitute insurance for federal income tax purposes, but denies any express or implied allegation that Revenue Ruling 2002-89 was the only operative guidance or authority regarding what constituted valid captive insurance for federal income tax purposes during the years at issue. The United States denies all other allegations in paragraph 12.

13. *All captives managed by Plaintiff met the requirements of Revenue Ruling 2002- 89 to constitute insurance for federal income tax purposes.*

**ANSWER**: Deny.

14. *This action arises under 26 U.S.C. § 6700 for recovery of $989,000 ($166,000, $229,000, $215,000, $229,000, $106,000, and $44,000) for tax years 2013, 2014, 2015, 2016, 2017, and 2018, respectively), in total penalties paid by Plaintiff and collected by Defendants pursuant to the assessment by Defendants of the 26 U.S.C. § 6700 penalty (the "IRC § 6700 Penalty") for each of those tax years.*

**ANSWER**: The United States admits that a delegate of the Secretary of the Treasury assessed penalties against Plaintiff in accordance with 26 U.S.C. § 6700(a) for the tax years listed, and that Plaintiff made partial payments of the assessed penalties in the amounts listed. The balance

5

of paragraph 14 is denied, including any express or implied allegation that Plaintiff has paid in full the § 6700 penalties assessed against it.

15.    *By Letter dated November 13, 2023, the IRS asserted the IRC § 6700 Penalty against Plaintiff in the amount of $1,103,515 for tax year 2013.*

**ANSWER**: The United States admits that on November 13, 2023 the Internal Revenue Service assessed a penalty against Plaintiff pursuant to 26 U.S.C. § 6700 in the amount of $1,103,515 with respect to the 2013 tax year and provided notice and demand to Plaintiff for payment of the penalty. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 15.

16.    *By Letter dated November 13, 2023, the IRS asserted the IRC § 6700 Penalty against Plaintiff in the amount of $1,523,539 for tax year 2014.*

**ANSWER**: The United States admits that on November 13, 2023 the Internal Revenue Service assessed a penalty against Plaintiff pursuant to 26 U.S.C. § 6700 in the amount of $1,523,539 with respect to the 2014 tax year and provided notice and demand to Plaintiff for payment of the penalty. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 16.

17.    *By Letter dated November 13, 2023, the IRS asserted the IRC § 6700 Penalty against Plaintiff in the amount of $1,427,367 for tax year 2015.*

**ANSWER**: The United States admits that on November 13, 2023 the Internal Revenue Service assessed a penalty against Plaintiff pursuant to 26 U.S.C. § 6700 in the amount of $1,427,367 with respect to the 2015 tax year and provided notice and demand to Plaintiff for payment of the penalty. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 17.

18.    *By Letter dated November 13, 2023, the IRS asserted the IRC § 6700 Penalty against Plaintiff in the amount of $1,524,803 for tax year 2016.*

**ANSWER**: The United States admits that on November 13, 2023 the Internal Revenue Service assessed a penalty against Plaintiff pursuant to 26 U.S.C. § 6700 in the amount of $1,524,803 with respect to the 2016 tax year and provided notice and demand for payment of the penalty. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 18.

19.    *By Letter dated November 13, 2023, the IRS asserted the IRC § 6700 Penalty against Plaintiff in the amount of $699,595 for tax year 2017.*

**ANSWER**: The United States admits that on November 13, 2023 the Internal Revenue Service assessed a penalty against Plaintiff pursuant to 26 U.S.C. § 6700 in the amount of $699,595 with respect to the 2017 tax year and provided notice and demand for payment of the penalty. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 19.

20.    *By Letter dated November 13, 2023, the IRS asserted the IRC § 6700 Penalty against Plaintiff in the amount of $285,630 for tax year 2018.*

**ANSWER**: The United States admits that on November 13, 2023 the Internal Revenue Service assessed a penalty against Plaintiff pursuant to 26 U.S.C. § 6700 in the amount of $285,630 with respect to the 2018 tax year and provided notice and demand for payment of the penalty. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20.

21.    *Pursuant to IRC § 6703(c), if, within 30 days after the day on which notice and demand of any penalty under IRC § 6700 is made against any person, such person pays an amount*

7

*which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, then the person may file suit in District Court within 30 days following denial of the claim (or, if earlier, within 30 days after the expiration of 6 months after the day on which he filed the claim for refund), and no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution of the District Court proceeding.*

**ANSWER**: Admit. By way of further response, 26 U.S.C. § 6703(c)(1) states that the restrictions on collection described by Plaintiff in paragraph 21 do not apply to a counterclaim filed by the United States for the unpaid balance of a penalty assessed under 26 U.S.C. § 6700.

22.    *By letter dated December 8, 2023, Plaintiff timely submitted to the IRS partial payments of the penalties demanded (which amounts exceeded the required 15 percent as set forth in IRC § 6703(c)) as follows:*

      *a.   in the amount of $166,000 for tax year 2013;*

      *b.   in the amount of $229,000 for tax year 2014;*

      *c.   in the amount of $215,000 for tax year 2015;*

      *d.   in the amount of $229,000 for tax year 2016;*

      *e.   in the amount of $106,000 for tax year 2017*

      *f.   in the amount of $44,000 for tax year 2018.*

**ANSWER**: The United States admits that payments in the amounts listed in subparagraphs 22(a) through 22(f) were sent to the IRS via correspondence postmarked December 11, 2023; received by the IRS on December 13, 2023; and posted on December 28, 2023, and that such amounts were not less than 15 percent of the penalty assessments for each year. The United States denies all other allegations in paragraph 22.

8

23.     *Plaintiff timely filed IRS Forms 6118, Claim for Refund of Tax Return Preparer and Promoter Penalties as follows:*

  a.   *On December 11, 2023, Plaintiff filed IRS Form 6118 Claim for Refund of Tax Return Preparer and Promoter Penalties for tax year 2013;*

  b.   *On December 11, 2023, Plaintiff filed IRS Form 6118 Claim for Refund of Tax Return Preparer and Promoter Penalties for tax year 2014;*

  c.   *On December 11, 2023, Plaintiff filed IRS Form 6118 Claim for Refund of Tax Return Preparer and Promoter Penalties for tax year 2015;*

  d.   *On December 11, 2023, Plaintiff filed IRS Form 6118 Claim for Refund of Tax Return Preparer and Promoter Penalties for tax year 2016;*

  e.   *On December 11, 2023, Plaintiff filed IRS From 6118 Claim for Refund of Tax Return Preparer and Promoter Penalties for tax year 2017;*

  f.   *On December 11, 2023, Plaintiff filed IRS From 6118 Claim for Refund of Tax Return Preparer and Promoter Penalties for tax year 2018;*

**ANSWER**: The United States admits that Plaintiff filed IRS Forms 6118 on the dates and for the tax years listed in paragraphs 23(a) through 23(f). The United States denies the remaining the allegations in paragraph 23.

