**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| HDH GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-CV-00988 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ——————————————— | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HDH GROUP, INC., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |
| ——————————————— | ) | |

**UNITED STATES' OPPOSITION TO HDH GROUP INC.'S MOTION FOR SUMMARY
JUDGMENT AND MOTION TO DISMISS COUNTERCLAIM**

The United States of America submits this Memorandum of Law in Opposition to HDH

Group Inc.'s ("HDH") Motion for Summary Judgment (ECF No. 26) and Motion to Dismiss

Counterclaim (ECF No. 25). For the reasons stated below, both of HDH's motions should be

denied.

# Table of Contents

I.    Introduction .................................................................................................................... 3

II.   Background ..................................................................................................................... 4

   A.   Tax Law Background ................................................................................................. 5

   B.   Posture of the Current Case ...................................................................................... 9

III.  Argument ........................................................................................................................ 9

   A.   HDH already has access to a jury trial on its liability for penalties imposed by 26 U.S.C. § 6700, and is entitled to nothing more ................................................................................ 12

     1.   HDH has access to a jury trial on its liability for the § 6700 penalties ........................ 12

     2.   *Jarkesy* addressed the right to a jury trial, not its timing or prerequisites, and is therefore irrelevant ...................................................................................................... 13

   B.   Under the Seventh Amendment analysis applied in *Jarkesy*, the public rights exception permits tax controversies to be resolved outside of an Article III court, without a jury. ......... 14

   C.   Under the public rights exception, tax penalties as well as taxes can be determined administratively .................................................................................................................... 18

   D.   The inclusion of the word "fraudulent" in IRC § 6700 does not allow the Court to bypass the public rights exception. ................................................................................................... 19

   E.   The tax refund framework created by Congress is constitutional .................................... 22

IV.   Conclusion .................................................................................................................... 26

# I.    INTRODUCTION

Taxpayers in HDH's position have a statutory right to bring a tax refund suit in a district court contesting assessments of tax penalties against them, and to have a jury determine their liability for those penalties. HDH has filed a tax refund suit here with respect to penalties imposed by 26 U.S.C. § 6700 and assessed against it for promoting abusive tax shelters. The trial proceeds de novo; neither the court nor the jury defers to the IRS's findings in determining liability. Unsatisfied with the post-assessment jury trial right that Congress provided, HDH seeks to upend centuries of tax administration and disrupt the Constitution's separation of powers by demanding that Article III courts override the will of Congress, on a matter within its plenary authority, and insert themselves into the initial stages of tax assessment and collection. HDH also takes issue with long-established requirements that taxpayers submit payment and an administrative refund claim to the IRS before they can access district court review. Contrary to HDH's claims, the tax framework created by Congress—in which assessments, administrative review, and payment all occur before judicial review is available—does not violate the Constitution.

This case consists of two related actions: a claim by HDH for a refund of its partial payment of tax penalties, and a counterclaim by the United States for the unpaid remainder of those penalties. The refund claim is set to proceed to a jury trial, because HDH has invoked its statutory (not constitutional) right to a jury trial on that claim. HDH has not yet answered the United States' counterclaim, but has the option to demand a jury trial on that count as well. Should HDH request a jury trial when it answers the United States' counterclaim, both claims will be tried before a jury.

Yet HDH now seeks to foreclose either claim from being heard by a jury by asking this Court to grant it summary judgment on its refund claim before discovery has even begun, and to

dismiss the United States' counterclaim.[1] HDH's reasoning is surprising, to say the least: HDH argues that all claims should be ruled on now by this Court, rather than proceeding to a jury trial, because permitting the case to proceed to a jury trial would violate its Seventh Amendment right to a jury trial.

To achieve this outcome, HDH asks this Court to rule that three key statutes in the Internal Revenue Code—IRC §§ 6700, 6703, and 7422—are unconstitutional, and (although it fails to identify the case in its briefing) to reach a conclusion that would necessarily overrule the Supreme Court's decision in *Flora v. United States*, 362 U.S. 145 (1960).

This Court should deny the relief sought in HDH's motions for summary judgment and dismissal of the United States' counterclaim. HDH's assertion that its right to a jury trial has been violated, made in a case which will be set for a jury trial, is absurd on its face. The purportedly constitutional arguments HDH makes misconstrue the Supreme Court's holding in *SEC v. Jarkesy*, 603 U.S. 109 (2024), while ignoring relevant binding precedent from the United States Supreme Court and the Third Circuit.

## II.    BACKGROUND

The Internal Revenue Code imposes penalties on promoters of abusive tax shelters. Procedurally, a tax penalty is first assessed and can afterward be collected. Congress has limited taxpayers' access to judicial review in matters of taxes and revenue collection. A summary of the tax administration process in this case, and HDH's options for obtaining judicial review, follows.

---

[1] HDH sets forth the legal standards for dismissal under Fed. R. Civ. P. 12(b)(6) and for Summary Judgment under Fed. R. Civ. P. 56 in its brief (ECF No. 29) and attached its required statement of material facts (ECF No. 27). The United States does not dispute HDH's recitation of the legal standards, but as explained below, opposes its motions as a matter of law. Further, the United States submits its response to HDH's statement of facts contemporaneously with this brief.

### A. Tax Law Background

Section 6201 of the Internal Revenue Code (Title 26, "IRC" or the "Code") authorizes and requires the Secretary of the Treasury to, among other things, make "assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by [Title 26. . . ]" 26 U.S.C. § 6201(a).