24.     *By letter dated June 10, 2024, the IRS disallowed all of Plaintiff's claims for refund for each tax year 2013, 2014, 2015, 2016, 2017, and 2018.*

**ANSWER**: The United States admits that by letter dated June 10, 2024, the IRS disallowed the claims for refund referenced in paragraph 23 but lacks sufficient knowledge or information to determine whether this constituted "all" of Plaintiff's claims for refund for each tax year, and therefore denies all other allegations in paragraph 24.

9

25.    *26 U.S.C. § 6700 imposes a so called "promoter penalty" on any person (promoters, salespersons, marketers, and their assistants) who (1) (A) organizes (or assists in the organization of) (i) a partnership or other entity, (ii) any investment plan or arrangement, or (iii) any other plan or arrangement; or (B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph A, and (2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale)--*

*(A) a statement regarding the allowability of any deduction or credit, the excludability of any income, or the securing of any tax benefit by holding an interest in the entity or participating in the plan or arrangement, which the person knows, or has reason to know, is false or fraudulent as to any material matter…*

**ANSWER**: The United States admits that 26 U.S.C. § 6700 imposes a penalty on organizers of or participants in the sale of abusive tax shelter plans or arrangements and that Plaintiff's purported captive insurance program constituted such an abusive tax shelter plan or arrangement. The United States further admits that paragraph 25 accurately quotes a portion of 26 U.S.C. § 6700. The United States denies the remaining allegations in paragraph 25.

26.    *The Government bears the burden of proof with respect to each element required under IRC § 6700 to show that a "promoter" made a false or fraudulent statement, and therefore, is liable for the IRC § 6700 Penalty.*

**ANSWER**: The United States admits that it bears the burden of proof on the issue of whether any person is liable for a penalty under 26 U.S.C. § 6700. The United States denies the remaining allegations in paragraph 26.

27.    *The Government cannot meet its burden of proof because it cannot show that all five elements required for an IRC § 6700 violation are present.*

10

**ANSWER**: Deny.

28.    *The five elements that must be present for a finding of an IRC § 6700 violation are:*

 a. *There must be a person.*

 b. *The person must organize (or assist in the organization of) or participate (directly or indirectly) in the sale of a partnership, entity, investment plan or arrangement, or any other plan or arrangement (hereinafter collectively, "plan or arrangement").*

 c. *The person (or assistant) must make a false or fraudulent statement of the tax benefit (deduction, credit, income exclusion) for which the arrangement or plan is designed to provide.*

 d. *The person must know or have reason to know that the statement is false.*

 e. *The statement must be with respect to a material matter.*

**ANSWER**: The United States denies that Plaintiff has accurately listed the elements which must be established to sustain a penalty assessed under 26 U.S.C. § 6700.

29.    *The IRS conducted an audit of Plaintiff's captive insurance program which began by notice to plaintiff dated September 28, 2015 (the "Audit").*

**ANSWER**: The United States admits that the IRS examined Plaintiff's purported captive insurance program and provided notice of the examination to Plaintiff on September 28, 2015. The United States denies the remaining allegations in paragraph 29.

30.    *The Audit concluded over eight years later with the November 13, 2023 assertion of the IRC § 6700 Penalty against Plaintiff.*

**ANSWER**: The United States admits that it assessed penalties under 26 U.S.C. § 6700 against Plaintiff on November 13, 2023. The United States denies the remaining allegations in paragraph 30.

31.    *Plaintiff waited over eight years for clarity from the IRS on its administrative review.*

**ANSWER**: The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 31.

32.    *The IRS conducted an exhaustive examination of Plaintiff with regard to its activities in forming and operating Mt. Washington Group ("MWG") (formerly Grant Street Assurance, LLC), a subsidiary of HDH, which administered a contractual quota share reinsurance risk pool (the "Mt. Washington Pool") for approximately eighty (80) captive insurance companies.*

**ANSWER**: The United States admits that Mt. Washington Group was a subsidiary of Plaintiff through which Plaintiff administered what it purported to be a contractual quota share reinsurance risk pool for approximately 80 entities which Plaintiff asserts were captive insurance companies. The United States denies any express or implied allegations that Mt. Washington Group was a valid reinsurance risk pool or that any of the approximately 80 captive insurance companies referenced in paragraph 32 were valid captive insurance companies. The United States lacks knowledge or information sufficient to form a belief about the remaining allegations in paragraph 32.

33.    *During the Audit, Plaintiff provided the IRS over a million of pages of documents and at all times fully cooperated with the IRS.*

**ANSWER**: The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 33. By way of further response, this tax refund suit is a de novo proceeding, not a proceeding to review an agency action, so the IRS's examination of Plaintiff (or the volume of documents produced therein) has no bearing on this proceeding. *See, e.g., Samango v. United States,* No. 17-2484, 2019 WL 2525741, at * 7 (E.D. Pa. June 18, 2019)

12

(explaining that "in tax refund suits, factual issues are tried de novo…with no weight given to the subsidiary factual findings made by the Service in its internal administrative proceedings" and, further, that in a de novo proceeding "the district court is ordinarily not permitted to delve into the [IRS's] reasoning at the administrative decision-making level.") (internal citations and quotations omitted).

34.    *Simultaneously with its investigation of Plaintiff, the IRS investigated the tax liabilities of the captive insurance companies which were part of the Mt. Washington Pool, the tax liabilities of the businesses insured by those captives, and the tax liabilities of the owners of the captive insurance companies and businesses.*

**ANSWER**: The United States admits that the IRS examined some of the participants in Plaintiff's scheme, including clients of Plaintiff who owned entities which were purported to be captive insurance companies, such entities' owners, and the purported captive insurance companies themselves, and uniformly concluded that Plaintiff's purported captive insurance arrangement did not result in the creation of valid insurance or valid captive insurance arrangements.

35.    *At the conclusion of the Audit, by letter dated March 22, 2023, Plaintiff received Form 886-A from the IRS (the "Audit Report").*

**ANSWER**: The United States admits that the IRS sent correspondence to Plaintiff which included IRS Form 886-A. The remaining allegations in paragraph 35 are denied. By way of further response, this tax refund suit is a de novo proceeding, not a proceeding to review an agency action, so the IRS's examination of Plaintiff has no bearing on this proceeding. *See, e.g., Samango v. United States,* No. 17-2484, 2019 WL 2525741, at * 7 (E.D. Pa. June 18, 2019).