The tax penalties at issue here are imposed by IRC § 6700 and are considered "taxes" under the Code. Section 6700 is included in Chapter 68, Subchapter B of the IRC, which contains the Code's "Assessable Penalties." As stated above, assessable penalties are included in the definition of "all taxes" that the Secretary is authorized and required to assess. IRC § 6201(a). Their inclusion within the broad category of "taxes" is reiterated by IRC § 6671, which dictates that, unless otherwise provided, any reference the IRC makes to "tax" includes assessable penalties.

Making a tax assessment consists of (1) establishing the amount of tax liability owed and (2) recording that liability. *United States v. Galletti*, 541 U.S. 114, 122 (2004); *see also* 26 USC § 6203, "Method of Assessment" ("The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary.").

The IRS cannot exercise any of its administrative collection powers until after a tax has been assessed. For this reason, assessment marks an important point in the tax administration process. Even so, assessment is not itself a collection action. "[T]he fact that the act of assessment has consequences does not change the function of the assessment: to calculate and record a tax liability." *Galletti*, 541 U.S. at 123 (Thomas, J., writing for a unanimous Court). Further, each of the IRS's administrative collection actions is subject to its own set of procedures and safeguards that provide taxpayers with due process and ensure accurate application of the laws. *See, e.g.*, IRC

§ 6330 (providing for notice and opportunity for hearing before levy); IRC § 6320 (providing for notice and opportunity for hearing upon filing of notice of lien); IRC § 6304 (specifying fair tax collection practices).

In this case, the IRS began an audit in 2015 of a microcaptive insurance program that HDH ran and promoted, because the IRS had reason to believe the microcaptives were being used as abusive tax shelters. *See* United States' Response to HDH Group, Inc.'s Statement of Material Facts, ("United States Material Facts") ¶ 1. The IRS conducted a thorough examination. *See* United States' Concise Statement of Additional Material and Undisputed Facts, ¶ 11. After gathering and reviewing the evidence, on November 13, 2023, the IRS assessed § 6700 penalties against HDH because of its activities promoting microcaptive insurance and reinsurance arrangements. *See* United States Material Facts, ¶ 4. Following the assessments, HDH had at least two avenues to challenge its liability for the tax penalties. The first option, which it pursued, was to pay and then seek a refund under the procedures set out in the Internal Revenue Code, including at IRC § 6703 and § 7422, two of the statutes it challenges as unconstitutional.

Taxpayers are generally required to fully pay a tax or penalty before they can bring suit in district court contesting liability via a refund claim. The Supreme Court confirmed and articulated this requirement in *Flora v. United States*, 362 U.S. 145 (1960), after considering statutory language and historical practice. For certain tax penalties, including those imposed by § 6700 (as at issue here), Congress granted taxpayers a reprieve under 26 U.S.C. § 6703, which allows a party to sue for a refund after paying only 15% of the amount owed rather than 100%. HDH, unlike most taxpayers, had the rare opportunity to obtain district court review of its tax liability *without* fully paying, and did so.

6

In addition to pre-payment, a taxpayer seeking a refund must comply with all the other conditions Congress included in its waiver of sovereign immunity allowing the United States to be sued for tax refunds. This includes the requirement in IRC § 7422(a) that the taxpayer submit a refund claim to the IRS before filing in district court, along with the requirement that the refund claim "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402-2(b)(1). Under § 6703(c)(2), if the IRS denies the refund claim, or does not respond within six months, the taxpayer then has thirty days to bring a suit in district court "for the determination of his liability for such penalty."[2] Generally, taxpayers bringing tax refund suits in district court are entitled to a jury trial by statute. 28 U.S.C. § 2402. And regardless of whether a taxpayer elects to have their case heard by a judge or a jury, the question of their liability is considered de novo, with no consideration of (let alone deference to) the IRS' findings or reasoning. *See, e.g.*, *Samango v. United States*, 2019 WL 2525741, at *7 (E.D. Pa. June 18, 2019), *aff'd*, 833 Fed. App'x. 941 (3d Cir. 2020).[3]

Alternatively, HDH could have chosen to wait for the IRS to begin administrative collection. IRC § 6330 requires the IRS to notify a taxpayer of its intent to levy, and § 6320 requires

_____

[2] HDH also had the option to pay 100% of the penalty and sue under the broader tax refund statutes, in which case it would have had two years to bring suit in district court after the IRS denied its request or went six months without responding. IRC § 6532.

[3] The IRS' determination of the *amount* of the assessment is entitled to a presumption of correctness. *See In re MDL-731 Tax Refund Litig. of Organizers & Promoters of Inv. Plans Involving Book Properties Leasing*, 989 F.2d 1290, 1301 (2d Cir. 1993) (holding, in a § 6700 penalty refund suit, "the government [is] entitled to a presumption that its assessment of the penalties [is] correct") (citing *Welch v. Helvering*, 290 U.S. 111, 115 (1933)). This does not pose an issue under the Seventh Amendment, as the Supreme Court held in *Tull v. United States* that even where the question of liability for a penalty must be decided by a jury, the Seventh Amendment does not require that a jury calculate or decide the amount of the penalty. 481 U.S. 412, 425-27 (1987).