13

36.    *The IRS concluded in the Audit Report that the captive insurance companies in the Mt. Washington Pool were not legitimate insurance companies qualifying for IRC § 831(b) status, and thus, any statements made by Plaintiff to its captive clients were false and misleading.*

**ANSWER:** The United States admits that the IRS concluded that the entities which Plaintiff purported to be legitimate captive insurance companies were not, and that Plaintiff made false and misleading statements in furtherance of its scheme. The United States denies that paragraph 36 is comprehensive as to the IRS's conclusions. By way of further response, this tax refund suit is a de novo proceeding, not a proceeding to review an agency action, so the IRS's examination of Plaintiff has no bearing on this proceeding. *See, e.g., Samango v. United States,* No. 17-2484, 2019 WL 2525741, at * 7 (E.D. Pa. June 18, 2019).

37.    *As a result of the Audit, the IRS determined that Plaintiff's involvement with its captive insurance program is that of a tax shelter promoter which engaged in tax shelter transactions as defined by the IRC supporting the imposition of the IRC § 6700 Penalty.*

**ANSWER**: The United States admits that the IRS assessed penalties against Plaintiff pursuant to IRC § 6700 due to its conduct in relation to its purported captive insurance program. The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 37. By way of further response, this tax refund suit is a de novo proceeding, not a proceeding to review an agency action, so the IRS's examination of Plaintiff has no bearing on this proceeding. *See, e.g., Samango v. United States,* No. 17-2484, 2019 WL 2525741, at * 7 (E.D. Pa. June 18, 2019).

14

38.    *The IRS took the position that Plaintiff made false tax statements to clients in setting up captives under its captive program because the Plaintiff sold its captive program to clients as legitimate insurance.*

**ANSWER**: The United States admits that the IRS assessed penalties against Plaintiff pursuant to 26 U.S.C. § 6700 due to Plaintiff's conduct in relation to its purported captive insurance program. The United States denies that Plaintiff has fully articulated the IRS's position as it relates to such penalties. The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 38. By way of further response, this tax refund suit is a de novo proceeding, not a proceeding to review an agency action, so the IRS's examination of Plaintiff has no bearing on this proceeding. *See, e.g., Samango v. United States,* No. 17-2484, 2019 WL 2525741, at * 7 (E.D. Pa. June 18, 2019).

39.    *The foundation of the IRS's position is that the captive insurance companies being managed by Plaintiff were not legitimate insurance companies that qualified for IRC § 831(b) status, and that Plaintiff knew that they did not so qualify.*

**ANSWER**: The United States admits that the IRS assessed penalties against Plaintiff pursuant to 26 U.S.C. § 6700 due to Plaintiff's conduct in relation to its purported captive insurance program. The United States denies that Plaintiff has fully articulated the IRS's position as it relates to such penalties. The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 39. By way of further response, this tax refund suit is a de novo proceeding, not a proceeding to review an agency action, so the IRS's examination of Plaintiff has no bearing on this proceeding. *See, e.g., Samango v. United States,* No. 17-2484, 2019 WL 2525741, at * 7 (E.D. Pa. June 18, 2019).

40.     *It follows then, that if those captive insurance companies were legitimate insurance companies that qualified for IRC § 831(b) status, there could be no IRC § 6700 violation by Plaintiff.*

**ANSWER**: Deny.

41.     *The captive insurance companies managed by Plaintiff were legitimate insurance companies that qualified for IRC § 831(b) status.*

**ANSWER**: Deny.

42.     *In its audit of several of the captive insurance companies which were part of the Mt. Washington Pool, the IRS admitted that those companies were legitimate insurance companies that qualified for IRC § 831(b) status by issuing "no change" letters and allowed those companies to continue to operate as captive insurance companies, with some of them still operating as such at the present time.*

**ANSWER**: Deny.

43.     *This admission by the IRS makes it inconsistent for the IRS to now contend that the captive insurance companies managed by Plaintiff were not legitimate insurance companies that qualified for IRC § 831(b) status.*

**ANSWER**: Deny.

44.     *Plaintiff relied on these admissions by the IRS during the long more than eight-year Audit period as confirmation that its captive insurance arrangements were acceptable to the IRS.*

**ANSWER**: Deny.

16

45.    *Nevertheless, when Plaintiff learned that its captive insurance arrangements were not acceptable to the IRS, Plaintiff closed its captive program in 2018 to comply with the wishes of the IRS.*

**ANSWER**: The United States admits that Plaintiff ended its captive insurance program scheme in 2018 but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 45.

46.    *The facts, legal arguments, and conclusions presented by the IRS in the Audit Report do not support a finding that Plaintiff met the following required elements required for the imposition of the IRC § 6700 Penalty: (i) that Plaintiff; (ii) organized or participated in the sale of a plan or arrangement; (iii) that statements were made by Plaintiff about the allowability of any deduction or other tax benefit of the plan or arrangement and that such statements allegedly made were false or fraudulent, (iv) that Plaintiff knew of had reason to know that such statements allegedly made were false or fraudulent; and (v) that such statements allegedly made were made as to any material matter.*

**ANSWER**: Deny. By way of further response, this tax refund suit is a de novo proceeding, not a proceeding to review an agency action, so the IRS's examination of Plaintiff has no bearing on this proceeding. *See, e.g., Samango v. United States,* No. 17-2484, 2019 WL 2525741, at * 7 (E.D. Pa. June 18, 2019).

47.    *The IRS cannot meet its burden of proof that Plaintiff organized or participated in the sale of a plan or arrangement.*

**ANSWER**: Deny.

48.    *Again, there has never been any guidance from the IRS as to what constitutes a "plan or arrangement".*

**ANSWER**: Deny.

49.    *The captives managed by Plaintiff were separate companies with separate owners, director, officers, and insureds.*

**ANSWER**: The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 49.

50.    *Plaintiff's captive insurance program did not equate to the sale of a plan or arrangement that constituted a "tax shelter" which is a requirement for the imposition of the IRC § 6700 Penalty.*

**ANSWER**: Deny.

51.    *The IRS cannot meet its burden of proof that statements were made by Plaintiff about the allowability of any deduction or other tax benefit of the plan or arrangement and that such statements allegedly made were false or fraudulent.*

**ANSWER**: Deny.

52.    *Specifically, Plaintiff did not at any time make any false or fraudulent statement with regard to the allowability of any deduction or other tax benefit.*

**ANSWER**: Deny.

53.    *At all times, Plaintiff engaged in the legitimate business of managing legitimate captive insurance companies qualifying for IRC § 831(b) status that participated in the Mt. Washington Pool. Therefore, on their face, none of its statements could have been false or fraudulent.*

**ANSWER**: Deny.

18

54. *During its discussions with potential clients of its captive insurance program, Plaintiff spoke about the benefits of forming a captive insurance company and participating in the Mt. Washington Pool, but only if the client had a substantial degree of uninsurable risk, meaning either economically unavailable or simply not offered in the marketplace.*

**ANSWER**: Deny.

55. *During those discussions, Plaintiff focused only upon insurance matters, its only area of expertise.*

**ANSWER**: Deny.

56. *Plaintiff occasionally spoke to potential clients in general terms about possible tax benefits of forming an IRC § 831(b) captive, but only if their insurance needs were real.*

**ANSWER**: The United States admits that Plaintiff spoke to its clients about the tax benefits of forming a captive insurance company, which it falsely claimed would be compliant with 26 U.S.C. § 831(b). The United States denies the remaining allegations in paragraph 56.