notice of filing of notice of federal tax lien. Those notices must inform the taxpayer of their right to a collection due process ("CDP") hearing. HDH could have invoked that right and gained access to a hearing before an impartial officer within the IRS Independent Office of Appeals. IRC § 6330(b). Unless HDH had a previous opportunity to dispute its liability, HDH could have raised challenges to its liability for the penalty at this hearing. Assuming a liability continued to exist, the resulting determination would have been subject to de novo review by the Tax Court and appellate review in the Circuit Court.[4] § 6330(d)(1); *see, e.g.*, *Lemay v. Comm'r*, 119 T.C.M. (CCH) 1389 (T.C. 2020), *aff'd*, No. 20-9001, 2021 WL 3930279 (10th Cir. Sept. 2, 2021) (Tax Court engaging in de novo review of § 6700 penalty liability); IRC § 7482(a)(1) (providing that the United States Courts of Appeals "shall have jurisdiction to review the decisions of the Tax Court . . . in the same manner and the same extent as decisions of the district courts . . .").

Whether pursuing review in the district court or the Tax Court, HDH had the opportunity for a de novo judicial determination of its liability for the penalties at issue. But a taxpayer cannot pursue both avenues simultaneously. *Cf. Flora*, 362 U.S. at 166 (discussing the problems that would arise if a taxpayer could pursue simultaneous relief in Tax Court and district court). Importantly, it is the taxpayer, through their own actions, and not the IRS, who determines the forum of review in any given § 6700 case.[5]

---

[4] If the liability no longer existed because, for example, it was fully paid by offsets or other means, HDH would then have been able to challenge its liability via a refund claim.

[5] HDH dedicates multiple paragraphs of its brief to complaints that it has been unable to access a hearing before the IRS Independent Office of Appeals or to access Tax Court review of the assessments against it. *See* ECF No. 29, Memorandum of Law in Support of HDH Group, Inc.'s Motion for Summary Judgment and Motion to Dismiss the United States Counterclaim, p.11-12. But it was fully in HDH's power to access such review. HDH need only have refrained from

(continued...)

## B. Posture of the Current Case

HDH sued the United States for a refund of its partial payment of tax penalties, and the United States counterclaimed for the unpaid remainder of the penalties. The penalties were assessed after an IRS investigation found that HDH promoted an abusive tax shelter over the course of several years. If the case reaches trial, it will be heard and decided by a jury. *See Section III(A)(1), infra.*

On February 27, 2025, HDH moved for summary judgment on its refund claim and to dismiss the United States' counterclaim. Both motions were supported by a single memorandum of law which argued that the Supreme Court's decision in *SEC v. Jarkesy*, 603 U.S. 109 (2024), was dispositive of all claims. HDH is incorrect, and this Court should deny its motions accordingly.

## III.    ARGUMENT

HDH is alleged to have spent several years promoting abusive tax shelters involving captive insurance. The IRS, after a thorough investigation, did as Congress instructed: it determined that HDH's actions met the criteria for the penalty imposed by IRC § 6700 and assessed penalties under §§ 6201, et seq. HDH has now brought the matter to this Court, following the procedures set forth by statute, where it will have the chance to present its case to a jury. The jury will make the ultimate determination of HDH's liability for the penalties. This case is an example of tax administration functioning as intended.

HDH now attempts to rewrite a recent Supreme Court decision addressing a completely different set of circumstances in a way that would relieve it of any liability for penalties without a

---

making payment and pursuing a refund claim, and instead pursued the second avenue laid out above.

jury, or anyone else, considering the merits of the case against it.  Citing *SEC v. Jarkesy*, 603 U.S. 109 (2024), HDH contends this Court should end this case immediately and absolve HDH of all liability for its alleged malfeasance. To reach this outcome, HDH argues that this Court must strike down at least three statutes as unconstitutional, while providing little to no analysis of the statutes themselves or the previous court decisions affirming their constitutionality. This Court should decline HDH's invitation to rewrite both *Jarkesy* and the tax code without regard for decades of binding precedent.

*Jarkesy* addressed the narrow question of "whether the Seventh Amendment entitles a defendant to a jury trial when the SEC seeks civil penalties against him for securities fraud." 603 U.S. at 120. The Supreme Court ruled that it does.

At first glance, there are some superficial similarities between the situation HDH faces and the one faced by George Jarkesy. The IRS' assessment of a tax penalty against HDH, for example, parallels the SEC's decision to charge Mr. Jarkesy with a civil penalty: both involve an administrative conclusion that a person owes a penalty, and a calculation of the amount owed. In *Jarkesy* there were two avenues to obtain judicial review of penalty liability, only one of which provided the opportunity for a jury trial. As described above, HDH also had two main avenues to obtain judicial review of its penalty liability, only one of which (pursuing a refund claim) provided the opportunity for a jury trial.

But the most important factors are where these cases differ. Under the securities laws, the SEC, rather than the party facing the penalty, chose the path for judicial review. When the SEC chose the administrative path, as it did in Mr. Jarkesy's case, the party facing a penalty was forever foreclosed from having a jury decide their liability for the penalty. Thus, Mr. Jarkesy never had the *opportunity* to present his defenses to the SEC's allegations to a jury. Here, conversely, HDH

had the choice of which path to follow. HDH chose to file this refund suit, in which a jury will decide its liability for the penalties. The problem in Mr. Jarkesy's case – lack of access to a jury trial to determine penalty liability – simply does not exist in this case, where HDH is set to have a jury trial to determine its penalty liability. And because the Supreme Court held only that the Seventh Amendment prevented the SEC from compelling Mr. Jarkesy to defend himself against SEC fraud penalties without the option of ever having a jury trial, its holding simply does not support HDH's objections to the timing of and preconditions to its right to a jury trial. HDH could—and did—choose to have its liability for the penalty decided by a jury in an Article III court. This fact alone requires denial of both of HDH's motions.