57. *At the time that Plaintiff made those statements, they were true, and continue to be true, because it was legal (and continues to be legal) for insured companies to take a deduction for premiums paid into their captive insurance company if other criteria were met.*

**ANSWER**: It is unclear which statements Plaintiff refers to in paragraph 57, and thus the United States lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 57. By way of further response, the United States agrees that the Internal Revenue Code allows for a deduction for premiums paid to captive insurance companies in certain circumstances. The United States denies that premiums paid to the purported captive insurance companies formed as part of Plaintiff's scheme were deductible.

19

58.    *Plaintiff did not at any time function as a tax advisor to any of its clients.*

**ANSWER**: The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 58.

59.    *Plaintiff did not at any time make any statement regarding the specific allowability to any client of any deduction or credit, the excludability of any income, or the securing of any tax benefit by holding an interest in an entity (captive insurance company) or participating in any plan or arrangement.*

**ANSWER**: Deny.

60.    *Plaintiff did not have a marketing department; Plaintiff did not advertise; Plaintiff did not conduct or participate in seminars; Plaintiff did not have a website dealing with captives; Plaintiff did not have any videos dealing with captives.*

**ANSWER**: The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 60 as to Plaintiff's marketing department, seminars, or videos. The United States denies the allegations in paragraph 60 as to Plaintiff's website and advertising.

61.    *Plaintiff's marketing material consisted of only one four-page general overview of captives.*

**ANSWER**: Deny.

62.    *Plaintiff did not provide its clients with any promotional materials containing any statements regarding any possible tax benefits to forming a captive.*

**ANSWER**: Deny.

63.    *Plaintiff, by specific contractual provisions between Plaintiff and its clients, left the determination of any possible tax benefit up to the tax advisors of the individual captives and their insured.*

**ANSWER**: Deny.

64.    *The IRS cannot meet its burden of proof that Plaintiff knew or had reason to know that Plaintiff's statements allegedly made were false or fraudulent.*

**ANSWER**: Deny.

65.    *The IRS recognizes that Congress explicitly encouraged and promoted captive insurance companies by conferring upon them favorable tax treatment under IRC § 831(b), but nevertheless, sought to eliminate captive insurance arrangements as being tax shelters.*

**ANSWER**: The United States admits 26 U.S.C. § 831(b) permits small captive insurance companies to elect favorable tax treatment provided that certain requirements are met. The United States denies the remaining allegations in paragraph 65.

66.    *In the Audit Report, the IRS makes an after the fact determination that the captive insurance companies established by Plaintiff did not qualify as legitimate insurance companies that qualified for IRC § 831(b) status.*

**ANSWER**: The United States admits that the IRS determined that the captive insurance companies established by Plaintiff were not legitimate insurance companies that qualified for IRC § 831(b) status. By way of further response, the United States admits that IRS examination determinations, as well as Court decisions, are inherently retrospective, and thus made "after the fact." By way of further response, this tax refund suit is a de novo proceeding, not a proceeding to review an agency action, so the IRS's examination of Plaintiff has no bearing on this proceeding.

*See, e.g., Samango v. United States,* No. 17-2484, 2019 WL 2525741, at * 7 (E.D. Pa. June 18, 2019)

67.    *The IRS used this after the fact determination to make its further finding that any statements made by Plaintiff to its captive clients were false and misleading at the time they were made, notwithstanding the fact that the IRS permitted after the Audit many of Plaintiff's clients to continue to use their § 831(b) captives.*

**ANSWER**: Deny.

68.    *The captive insurance companies established by Plaintiff were legitimate insurance companies that qualified for IRC § 831(b) status, so no statements made by Plaintiff regarding the establishment of the captive insurance companies were false or misleading at the time they were made.*

**ANSWER**: Deny.

69.    *Without its after the fact determination that the captive insurance companies did not qualify as legitimate insurance companies, the IRS could not have asserted that any statements made by Plaintiff were knowingly false or misleading at the time they were made.*

**ANSWER**: Deny.

70.    *The final decision of the IRS in late 2023 that the captive insurance companies did not qualify as legitimate insurance companies simply could not have impacted the knowledge of Plaintiff from 2013-2018 the years of the penalty assessments in this case.*

**ANSWER**: While the United States admits that a specific IRS decision made in 2023 could not have impacted Plaintiff's knowledge from 2013-2018, the United States denies all remaining allegations of paragraph 70, including any express or implied allegation that Plaintiff had no indication that its captive insurance scheme did not involve legitimate insurance prior to the IRS's

assessment of § 6700 penalties against it. For instance, the requirements to qualify as a legitimate insurance company for federal tax purposes have been defined through decades of caselaw, beginning as early as 1941 with *Helvering v. Le Gierse*, 312 U.S. 531, 539 (1941), well before the years of the penalty assessments at issue in this case.

71.    *Any statements made by Plaintiff to its captive clients regarding its captive insurance program were true at the time they were made and continue to be true at this time.*

**ANSWER**: Deny.

72.    *The IRS cannot meet it burden of proof that Plaintiff's statements allegedly made were made as to any material matter.*

**ANSWER**: Deny.

73.    *In this instance, a material matter is a statement regarding the allowability of any deduction or other tax benefit.*

**ANSWER**: The United States admits that a statement regarding the allowability of any deduction or other tax benefit may be material for purposes of 26 U.S.C. § 6700 but denies the allegation to the extent it states or implies only such statements may be material under § 6700.

74.    *As stated above, Plaintiff did not make any statements regarding the specific allowability to any client of any deduction or credit, the excludability of any income, or the securing of any tax benefit by holding an interest in and entity (captive insurance company) or participating in any plan or arrangement.*

**ANSWER**: Deny.

## COUNT I

(Tax Refund under IRC § 6700)

75.    *Plaintiff incorporates paragraphs 1–74 of its Complaint as if set forth in full.*

**ANSWER**: The United States incorporates by reference its responses to paragraphs 1-74.

76.    *For the reasons described in this Complaint and for the reasons set forth in Plaintiffs Claims for Refund, Plaintiff owes no penalty under 26 U.S.C. § 6700 for tax year 2013.*

**ANSWER**: Deny.

77.    *Plaintiff made a timely Claim for Refund on December 11, 2023.*

**ANSWER**: The United States admits that Plaintiff filed a claim for refund on December 11, 2023. The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 77.