But even if this Court were to decide that HDH's access to a jury trial were not dispositive (and it is), a Seventh Amendment analysis using the two-part framework set forth in *Jarkesy* requires the same outcome. HDH's motions are doomed because the public rights exception exempts internal revenue matters from Article III jurisdiction and Seventh Amendment rights in the first instance. Congress, not the judiciary, has the authority to create laws for the assessment, collection, and enforcement of taxes. The § 6700 penalties, as matters of revenue collection and tax enforcement, are well within the bounds of the public rights exception. And § 6700's inclusion of the word "fraudulent" does not allow the Court to ignore the application of the public rights exception, despite HDH's focus on that fact in lieu of a public rights analysis.

Finally, if any doubt remained as to whether this Court should deny HDH's motions, the numerous decisions from the Supreme Court and the Third Circuit upholding the constitutionality of the very tax refund procedures HDH challenges are also dispositive. HDH's vague claims of unconstitutionality – without specifying even whether its allegations apply to the statutes on their

face, or only as applied – cannot outweigh the many binding decisions affirming that these statutes, and the review scheme they create, are constitutional.

**A. HDH already has access to a jury trial on its liability for penalties imposed by 26 U.S.C. § 6700, and is entitled to nothing more.**

To the extent that the penalties here resemble those in *Jarkesy*, that case held only that the party facing penalties was entitled to a jury trial to determine its liability. HDH will have a jury trial on exactly that question, and *Jarkesy* cannot be read to require anything more.

1. HDH has access to a jury trial on its liability for the § 6700 penalties.

HDH has access to a jury trial for its refund claim against the United States, although that right arises from statute, not from the Seventh Amendment. The Seventh Amendment is not implicated in HDH's refund suit against the United States because "it has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (citations omitted). As a constitutional matter, there is no right to a jury trial in a suit against the United States because there was "no right of action at common law against a sovereign, enforceable by jury trial or otherwise." *Mathes v. Comm'r*, 576 F.2d 70, 71 (5th Cir. 1978).

That said, Congress may choose to provide the right to a jury trial in cases against the government. Sovereign immunity requires that any suit against the United States comply with the conditions Congress has set forth for that suit. *See, e.g.*, *Lehman*, 453 US at 160. As part of its waiver of sovereign immunity, Congress may "unequivocally express[]" that plaintiffs have a right to a jury trial in a suit against the government. *Id.* In the case of tax refund suits, Congress has made clear allowance for jury trials via statute. 28 U.S.C. § 2402. Thus, although the Seventh Amendment is not implicated in HDH's claim against the United States, HDH *is* entitled to a jury trial—by statute. And not only does HDH have a right to a jury trial, it invoked that right, and the

United States has not opposed the jury demand. Therefore, if HDH's refund claim proceeds to trial, it will be heard and decided by a jury—but not because of any Seventh Amendment right.

HDH also has access to a jury trial for the counterclaim brought by the United States. Though HDH has not yet answered the counterclaim, it may demand a jury trial when it does. Fed. R. Civ. P. 38(b). It has generally been assumed that where Congress provided for the United States to recover a tax via a lawsuit reducing an assessment to judgment in district court (as the United States' counterclaim seeks to do) the Seventh Amendment provides a jury trial right with respect to that action. *See, e.g.*, *United States v. McMullin*, 948 F.2d 1188, 1190 (10th Cir. 1991) ("we understand that counsel also agree that where the government seeks to reduce a tax assessment to judgment and obtain a personal money judgment against the taxpayer, the taxpayer then has a Seventh Amendment right to a jury trial."). Because it has not been a contested issue, courts have not been required to decide "whether Congress could constitutionally provide for an action in personam to secure a judgment for taxes without a jury trial," nor is this Court called on to make that decision today. *Damsky v. Zavatt*, 289 F.2d 46, 52 (2d Cir. 1961). In line with past practice, the United States would not oppose a request from HDH for a jury trial on the counterclaim, and there is thus no controversy to decide on this point. *See Damsky*, 289 F.2d at 52 (declining to decide the question because a "[c]lear indication of an intention" by the United States or Congress to pursue that route would be required, and there was no indication of such intention). If it chooses, HDH can therefore proceed in this very case to have a jury determine its liability for all the § 6700 penalties assessed by the IRS.

2. *Jarkesy* addressed the right to a jury trial, not its timing or prerequisites, and is therefore irrelevant.

13

Throughout its brief, HDH repeatedly cites to *Jarkesy* for the proposition that "citizens must be afforded a right to jury trial without preconditions before a fraud penalty is sought by the United States." *See* ECF No. 29, Memorandum of Law in Support of HDH Group, Inc.'s Motion for Summary Judgment and Motion to Dismiss the United States Counterclaim ("HDH Brief") at 2 (citing to *Jarkesy* at 125). But nowhere in the *Jarkesy* opinion did the Court address either the required timing of a jury trial or the constitutionality of any preconditions for a jury trial. HDH says that a lack of pre-assessment, pre-payment forum are "exactly the circumstances that the Supreme Court found untenable in *Jarkesy*," HDH Brief at 12, but the text of the decision does not support HDH's bold assertion.