78.    *The IRS denied the claim by letter dated June 10, 2024.*

**ANSWER**: Admit.

79.    *Accordingly, Plaintiff is entitled to a refund of the penalty amount of $166,000 that it paid pursuant to 26 U.S.C. § 6703 for tax year 2013.*

**ANSWER**: Deny.

80.    *As a result, Plaintiff is entitled to judgment in its favor and against the United States of $166,000 plus prejudgment interest.*

**ANSWER**: Deny.

## COUNT II

(Tax Refund under IRC § 6700)

81.    *Plaintiff incorporates paragraphs 1–80 of its Complaint as if set forth in full.*

**ANSWER**: The United States incorporates by reference its responses to paragraphs 1-80.

24

82.     *For the reasons described in this Complaint and for the reasons set forth in Plaintiffs Claims for Refund, Plaintiff owes no penalty under 26 U.S.C. § 6700 for tax year 2014.*

**ANSWER**: Deny.

83.     *Plaintiff made a timely Claim for Refund on December 11, 2023.*

**ANSWER**: The United States admits that Plaintiff filed a claim for refund on December 11, 2023. The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 83.

84.     *The IRS denied the claim by letter dated June 10, 2024.*

**ANSWER**: Admit.

85.     *Accordingly, Plaintiff is entitled to a refund of the penalty amount of $229,000 that it paid pursuant to 26 U.S.C. § 6703 for tax year 2014.*

**ANSWER**: Deny.

86.     *As a result, Plaintiff is entitled to judgment in its favor and against the United States of $229,000 plus prejudgment interest.*

**ANSWER**: Deny.

## <u>COUNT III</u>

(Tax Refund Under IRC § 6700)

87.     *Plaintiff incorporates paragraphs 1–86 of its Complaint as if set forth in full.*

**ANSWER**: The United States incorporates by reference its responses to paragraphs 1-86.

88.     *For the reasons described in this Complaint and for the reasons set forth in Plaintiffs Claims for Refund, Plaintiff owes no penalty under 26 U.S.C. § 6700 for tax year 2015.*

**ANSWER**: Deny.

25

89.    *Plaintiff made a timely Claim for Refund on December 11, 2023.*

**ANSWER**: The United States admits that Plaintiff filed a claim for refund on December 11, 2023. The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 89.

90.    *The IRS denied the claim by letter dated June 10, 2024.*

**ANSWER**: Admit.

91.    *Accordingly, Plaintiff is entitled to a refund of the penalty amount of $215,000 that it paid pursuant to 26 U.S.C. § 6703 for tax year 2015.*

**ANSWER**: Deny.

92.    *As a result, Plaintiff is entitled to judgment in its favor and against the United States of $215,000 plus prejudgment interest.*

**ANSWER**: Deny.

## COUNT IV

### (Tax Refund Under IRC § 6700)

93.    *Plaintiff incorporates paragraphs 1–92 of its Complaint as if set forth in full.*

**ANSWER**: The United States incorporates by reference its responses to paragraphs 1-92.

94.    *For the reasons described in this Complaint and for the reasons set forth in Plaintiffs Claims for Refund, Plaintiff owes no penalty under 26 U.S.C. § 6700 for tax year 2016.*

**ANSWER**: Deny.

95.    *Plaintiff made a timely Claim for Refund on December 11, 2023.*

**ANSWER**: The United States admits that Plaintiff filed a claim for refund on December 11, 2023. The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 95.

96.     *The IRS denied the claim by letter dated June 10, 2024.*

**ANSWER**: Admit.

97.     *Accordingly, Plaintiff is entitled to a refund of the penalty amount of $229,000 that it paid pursuant to 26 U.S.C. § 6703 for tax year 2016.*

**ANSWER**: Deny.

98.     *As a result, Plaintiff is entitled to judgment in its favor and against the United States of $229,000 plus prejudgment interest.*

**ANSWER**: Deny.

## COUNT V

### (Tax Refund Under IRC § 6700)

99.     *Plaintiff incorporates paragraphs 1–98 of its Complaint as if set forth in full.*

**ANSWER**: The United States incorporates by reference its responses to paragraphs 1-98.

100.    *For the reasons described in this Complaint and for the reasons set forth in Plaintiffs Claims for Refund, Plaintiff owes no penalty under 26 U.S.C. § 6700 for tax year 2017.*

**ANSWER**: Deny.

101.    *Plaintiff made a timely Claim for Refund on December 11, 2023.*

**ANSWER**: The United States admits that Plaintiff filed a claim for refund on December 11, 2023. The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 101.

102.    *The IRS denied the claim by letter dated June 10, 2024.*

**ANSWER**: Admit.

103.    *Accordingly, Plaintiff is entitled to a refund of the penalty amount of $106,000 that it paid pursuant to 26 U.S.C. § 6703 for tax year 2017.*

**ANSWER**: Deny.

104.    *Accordingly, Plaintiff is entitled to judgment in its favor and against the United States of $106,000 plus prejudgment interest.*

**ANSWER**: Deny.

## COUNT VI

(Tax Refund Under IRC § 6700)

105.    *Plaintiff incorporates paragraphs 1–104 of its Complaint as if set forth in full.*

**ANSWER**: The United States incorporates by reference its responses to paragraphs 1-104.

106.    *For the reasons described in this Complaint and for the reasons set forth in Plaintiffs Claims for Refund, Plaintiff owes no penalty under 26 U.S.C. § 6700 for tax year 2018.*

**ANSWER**: Deny.

107.    *Plaintiff made a timely Claim for Refund on December 11, 2023.*

**ANSWER**: The United States admits that Plaintiff filed a claim for refund on December 11, 2023. The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 107.

108.    *The IRS denied the claim by letter dated June 10, 2024.*

**ANSWER**: Admit.

109.    *Accordingly, Plaintiff is entitled to a refund of the penalty amount of $44,000 that it paid pursuant to 26 U.S.C. § 6703 for tax year 2018.*

**ANSWER**: Deny.

28

110.    *As a result, Plaintiff is entitled to judgment in its favor and against the United States of $44,000 plus prejudgment interest.*

**ANSWER**: Deny.

## COUNT VII

(Laches)

111.    *Plaintiff incorporates paragraphs 1-110 of its Complaint as if set forth in full.*

**ANSWER**: The United States incorporates by reference its responses to paragraphs 1-110.

112.    *The IRS waited more than eight years after initiating its audit of Plaintiff to impose the IRC § 6700 Penalty against HDH Group, which was inexcusable.*

**ANSWER**: Deny. By way of further response, Plaintiff is barred from asserting laches in this matter. *See, e.g., United States v. Zarra,* 810 F. Supp. 758, 769 (W.D. Pa. 2011); *Groves v. United States,* No. 16-C-2485, 2017 WL 1806593, at * 6 (N.D. Ill. 2017).