The Court's conclusion in *Jarkesy* was that "Jarkesy and Patriot28 [his company] are entitled to a jury trial in an Article III court." *Jarkesy* at 140. HDH already has all that the decision could entitle it to: a jury trial in an Article III court. The decision did not address the required timing of a jury trial or whether a litigant can ever be required to take certain steps before reaching a jury trial. HDH's attempts to rewrite the Supreme Court's decision to include rulings it simply did not make are unavailing and must be rejected.

**B.  Under the Seventh Amendment analysis applied in *Jarkesy*, the public rights exception permits tax controversies to be resolved outside of an Article III court, without a jury.**

This Court should deny HDH's motions because it already has the very relief—a jury trial—it claims to have been denied. But even if the Court engages in a Seventh Amendment analysis, HDH's motions would still fail. In *Jarkesy,* the Supreme Court engaged in a two-step analysis to consider whether Mr. Jarkesy was entitled to a jury trial under the Seventh Amendment. First, it considered whether the action implicated the Seventh Amendment. *Jarkesy* at 120. If so, it then considered whether the "public rights" exception to Article III jurisdiction applied. *Id.* This

14

exception allows Congress to assign actions in "distinctive areas involving governmental prerogatives" to be resolved outside of an Article III court, without a jury. *Id.* Whether the Seventh Amendment is implicated in this case has been briefly addressed above. It need not be considered at length because regardless of the answer, the public rights exception allows Congress to assign tax and revenue matters to be resolved outside of an Article III court without a jury.

The public rights exception covers matters which "historically could have been determined exclusively by the executive and legislative branches, even when they were presented in such form that the judicial power was capable of acting on them." *Jarkesy* at 128 (cleaned up, internal citations omitted). *See also Crowell v. Benson*, 285 U.S. 22, 50 (1932) (a matter that arises between the government and a private party will fall under the public rights exception if it results from "the performance of the constitutional functions of the executive or legislative departments."). Thus, the public rights doctrine is derived from the fact that Congress has the authority to assign enforcement of certain matters to the Executive Branch such that there would be no right, under the Seventh Amendment or otherwise, to a proceeding before an Article III judge as long as due process is otherwise provided.

Taxation and revenue collection have always been matters of legislative power. The Constitution assigns Congress, not the courts, the "power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States." U.S. Const. Art. I § 8, cl. 1. Congress has plenary authority over matters of taxation; the power of taxation "belongs in this country to the legislative sovereignty." *Heine v. Bd. Of Levee Comm'rs*, 86 U.S. 655, 661 (1873).

The Supreme Court has reiterated the extent of Congress' power in this field over the centuries since the country's founding. In the years immediately following ratification, when the

15

Supreme Court and the attorneys practicing before it included those who had participated in the Constitutional Convention, the Court wrote of the relevant clause that "[t]he term taxes, is generical, and was made use of to vest in Congress plenary authority in all cases of taxation." *Hylton v. United States*, 3 U.S. 171, 176 (1796). Later cases came to the same conclusion. *Veazie Bank v. Fenno*, 75 U.S. 533, 540 (1869) ("[N]othing is clearer, from the discussions in the Convention and the discussions which preceded final ratification by the necessary number of States, than the purpose to give this power to Congress, as to the taxation of everything except exports, in its fullest extent."); *Brushaber v. Union Pac. R. Co.*, 240 U.S. 1, 12 (1916) ("That the authority conferred upon Congress by § 8 of article 1 'to lay and collect taxes, duties, imposts and excises' is exhaustive and embraces every conceivable power of taxation has never been questioned, or, if it has, has been so often authoritatively declared as to render it necessary only to state the doctrine.").

And because taxation is a legislative, and not a judicial, power under our Constitution, the Supreme Court has also warned repeatedly against judicial overreach in this field. The Court has long recognized that, dating from the founding and the English common law, tax administration has never been a judicial function. As one nineteenth century opinion explained when warning against court interference in tax collection, "the levy of taxes is not a judicial function. Its exercise, by the constitutions of all the States, and by the theory of our English origin, is exclusively legislative." *Taylor v. Secor*, 92 U.S. 575, 614-15 (1875) (citation omitted). A few years later, the Court reiterated that when it came to tax laws, it was for Congress to address "any wrong" and to "see that the evil was corrected." The Court went on to affirmatively state that "[t]he remedy does not lie with the judicial branch of the government." *Springer v. United States*, 102 U.S. 586, 594 (1880). *See also Cheatham v. United States*, 92 U.S. 85, 88 (1875) (measures for the collection of

16

taxes "are not judicial" and the government does not "resort, except in extraordinary cases, to the courts" for such collection).

Because internal revenue and taxation are among the subjects that "from the beginning" have been considered "exclusively" within the control of Congress, they have always been areas of law that fall under the public rights exception. *Oceanic Steam Nav. Co. v. Stranahan*, 214 U.S. 320, 339 (1909). As the Court pointed out in *Jarkesy*, the very case that introduced the public rights exception was a revenue collection case, *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272 (1856). In that case the Supreme Court held that the government could rely on summary proceedings to compel revenue collectors to pay over public funds. Its holding applies to tax matters broadly. In a later case, *Phillips v. Comm'r*, the Court emphasized that the decision in *Murray's Lessee* was driven not by the "peculiar relationship of a collector of revenue to his government" but by the "need of the government promptly to secure its revenues." 283 U.S. 589, 596 (1931).