113.    *Plaintiff suffered severe prejudice from Defendants' inexcusable delay in the form of the likely unavailability of relevant witnesses, the likely loss of key files, and due to witnesses' memories fading over time.*

**ANSWER**: Deny. By way of further response, Plaintiff is barred from asserting laches in this matter. *See, e.g., United States v. Zarra,* 810 F. Supp. 758, 769 (W.D. Pa. 2011); *Groves v. United States*, No. 16-C-2485, 2017 WL 1806593, at * 6 (N.D. Ill. 2017).

114.    *Due to Defendants' conduct as described above, Plaintiff has suffered damages as noted above and below.*

**ANSWER**: Deny. By way of further response, Plaintiff is barred from asserting laches in this matter. *See, e.g., United States v. Zarra,* 810 F. Supp. 758, 769 (W.D. Pa. 2011); *Groves v. United States*, No. 16-C-2485, 2017 WL 1806593, at * 6 (N.D. Ill. 2017).

29

WHEREFORE, the United States respectfully requests the Court deny the relief requested in the Complaint, enter judgment in the United States' favor on each count of the Complaint, and grant it such other and further relief as the Court deems just and proper, including awarding the United States its costs incurred in this proceeding.

## DEFENDANT UNITED STATES' COUNTERCLAIM

The United States of America, for its counterclaim against HDH Group, Inc., ("HDH") alleges as follows:

1.      This Counterclaim seeks to reduce to judgment the unpaid balance of the penalties assessed against HDH under 26 U.S.C. § 6700 for tax years 2013 through 2018 (the "relevant period").

2.      The penalties at issue in this Counterclaim are the same penalties at issue in HDH's Complaint.

3.      This Counterclaim is commenced pursuant to 26 U.S.C. § 7401 at the request and with the authorization of a delegate of the Secretary of the Treasury and at the direction of a delegate of the Attorney General.

4.      This Court has jurisdiction over the Counterclaim pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1396.

## BACKGROUND

6.      HDH is an insurance agency and brokerage firm located in Pittsburgh, Pennsylvania. In 2015, HDH came under the umbrella of HUB International, another insurance group which is headquartered in Chicago, Illinois.

30

## Insurance for Federal Income Tax Purposes

7.      Insurance premiums paid or incurred in carrying on a trade or business are generally a tax-deductible business expense under 26 U.S.C. § 162 and 26 C.F.R. § 1.162-1(a).

8.      Money set aside for self-insurance is generally not a tax-deductible business expense under 26 U.S.C. § 162.

9.      Internal Revenue Code (26 U.S.C) § 816(a) defines an insurance company as "any company more than half of the business of which during the taxable year is the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies."

10.     Although neither the Internal Revenue Code nor the Treasury Regulations define the term "insurance," the term has been defined through decades of caselaw, beginning as early as 1941 with *Helvering v. Le Gierse*, 312 U.S. 531, 539 (1941).

11.     To constitute insurance for federal income tax purposes, the arrangement must meet all the following criteria: it must involve risk-shifting (also called risk transfer); it must involve adequate levels of risk distribution; it must involve insurance risk; and it must meet commonly accepted notions of insurance.

12.     Under 26 U.S.C. § 831(b), small insurance companies may elect to exclude from their taxable income insurance premiums received, as long as those premiums do not exceed a threshold set by law and the company meets the diversification requirements outlined in the statute.

13.     The 26 U.S.C. § 831(b) election is only available to bona fide insurance companies.

14.     Generally, a captive insurance company is an insurance company that insures the risks of companies related to it by ownership.

15.     A microcaptive insurance company, or "microcaptive," is a small captive insurance company, usually one with premiums under the thresholds set by 26 U.S.C. § 831(b).

31

**HDH's Microcaptive Program and Risk Pool**

16.     During the relevant period, HDH helped customers set up purported microcaptives through a program that it referred to as its "831(b) practice."

17.     Each of the purported microcaptives created through HDH's program ("HDH microcaptive") purportedly insured the operating company that owned it.

18.     HDH also provided an option for its microcaptives to participate in a risk pool that HDH created and managed through its subsidiary, Mount Washington Group, LLC ("Mt. Washington" or the "HDH risk pool").

19.     The HDH risk pool also operated under the name Grant Street Assurance, LLC.

20.     An HDH microcaptive that chose to participate in the HDH risk pool ("HDH risk pool participant") would contract with the HDH risk pool to both buy, and provide, purported reinsurance.

21.     Each HDH risk pool participant paid purported premiums in exchange for purported reinsurance coverage from the HDH risk pool.

22.     Each HDH risk pool participant agreed to provide purported reinsurance coverage to the other HDH risk pool participants, and, in exchange, received purported premium payments from the HDH risk pool.

**HDH'S MICROCAPTIVE PROGRAM AND RISK POOL WERE NOT INSURANCE FOR FEDERAL TAX PURPOSES**

23.     HDH microcaptives, including those who participated in the HDH risk pool, reported on their tax returns that they were insurance companies operating under 26 U.S.C. § 831(b), and therefore did not pay taxes on their purported premium income.

32

24.    The insured operating companies reported on their tax returns that the amounts purportedly paid to the HDH microcaptives were insurance premiums, and therefore took deductions for those payments under 26 U.S.C. § 162.

25.    Neither the HDH microcaptives nor the HDH risk pool met the necessary criteria to constitute insurance for federal income tax purposes.

26.    As a result, HDH's customers improperly excluded purported premium income from their microcaptives' taxable income and claimed improper tax deductions for purported insurance premiums paid by the insured operating companies to their HDH microcaptives.

**Risk-Shifting (Risk Transfer)**

27.    HDH's microcaptive program did not shift any real risk from the insured operating companies to their microcaptives.

28.    The HDH microcaptives charged such excessively high purported premiums that there was no realistic chance the microcaptives' losses would be higher than the premiums received.

29.    HDH's risk pool did not shift any real risk between the HDH risk pool participants and the pool.

30.    The HDH risk pool priced purported premiums excessively high for the purported reinsurance coverage it provided participants.