*Jarkesy* itself recognizes that the collection of revenue falls under the public rights exception. The majority, concurrence, and dissent all reflect the authors' view that matters concerning taxation and the collection of revenue fall under the public rights exception. The majority states that the history of the public rights exception to the Seventh Amendment is based on the "centuries-old rules concerning revenue collection by a sovereign." 603 U.S. at 131; *see also id.* at 129 (noting that the principle underlying the public rights exception "extends *beyond* cases involving the collection of revenue") (emphasis added). The concurrence similarly notes that the class of public rights "has traditionally included the collection of revenue…" *Id.* at 129 (Gorsuch, J., concurring). The dissent also agrees and described taxation as one of the "diverse

areas of law" regarding which "[t]his Court has repeatedly approved Congress's assignment of public rights to agencies." *Id.* at 177 (Sotomayor. J., dissenting) (citations omitted).

The Supreme Court's discussion of *Atlas Roofing Co., Inc. v. Occupation Safety & Health Rev. Comm'n*, 430 U.S. 442 (1977), in *Jarkesy* also affirms the Court's consistent recognition that the assessment and collection of taxes—including the assessment and collection of penalties—falls within the public rights exception. In *Jarkesy*, the Court stated, "[t]he cases that *Atlas Roofing* relied upon did not extend the public rights exception to traditional legal claims… Instead, they applied the exception to actions that were not… suit[s] at common law or in the nature of such… suit[s]." 603 U.S. at 138 (quoting *Atlas Roofing*, 430 U.S. at 453, and further citing *Atlas Roofing* at 450-51). *Atlas Roofing*, at the second citation listed in *Jarkesy*, specifically states that "taxes may constitutionally be assessed and collected together with penalties, with the relevant facts in some instances being adjudicated only by an administrative agency." 430 U.S. at 450 (citing *Phillips*, 283 U.S. at 599-600; *Murray's Lessee*, 59 U.S. at 284; *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938)). *See also Walker v. United States*, 240 F.2d 601, 603 (5th Cir. 1957); *Olshausen v. Comm'r*, 273 F.2d 23, 27 (9th Cir. 1959). It is thus well-established that matters of taxation fall under the public rights exception.

### C.  Under the public rights exception, tax penalties as well as taxes can be determined administratively.

In areas within the public rights exception, Congress has the power "to impose appropriate obligations, and sanction their enforcement by reasonable money penalties . . . without the necessity of invoking the judicial power." *Oceanic Steam* at 339. *See also Mitchell*, 303 U.S. at 404 n.7 ("Administrative determination of sanctions imposed by the income tax laws has likewise been upheld.") (collecting cases).

18

An earlier suit in this Court held, and the Third Circuit affirmed, "that the imposition of a penalty by an executive officer, when authorized by Congress in a field wholly within its competency, such as alien immigration, internal revenue, taxation, and other subjects, does not violate the Fifth Amendment, or any constitutional provision." *McDowell v. Heiner*, 9 F.2d 120, 123 (W.D. Pa. 1925), *aff'd*, 15 F.2d 1015 (3d. Cir. 1926) (citing and analyzing *Oceanic Steam*). The Third Circuit adopted the "full and satisfactory" opinion of the District Court in emphatic terms. *McDowell v. Heiner*, 15 F.2d 1015, 1015 (3d Cir. 1926). Even if HDH disagrees with the interpretation of *Oceanic Steam* set forth in *McDowell*, it remains binding law in this circuit that an executive officer can impose penalties in the fields of internal revenue and taxation without violating "any constitutional provision." *McDowell*, 9 F.2d at 123. This includes the § 6700 penalties at issue here.[6] HDH's failure to acknowledge this binding precedent does not shield it from its application to this case.

### D. The inclusion of the word "fraudulent" in IRC § 6700 does not allow the Court to bypass the public rights exception.

HDH argues that inclusion of the word "fraudulent" in § 6700 "places the Promoter Penalty squarely within *Jarkesy* parameters." HDH Brief at 9-10. But, as explained above, the Court conducted a two-part analysis in *Jarkesy*, and reached its holding only after finding that (1) the Seventh Amendment was implicated and (2) the public rights exception did not apply. HDH

---

[6] The public rights exception applies regardless of whether the Court considers the amounts assessed against HDH as substantive "taxes" or as penalties enforcing the tax laws. The § 6700 penalties are included in the definition of "taxes" as a matter of statute. IRC §§ 6201, 6671. But courts can, in some cases, evaluate whether a liability is in substance a tax or a penalty without deferring to the label Congress has given them. *See, e.g.*, *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 565–66 (2012). A full analysis of § 6700's nature is unnecessary in this case, where its status as either a substantive tax or penalty does not change the outcome.

conducts no real analysis of the second prong of the *Jarkesy* analysis. Instead, it seems to focus almost exclusively on analysis relating to the first prong, which addresses whether the Seventh Amendment is implicated at all. But the first prong is only a threshold question; as discussed above, the answer is not particularly important in a case like this, where the second prong (the public rights exception) is dispositive in placing a subject outside of the Seventh Amendment's reach.

While HDH fails to address the public rights exception's application to this case, it seems to place outsize importance on its contention that § 6700 is a fraud penalty, perhaps believing that this surface similarity to the SEC provisions in *Jarkesy* will be sufficient to overcome the application of the public rights exception. For example, nearly half the brief is dedicated to a section titled "The Fraud Element of the § 6700 Penalty." *See* HDH Brief, 9-17.