31.    As a result, there was no realistic chance that an HDH risk pool participant would have to cover purported pool losses that exceeded the amount the participant had received in purported premiums.

32.    Correspondingly, there was no realistic chance that the losses of the HDH risk pool as a whole would exceed the amount of purported premiums received by the pool as a whole.

**Risk Distribution**

33.     A bona fide insurance arrangement is necessary to adequately distribute risk.

34.     The HDH microcaptives were not bona fide insurance companies because they were not formed for legitimate non-tax reasons; did not charge reasonable and actuarially determined premiums; exhibited circular cash flows; and did not enter into arm's-length contracts.

35.     The HDH microcaptives were formed to provide a tax shelter for HDH customers.

36.      The purported insurance premiums HDH microcaptives charged the insured operating companies were excessive.

37.     The purported insurance premiums HDH microcaptives charged the insured operating companies were not commercially reasonable.

38.     HDH set the purported premiums for the microcaptives.

39.     HDH hired and oversaw actuaries who reviewed its pricing.

40.     The actuaries hired by HDH did not conduct an independent review of HDH's pricing.

41.     HDH employed a premium pricing mechanism designed to achieve tax benefits under 26 U.S.C. §§ 831(b) and 162.

42.     Rather than insureds seeking specific coverage and paying the resulting premium, HDH and its customers adjusted insurance coverage to reach the customer's target premium.

43.     Some of the HDH microcaptives exhibited circular cash flows between the operating insured, its owner, and the purported microcaptive.

44.     The HDH microcaptives did not enter into arm's-length contracts with the insured operating companies, or with the HDH risk pool.

34

45.     At least one HDH microcaptive allowed the operating company it purportedly insured to pay its purported premium by transferring stock ownership to the captive.

46.     At least one HDH client provided purported advances to its microcaptive to pay for the captive's operating costs, with no provision for interest and no fixed repayment terms.

47.     The HDH risk pool operated through Mt. Washington was not a bona fide insurance arrangement because it was not formed for legitimate non-tax reasons; it did not charge reasonable and actuarially determined premiums; it exhibited circular cash flows; and it did not enter into arm's-length contracts.

48.     The HDH risk pool was formed to create the appearance of risk distribution for HDH microcaptives so that HDH customers could claim their microcaptives constituted insurance for federal tax purposes.

49.     The HDH risk pool charged grossly excessive purported premiums.

50.     The purported reinsurance premiums paid in to the HDH risk pool by participants were neither actuarially determined nor commercially reasonable.

51.     The purported reinsurance premiums paid out from the HDH risk pool to participants were neither actuarially determined nor commercially reasonable.

52.     The premium pricing formula and the purported reinsurance coverage offered by the HDH risk pool were the same for all participants.

53.     The purported reinsurance premiums that participants paid to the HDH pool were set by multiplying the participants' written premiums by 53.5% in earlier years and 51% in later years.

35

54.     The purported reinsurance premiums that the HDH risk pool paid to participants were set to be exactly equal to the amount of purported reinsurance premiums the participants paid into the pool.

55.     Because the purported reinsurance transactions between the HDH risk pool and each participant were in offsetting amounts, the flow of funds was circular.

56.     Reinsurance contracts between participants and the HDH risk pool were not arm's-length contracts.

57.     The HDH risk pool participants were provided with little, if any, information about the risks they were purportedly taking on through the reinsurance contracts.

58.     The HDH risk pool contracts were designed to implicitly or explicitly limit the purported potential losses that a participant in the pool could face at limits below the levels required to achieve adequate risk distribution.

**Commonly Accepted Notions of Insurance**

59.     The purported insurance policies that HDH drafted for its microcaptives and its risk pool did not meet commonly accepted notions of insurance.

60.     HDH customers participating in the microcaptive program purchased purported insurance policies covering purported risks for which they had never previously purchased coverage, nor incurred self-insured losses, before creating the microcaptive.

61.     HDH customers participating in the microcaptive program usually maintained all of the commercial insurance policies they held before creating the microcaptive in addition to buying the newly created policies.

62.     The HDH microcaptives were not operated like insurance companies.

63.     The HDH microcaptives did not have employees or physical locations.

64.    The HDH microcaptive policy contracts were often not signed and completed until after the effective date of the policy, sometimes months after.

65.    The actuarial review of the HDH microcaptive pricing was often not completed and provided until after the effective date of the policy, sometimes months after.

66.    As described in paragraphs 36-42, the HDH microcaptives did not charge purported premiums that were reasonable or actuarially determined.

67.    As described in paragraphs 49-54, the HDH risk pool did not charge purported premiums that were reasonable or actuarially determined.

68.    The HDH microcaptives did not enter into arm's-length contracts either with the insured operating companies or the HDH risk pool.

## HDH VIOLATED 26 U.S.C. § 6700

69.    Section 6700 of the Internal Revenue Code imposes a penalty on any person who organizes (or assists in the organization of) a partnership or other entity, any investment plan or arrangement, or any other plan or arrangement; or who participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement; and who makes or furnishes or causes another person to make or furnish (in connection with such organization or sale) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter.

70.    HDH's microcaptive program constituted a plan or arrangement within the meaning of 26 U.S.C. § 6700.

71.     HDH's risk pool constituted a plan or arrangement within the meaning of 26 U.S.C. § 6700.

72.     HDH organized and controlled its microcaptive program.

73.     HDH also organized and controlled the risk pool offered by Mt. Washington.

74.     In connection with organizing and selling its microcaptive program and risk pool, HDH made, furnished, and caused others to make or furnish, false or fraudulent statements regarding the allowability of a deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of participating in the HDH microcaptive arrangement and the HDH risk pool.

75.     In connection with organizing and selling its microcaptive program and risk pool, HDH made and furnished false statements with respect to whether the HDH microcaptives and HDH risk pool met the requirements to be considered insurance for federal tax purposes, including whether they met the test criteria for risk transfer, risk distribution, insurable risks, and operating as insurance in the common sense.

76.     HDH advertised the general availability of tax benefits resulting from participation in its microcaptive program.

77.     HDH marketed its microcaptive program by telling its customers that they could save hundreds of thousands of dollars in taxes each year.

78.     HDH made statements communicating to customers and/or their advisors that its captives qualified for the tax benefits provided by 26 U.S.C. § 831(b).

79.     HDH furnished customers with financial statements for their microcaptives which stated that the captives qualified under 26 U.S.C. § 831(b) and therefore did not need to pay income tax.

38

80.    The statements described in paragraphs 78-79 were false because the HDH microcaptives were not insurance companies for federal tax purposes and thus could not be qualified under 26 U.S.C. § 831(b) or benefit from the associated tax advantages.