Yet HDH's description of § 6700 as a "fraud penalty" is inaccurate and incomplete. Congress enacted the § 6700 penalty because "[t]he widespread marketing and use of tax shelters undermines public confidence in the fairness of the tax system and in the effectiveness of existing enforcement provisions. These tax schemes place a disproportionate burden on the internal revenue service resources." S. REP. 97-494(I), 266-67. Thus, the primary purpose of the penalty is to protect the public fisc. *Accord. Mitchell*, 303 U.S. at 401; *Dorsheimer v. United States*, 74 U.S. 166, 173 (1868).

Under current law, § 6700(a) provides for imposition of a penalty against any person who:

(1)(A) organizes (or assists in the organization of)—
    (i) a partnership or other entity,
    (ii) any investment plan or arrangement, or
    (iii) any other plan or arrangement, or
  (B) participates (directly or indirectly) in the sale of any interest in any entity or plan or arrangement referred to in subparagraph (A), and
(2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale) –

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

(B) a gross valuation overstatement as to any material matter.

IRC § 6700(a). The statute penalizes both fraudulent and non-fraudulent conduct. Under § 6700(a)(2)(A), a person who makes a statement "which the person knows *or* has reason to know is false *or* fraudulent" may be penalized (emphasis added). Congress's use of two disjunctives in that clause means that a false (but not fraudulent) statement which the speaker has reason to know (but does not actually know) is incorrect would suffice to trigger the penalty. This is because courts must give effect to every word in a statute, and the word "or" is ordinarily used disjunctively. *Loughrin v. United States*, 573 U.S. 351, 357-58 (2014). Therefore, in § 6700, "false" should not be interpreted as synonymous with "fraudulent" but as having a separate meaning. *See United States v. Saybolt*, 577 F.3d 195, 199–200 (3d Cir. 2009) (where statute connects the terms "false," "fictitious," and "fraudulent" with the disjunctive "or" those words have separate meanings).

The scienter requirements of § 6700 are much broader than those found in common-law fraud. The "reason to know" standard is more consistent with negligence. And § 6700(a)(2)(B), a portion of the penalty statute imposing liability for valuation statements exceeding 200% of the correct valuation (which HDH curiously declined to include in its brief, despite challenging the entirety of § 6700 as unconstitutional), has no scienter requirement at all. *See, e.g.*, *United States v. RaPower-3, LLC*, 343 F. Supp. 3d 1115, 1191 (D. Utah 2018), *aff'd*, 960 F.3d 1240 (10th Cir. 2020) ("no scienter element" in proving penalty conduct involving gross valuation overstatements; "it is a strict liability standard").

Classifying § 6700 as a "fraud penalty" or as akin to common-law fraud is simply inaccurate. While fraudulent statements *can* be *an* element of the penalty conduct and often trigger a penalty, the penalty also applies to false statements that a promoter "had reason to know" were incorrect, and to gross valuation overstatements regardless of the promoters' knowledge. This reflects its aim of protecting the public fisc from abusive tax shelters regardless of whether they involve fraudulent statements.

In any case, even if this Court decides § 6700 is a fraud penalty, that would not allow HDH to ignore the public rights exception in favor of its conclusory statement that fraud requirements place a penalty "squarely within *Jarkesy* parameters." HDH Brief at 9-10. Section 6700 is a tax statute that falls under the public rights exception and is thus squarely outside the set of facts the Court ruled on in *Jarkesy*.

### E.  The tax refund framework created by Congress is constitutional.

HDH is not the first litigant to challenge the constitutionality of the tax framework created by Congress, and is unlikely to be the last. The aspects that HDH takes particular issue with – assessment by an administrative body, rather than a court; the requirement to contest liability administratively before obtaining judicial review; and the requirement to pay some or all of a liability before obtaining judicial review—have been repeatedly examined and found constitutional by the Supreme Court and the Third Circuit.

The Supreme Court has affirmed the Internal Revenue Code's procedures over decades of legal challenges. This includes the procedures providing limited access to the courts for tax refund suits. Chief Justice Roberts, writing for a unanimous Court in *United States v. Clintwood Elkhorn Min. Co.*, explained in denying a challenge to the refund procedures that: "we see no constitutional problem at all. Congress has indeed established a detailed refund scheme that subjects complaining

taxpayers to various requirements before they can bring suit." 553 U.S. 1, 11 (2008). HDH may be unhappy with the "detailed refund scheme" that subjects it to "various requirements" before it can bring suit, but sorrow does not create a constitutional problem.

In particular, the use of administrative procedures to assess and collect taxes has been affirmed over and over. Nearly a century ago, it had already "long been settled" that the United States has the right "to collect its internal revenue by summary administrative proceedings." *Phillips*, 283 U.S. at 595. The right to "secure prompt performance of pecuniary obligations to the government" is on especially firm footing where Congress has provided for "a later judicial determination" of legal rights. *Id.* (internal citations omitted).[7]

> The Third Circuit has also been clear on the constitutionality of this framework:
>
> In the tax context, the constitutionality of a scheme providing for only post-assessment judicial review is well-settled. Congress has long been empowered to enact legislation authorizing the Executive Branch to assess and collect taxes without prior administrative or judicial review so long as an adequate opportunity is afforded for a later judicial determination of liability.