81.    HDH made statements communicating to customers and/or their advisors that payments from the customers' operating company to an HDH microcaptive were insurance premium payments that would be tax deductible.

82.    The statements described in paragraph 81 were false because the HDH microcaptives were not insurance companies for federal tax purposes and thus the payments to those companies were not deductible as ordinary and necessary expenses under 26 U.S.C. § 162.

83.    HDH made statements communicating to customers and/or their advisors that HDH risk pool participants would satisfy the risk distribution prong of the IRS test for legitimate insurance.

84.    The statements described in paragraph 83 were false because the HDH risk pool did not adequately distribute risk and was not an insurance arrangement for federal tax purposes.

85.    HDH made statements communicating to customers or their advisors that legal opinions, which HDH furnished, endorsed their microcaptive program and the HDH risk pool.

86.    The statements described in paragraph 85 were false because the legal opinions were premised on factual assumptions that did not match the reality of the HDH program.

87.    HDH made and furnished statements to customers and/or their advisors that the premiums the microcaptives charged their operating companies were actuarially determined, had undergone an "independent review" by accredited actuaries, and were commercially reasonable.

39

88.    The statements described in paragraph 87 were false because the purported premiums the microcaptives charged their operating companies were not actuarially determined, did not undergo an independent actuarial review, and were not commercially reasonable.

89.    HDH created "feasibility studies" for customers and prospective customers. These purported feasibility studies stated that the premiums HDH proposed were within established actuarial rates.

90.    HDH furnished customers with statements from consulting actuaries that the assumptions, premiums, and calculations HDH included in its feasibility studies, business plans, and pro forma financial projections were reasonable.

91.    The statements described in paragraphs 89-90 were false because the premiums proposed by HDH were not actuarially determined and were not reasonable.

92.    The false statements that HDH made and furnished were material because they were likely to substantially impact the decision-making process of a reasonably prudent investor considering whether to participate in the microcaptive program and/or the HDH risk pool.

93.    The false statements HDH made and furnished were material because they resulted in the understatement of tax liability for participants.

94.    HDH knew or had reason to know that the statements described in paragraphs 78-79, 81, 83, 85, 87, and 89-90 were false or fraudulent.

95.    HDH knew or should have known that the purported premiums being charged were not actuarially determined because the premiums were calculated to achieve desired tax benefits for its customers rather than to insure risk.

40

96.    HDH knew or should have known the microcaptives and risk pool it was creating were not bona fide insurance companies based on its decades of experience in the insurance industry.

97.    HDH knew or should have known that the microcaptives and risk pool it was creating were not bona fide insurance companies based on the expertise many of its employees hold on topics like risk management and actuarial sciences.

98.    HDH knew or should have known that the microcaptives and risk pool it was creating were not eligible for tax benefits because it tracked changes in law regarding 26 U.S.C. § 831(b) and communicated those changes to its clients.

99.    HDH knew or should have known that the microcaptives and risk pool it created were not eligible for tax benefits because it took steps to notify its clients when 26 U.S.C. § 831(b) transactions were listed as a reportable transaction by the IRS.

100.    At least as early as May 2014, HDH knew or should have known that the IRS had disallowed its customers premium deductions and 26 U.S.C. § 831(b) exclusions because its microcaptive program was not insurance for federal tax purposes.

101.    Additionally, HDH knew that the IRS was investigating its microcaptive practice beginning in 2015 and continued to organize and sell its microcaptive program until at least 2018.

102.    As required by 26 U.S.C. § 6751(b), the immediate supervisor of the individual making the determination personally approved, in writing, the initial determination of assessment before the penalties were assessed.

### THE ASSESSED PENALTY AMOUNTS ARE CORRECT

103.    HDH had gross income from its microcaptive program in the following amounts during the years at issue:

41

| Year | Gross Income<br>HDH Microcaptives Department |
|------|----------------------------------------------|
| 2013 | $2,207,031 |
| 2014 | $3,047,077 |
| 2015 | $2,854,734 |
| 2016 | $3,049,606 |
| 2017 | $1,399,189 |
| 2018 | $571,260 |

104.    Section 6700 of the Internal Revenue Code provides for a penalty equal to 50 percent of the gross income derived (or to be derived) from the § 6700 activity.

105.    Based on HDH's conduct, and in accordance with 26 U.S.C. § 6700(a), a delegate of the Secretary of the Treasury assessed penalties against HDH equal to 50 percent of the gross income HDH derived from the microcaptive and risk pool programs during the relevant period. Those penalties were assessed by a delegate of the Secretary of the Treasury against HDH on November 13, 2023 as follows:

| Tax Year | Assessment Amount |
|----------|-------------------|
| 2013 | $1,103,515.00 |
| 2014 | $1,523,539.00 |
| 2015 | $1,427,367.00 |
| 2016 | $1,524,803.00 |
| 2017 | $699,595.00 |
| 2018 | $285,630.00 |
| **Total** | **$6,564,449.00** |

106.    Notice of the assessments and demand for payment were given to HDH on or about the date of the assessments.

107.    Despite notice and demand for payment, HDH has not fully paid the balance of these assessments.

108.    The outstanding balance of the assessments remains unpaid, with statutory interest and additions continuing to accrue.

42

109.    As of November 8, 2024, the outstanding balance for each assessment is as follows:

| Tax Year | Outstanding Balance as of November 8, 2024 |
|---|---|
| 2013 | $1,016,271.77 |
| 2014 | $1,403,285.58 |
| 2015 | $1,314,216.49 |
| 2016 | $1,404,653.40 |
| 2017 | $643,469.98 |
| 2018 | $261,941.25 |
| Total | $6,043,838.47 |

WHEREFORE, the United States respectfully requests that the Court enter judgment in its favor and against HDH as follows:

A.  Enter a money judgment the United States and against HDH in the amount of $6,043,838.47 plus statutory interest and additions accruing after November 8, 2024; and

B.  Grant the United States its costs and any other relief that the Court deems just and proper.

[signature page to follow]

43

Dated: November 8, 2024

Respectfully submitted,

ERIC G. OLSHAN
United States Attorney

DAVID A. HUBBERT
Deputy Assistant Attorney General

By      */s/ Elisabeth K. Kryska*
ELISABETH K. KRYSKA
Maryland Bar No. 2211280290
CHRISTOPHER RAJOTTE
Florida Bar No. 107742
ALAN D. BAILEY
Kentucky Bar No. 100427
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-6717 (Kryska)
             (202) 514-6491 (Rajotte)
             (202) 514-6075 (Bailey)
Fax: (202) 514-6770
Elisabeth.K.Kryska@usdoj.gov
Christopher.Rajotte@usdoj.gov
Alan.Bailey@usdoj.gov

*Attorneys for the United States*

44