*Kahn v. United States*, 753 F.2d 1208, 1218 (3d Cir. 1985) (citations omitted). In the same case, the Third Circuit addressed one of the very statutes HDH challenges, holding that the "assertion that the initial IRS review of claims for refund under section 6703(c) is constitutionally inadequate is without merit." *Id.* at 1222. HDH fails to explain how its argument that § 6703(c)'s requirements are unconstitutional can be reconciled with the Third Circuit's holdings in *Kahn*.

---

[7] On the matter of taxation, Congress not only has the right to choose the conditions under which it may be sued but can choose the conditions under which it will subject itself to the judgment of the courts at all. *See Cheatham*, 92 U.S. at 88–89 ("It will be readily conceded . . . that the government has the right to prescribe the conditions on which it will subject itself to the judgment of the courts in the collection of its revenues.").

Further, in *Jarkesy*, Justice Gorsuch recognized in his concurrence that "a committee overseen by Attorney General (soon-to-be Justice) Robert H. Jackson" concluded in 1941 that "any doubts concerning the constitutionality" of an agency's power to assess civil penalties could be resolved by affording the aggrieved person an opportunity to obtain de novo review in district court. *Jarkesy* at 156 (citation and internal quotations omitted). This is precisely the opportunity afforded to persons against whom the IRS has assessed § 6700 penalties. HDH's attempts to invoke "doubts concerning the constitutionality" of several tax statutes, without addressing the long history of decisions and analysis that considered and resolved these exact questions, should not be tolerated.

The general requirement that taxpayers pay any tax liability before obtaining judicial review has also been affirmed repeatedly. The strength of the Government's interest in prompt, predictable collection of taxes cannot be overstated. "[T]axes are the lifeblood of government, and their prompt and certain availability an imperious need." *Bull v. United States*, 295 U.S. 247, 259 (1935). Without the ability to administratively collect the revenue which sustains it, the government would soon cease to function. *See Cheatham*, 92 U.S. at 89 (warning of the risk that "the very existence of the government might be placed in the power of a hostile judiciary" if the government did not have the right to determine when it would subject itself to the judgment of the courts on matters of taxation). For this reason, courts have long recognized that "[t]he idea that every taxpayer is entitled to the delays of litigation is unreason." *Springer*, 102 U.S. at 594. Congress has even gone so far as to enact statutes prohibiting, in broad terms, any suit "for the purpose of restraining the assessment or collection of any tax . . . in any court by any person." 26 U.S.C. § 7421 ("Anti-Injunction Act"). *See also* 28 U.S.C. 2201 ("Declaratory Judgment Act," which excepts federal tax matters from a court's ability to declare the rights of interested parties).

Requiring payment before judicial review is a practice deeply rooted in history. The "experience of ages" has shown that "the payment of taxes has to be enforced by summary and stringent means against a reluctant and often adverse sentiment; and to do this successfully, other instrumentalities and other modes of procedure are necessary, than those which belong to courts of justice." *Taylor v. Secor*, 92 U.S. 575, 614 (1875) (citations omitted). In the century after the founding, the government had already created "a complete system of corrective justice in regard to all taxes." *Id.* at 613. And it was well-established that there was "no place in this system for an application to a court of justice until after the money is paid." *Id.* This order of operations, in which taxpayers pay first and receive judicial review later, is vital. *Phillips*, 283 U.S. at 599 ("[T]he right of the United States to exact immediate payment and to relegate the taxpayer to a suit for recovery is paramount."). Finally, the Supreme Court definitively held in *Flora v. United States* that 28 U.S.C. § 1346(a)(1), the statute that gives district courts jurisdiction to hear tax refund cases, "requires full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court." 362 U.S. at 177. HDH argues that § 6703 is unconstitutional because it requires payment of 15% of an assessment, apparently not recognizing that the statute actually grants it a reprieve. Without § 6703, Supreme Court precedent would require that HDH pay the *full amount* of the assessment before accessing district court review.

In short, the taxation framework Congress has provided is constitutional, and HDH's arguments otherwise—which fly in the face of centuries of historical practice, considered analysis, and binding precedent—must fail.

## IV.    CONCLUSION

*Jarkesy* has no application here, and the Court should fully deny HDH's Motion for Summary Judgment and Motion to Dismiss Counterclaim. If HDH seeks a jury trial in an Article III court to determine its liability for §6700 penalties, it need only continue litigating this case.


Dated: April 25, 2025                                    Respectfully submitted,

                                                    */s/ Elisabeth K. Kryska*
                                                    ELISABETH K. KRYSKA
                                                    Maryland Bar No. 2211280290
                                                    CHRISTOPHER RAJOTTE
                                                    Florida Bar No. 107742
                                                    ALAN D. BAILEY
                                                    Kentucky Bar No. 100427
                                                    Trial Attorneys, Tax Division
                                                    U.S. Department of Justice
                                                    P.O. Box 7238, Ben Franklin Station
                                                    Washington, D.C. 20044
                                                    Telephone: (202) 305-6717 (Kryska)
                                                                     (202) 514-6491 (Rajotte)
                                                                     (202) 514-6075 (Bailey)
                                                    Fax: (202) 514-6770
                                                    Elisabeth.K.Kryska@usdoj.gov
                                                    Christopher.Rajotte@usdoj.gov
                                                    Alan.Bailey@usdoj.gov