IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HDH GROUP, INC., | Civil Action No. 2:24-cv-988 |
| *Plaintiff*, | |
| | Hon. William S. Stickman IV |
| v. | |
| UNITED STATES OF AMERICA, | |
| *Defendant*. | |

**OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

This case asks whether the statutory framework of the Internal Revenue Code ("IRC") that permits the Internal Revenue Service ("IRS") to assess penalties against a taxpayer and limits judicial review of such penalties until after assessment violates the taxpayer's right to a jury trial guaranteed by the Seventh Amendment. The question of whether the tax penalty imposed in this case under 26 U.S.C. § 6700 ("IRC § 6700") violates the Seventh Amendment is a matter of first impression that comes on the heels of the United States Supreme Court's decision in *SEC v. Jarkesy*, 603 U.S. 109 (2024).

Plaintiff HDH Group, Inc. ("HDH") filed this action against Defendant United States of America ("the Government") objecting to the IRS's determination that it violated the tax code and seeking refund of its partial payment of penalties assessed against it for tax years 2013-2018 pursuant to IRC § 6700. (ECF No. 1). HDH brings six counts against the Government seeking a refund of its prepayments of the penalties assessed under IRC § 6700. (*Id.* ¶¶ 75-110).[1] The

---

[1] HDH originally brought a seventh count under a laches cause of action. (ECF No. 1, ¶¶ 111-14). The Government filed a motion seeking to dismiss Count VII arguing that HDH failed to state a

Government filed a counterclaim against HDH seeking to reduce to judgment the unpaid balance of the penalties assessed against HDH under IRC § 6700. (ECF No. 16). HDH, in turn, filed a motion to dismiss the counterclaim. (ECF No. 25). It also filed a motion for summary judgment (ECF No. 26) requesting that the Court grant summary judgment in its favor with respect to its six claims against the Government. Both motions hinge on the same issue—whether the administrative assessment of the penalties in IRC § 6700 violates the Seventh Amendment.

As explained below, the Court holds that the statutory scheme at issue implicates but does not violate the Seventh Amendment because it does not deprive HDH of its right to a jury trial. The Court will deny both motions.

## I.    STATUTORY FRAMEWORK AT ISSUE

26 U.S.C. § 6201 authorizes and requires the Secretary of Treasury ("the Secretary") to "make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by [Title 26]." 26 U.S.C. § 6201. The tax penalties at issue in this case are imposed by IRC § 6700 – a statute that penalizes abusive tax structures. IRC § 6700 allows the Government to impose a penalty on any person who:

(1)(A) organizes (or assists in the organization of) –
      (i)     a partnership or other entity,
      (ii)    any investment plan or arrangement, or
      (iii)   any other plan or arrangement, or
  (B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and
(2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale) –
  (A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement

---

claim upon which relief could be granted. (ECF No. 14). HDH did not oppose the motion to dismiss agreeing that laches is not a proper cause of action. (ECF No. 22, ¶ 4). Thus, the Court dismissed HDH's Count VII. (ECF No. 24).

which the person knows or has reason to know is false or fraudulent as to any material matter, or

(B) a gross valuation overstatement as to any material matter....

IRC § 6700. Thus, in order to establish a violation of IRC § 6700, the Government must prove "(1) that the defendant was involved in an abusive tax shelter, and (2) that the defendant made statements about the tax benefits investors would receive if they participated in the shelter which the defendant knew or had reason to know were false or fraudulent." *United States v. Kaun*, 827 F.2d 1144, 1147 (7th Cir. 1987). The amount of the penalty under IRC § 6700 "shall be equal to 50 percent of the gross income derived (or to be derived) from such activity by the person on which the penalty is imposed." IRC § 6700. This penalty may be challenged pursuant to 26 U.S.C. § 6703.

Under § 6703(c)(1), if, within 30 days after the day on which notice and demand of any penalty under IRC § 6700 is made against an individual, they pay not less than 15 percent of the amount of the penalty, the individual may file a claim for refund of the amount paid. 26 U.S.C. § 6703(c)(1). This is an administrative process that is conducted within the IRS. Under § 6703(c)(2), the individual may pay 15 percent of the penalty, file a claim for refund of the penalty paid (as permitted in § 6700(c)(1)), and, if the claim is denied, file an action in the United States District Court for refund within 30 days of the claim denial. 26 U.S.C. § 6703(c)(2).

If a penalized individual files an action in a district court challenging the assessment of the IRC § 6700 penalty, the burden of proof is placed upon the government to establish liability for the penalty. 26 U.S.C. § 6703(a). The issue of liability is reviewed under a de novo standard by a district court. *See Samango v. United States*, Civil Action No. 17-2484, 2019 WL 2525741 (E.D. Pa. June 18, 2019) (*aff'd* 833 F.App'x 941 (3d Cir. 2020) ("Taxpayer refund suits are de novo

proceedings." (citation omitted)).  A district court owes no deference to the IRS in making its determination of liability.  *Id.* at \*7.  A jury trial is available in a challenge under § 6703.

## II.    FACTUAL BACKGROUND

On September 28, 2015, the Government, through the IRS, notified HDH of an audit of HDH's captive insurance program.  (ECF No. 27, ¶ 1); (ECF No. 33, p. 1).  On November 13, 2023, the IRS assessed penalties imposed by IRC § 6700 against HDH for the 2013-2018 tax years and mailed notices of assessment and demands for payment to HDH.  (ECF No. 27, ¶ 2); (ECF No. 33, p. 2).  The IRS assessed penalties imposed by IRC § 6700 against HDH due to HDH's alleged conduct in relation to its purported captive insurance program.  (ECF No. 27, ¶ 3); (ECF No. 33, p. 2).  HDH paid the IRS at least 15 percent of the total assessed fraud penalties.  (ECF No. 27, ¶ 6); (ECF No. 33, pp. 3-4).  HDH filed claims for refund with respect to the amounts it paid towards the IRC § 6700 penalties.  (ECF No. 27, ¶ 7); (ECF No. 33, p. 4).  The IRS disallowed HDH's claims for refund by letter dated June 10, 2024.  (ECF No. 27, ¶ 8); (ECF No. 33, p. 5).  On April 22, 2024, the IRS mailed computer generated notices to HDH which bore the heading "Notice of intent to seize (levy) your property or rights to property."  (ECF No. 27, ¶ 9); (ECF No. 33, p. 5).  HDH filed an appeal from the notices of levy.  (ECF No. 27, ¶ 10); (ECF No. 33, p. 6).

On July 9, 2024, HDH filed this action under IRC § 6700 seeking recovery of $989,000 ($166,000, $229,000, $215,000, $229,000, $106,000, and $44,000) for tax years 2013, 2014, 2015, 2016, 2017, and 2018, respectively), in total penalties paid by HDH and collected by the Government pursuant to the assessment by the Government of the IRC § 6700 penalty for each of those tax years.  (ECF No. 1, ¶ 14).  HDH is also seeking a finding that the penalties in the total amount of $6,564,449 were improperly imposed against it in violation of its right to a jury trial under the Seventh Amendment.  (*Id.* at 1).  The Government filed a counterclaim seeking to reduce

to judgment the unpaid balance of the penalties assessed against HDH under IRC § 6700. (ECF No. 16, p. 30).

### III.    STANDARD OF REVIEW

#### A.  Motion to Dismiss - Rule 12(b)(6)

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a

plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

**B. Motion for Summary Judgment – Rule 56**

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof[]" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

## IV.    ANALYSIS

This case hinges on whether HDH was deprived of its right to a jury trial under the Seventh Amendment, which states in relevant part: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. Amend. 7. HDH argues that under the recent *Jarkesy* decision, the imposition of the civil tax penalties assessed against it violated the Seventh Amendment because the penalties were assessed without the opportunity for it to have a jury trial. (ECF No. 29, p. 4). It asks the Court to find that the assessment, collection, and jurisdictional procedures of 26 U.S.C. §§ 6703(c) and 7422(a) are unconstitutional because those provisions do not provide a pre-assessment jury trial. (*Id.*). HDH's

reply brief clearly articulates that its constitutional challenge is only to the assessment of the penalty by the IRS without resort to a jury. It does not challenge the threshold requirement that a taxpayer pay all or part of the amount assessed before seeking judicial review in federal court. (ECF No. 38, p. 8). HDH has explained:

> The instant case is not about whether full payment of the assessment (or 15% of the Promoter Penalty assessed) is required for jurisdictional purposes. HDH does not dispute that Federal District Courts have jurisdiction over refund matters and that under 28 U.S.C. § 1346(a)(1) full payment (or 15% of the Promoter Penalty assessed) is required to obtain that jurisdiction. ***The instant case is about whether HDH is entitled to a jury trial before the assessment takes place pursuant to the holding in Jarkesy***.

(*Id.*) (emphasis added).

The Government counters that HDH's motions should be denied. It contends that HDH has a statutory right to bring a tax refund suit in a district court contesting the assessment of tax penalties against it, and to have a jury determine liability for those penalties. (ECF No. 35, p. 3). The Government highlights that proceedings in a district court, including a jury trial if requested, proceed de novo without consideration or deference to the IRS's findings in determining liability. (*Id.*). It focuses on a separation of powers argument contending that Congress made a deliberate choice to provide a post-assessment jury trial:

> Unsatisfied with the post-assessment jury trial right that Congress provided, HDH seeks to upend centuries of tax administration and disrupt the Constitution's separation of powers by demanding that Article III courts override the will of Congress, on a matter within its plenary authority, and insert themselves into the initial stages of tax assessment and collection. HDH also takes issue with long-established requirements that taxpayers submit payment and an administrative refund claim to the IRS before they can access district court review. Contrary to HDH's claims, the tax framework created by Congress—in which assessments, administrative review, and payment all occur before judicial review is available—does not violate the Constitution.

(*Id.*).

In examining whether the IRS's assessment of the penalty under IRC § 6700 violates the Seventh Amendment, the Court must first ascertain whether the Seventh Amendment is implicated. If so, it must determine whether the statutory scheme falls under the public rights exception. Before applying this test to the facts of this case, the Court will examine the relevant Supreme Court case law governing both prongs of the inquiry.

## A. Seventh Amendment Case Law

The Supreme Court's decision in *Jarkesy* can reasonably be interpreted as reinvigorating the interpretation of the Seventh Amendment right to a jury trial in the context of certain regulatory or statutory penalties. In order to understand the recalibration effectuated by *Jarkesy*, it is helpful to review previous Supreme Court precedent on the extent of the jury guarantee. *Jarkesy* afforded significant discussion to the Court's earlier decisions in *Atlas Roofing Co. Inc. v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442 (1977) and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). The Court will examine these cases, followed by *Jarkesy* and, finally, recent decisions of the United States Court of Appeals for the Third Circuit applying *Jarkesy*.

### 1. *Atlas Roofing*

The Supreme Court's decision in *Atlas Roofing* looms large over the parties' arguments. In *Atlas Roofing*, the Supreme Court articulated an expansive conception of Congress's right to circumvent the jury trial guarantee of the Seventh Amendment by creating statutory causes of action in order to promote its conception of the public good. *Atlas Roofing* involved a Seventh Amendment challenge to the statutory scheme under the Occupational Safety and Health Act of 1970 ("OSHA" or "the Act") that allows the administrative imposition of civil penalties for violating statutory duties pertaining to workplace conditions. *Id.* at 445. Under the Act, the Department of Labor ("DOL") was empowered "to impose civil penalties on any employer

maintaining any unsafe working condition." *Id.*  The Supreme Court described the assessment of

OSHA penalties:

> Under the Act, inspectors, representing the Secretary of Labor, are authorized to conduct reasonable safety and health inspections. 29 U.S.C. § 657(a).  If a violation is discovered, the inspector, on behalf of the Secretary, issues a citation to the employer fixing a reasonable time for its abatement and, in his discretion, proposing a civil penalty. §§ 658, 659.  Such proposed penalties may range from nothing for de minimis and nonserious violations, to not more than $1,000 for serious violations, to a maximum of $10,000 for willful or repeated violations, §§ 658(a), 659(a), 666(a)-(c) and (j).

*Id.* at 445-46.  "If the employer wishes to contest the penalty…, he may do so by notifying the

Secretary of Labor within 15 days, in which event the abatement order is automatically stayed."

*Id.* at 446.  An evidentiary hearing is then held before an administrative law judge ("ALJ") of the

Occupational Safety and Health Review Commission ("the Commission").  *Id.*  "[T]he judge's

decision becomes the Commission's final and appealable order unless within 30 days a

Commissioner directs that it be reviewed by the full Commission."  *Id.*  The decision of the

Commission may be reviewed in a court of appeals.  *Id.* at 447.  But "the findings of the

Commission with respect to questions of fact, if supported by substantial evidence on the record

considered as a whole, shall be conclusive."  *Id.*

The petitioners in *Atlas Roofing* argued that the Commission's assessment of penalties

without the right to a jury trial violated the Seventh Amendment.  The Supreme Court rejected

their challenge, holding:

> At least in cases in which 'public rights' are being litigated e.g., cases in which the Government sues in its sovereign capacity to enforce public rights created by statutes within the power of Congress to enact the Seventh Amendment does not prohibit Congress from assigning the factfinding function and initial adjudication to an administrative forum with which the jury would be incompatible.

*Id.* at 450.  Specifically referencing the ability to collect taxes and penalties, the Supreme Court

continued:

> Congress has often created new statutory obligations, provided for civil penalties for their violation, and committed exclusively to an administrative agency the function of deciding whether a violation has in fact occurred. These statutory schemes have been sustained by this Court, albeit often without express reference to the Seventh Amendment. Thus taxes may constitutionally be assessed and collected together with penalties, with the relevant facts in some instances being adjudicated only by an administrative agency. *Phillips v. Commissioner*, 283 U.S. 589, 599-600, 51 S.Ct. 608, 612, 75 L.Ed. 1289 (1931); *Murray's Lessee v. Hoboken Land Co.*, 18 How. 272, 284, 15 L.Ed. 372 (1856). Neither of these cases expressly discussed the question whether the taxation scheme violated the Seventh Amendment. However, in *Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938), the Court said, in rejecting a claim under the Sixth Amendment that the assessment and adjudication of tax penalties could not be made without a jury, that 'the determination of the facts upon which liability is based may be by an administrative agency instead of a jury,' *id.*, at 402, 58 S.Ct. at 635. Similarly, Congress has entrusted to an administrative agency the task or adjudicating violations of the customs and immigration laws and assessing penalties based thereon. *Lloyd Sabaudo Societa v. Elting*, 287 U.S. 329, 335, 53 S.Ct. 167, 170, 77 L.Ed. 341 (1932) ('(D)ue process of law does not require that the courts, rather than administrative officers, be charged . . . with determining the facts upon which the imposition of (fines) depends'); *Oceanic Nav. Co. v. Stranahan*, 214 U.S. 320, 29 S.Ct. 671, 53 L.Ed. 1013 (1909). *See also Ex parte Bakelite Corp.*, 279 U.S. 438, 451, 458, 49 S.Ct. 411, 416, 73 L.Ed. 789 (1929).

*Id.* at 450-51. The Supreme Court explained that "when Congress creates new statutory 'public rights,' it may assign their adjudication to an administrative agency with which a jury trial would be incompatible, without violating the Seventh Amendment's injunction that [the] jury trial is to be 'preserved' in 'suits at common law.'" *Id.* at 455. In concluding, the Supreme Court explained:

> The point is that the Seventh Amendment was never intended to establish the jury as the exclusive mechanism for factfinding in civil cases. It took the existing legal order as it found it, and there is little or no basis for concluding that the Amendment should now be interpreted to provide an impenetrable barrier to administrative factfinding under otherwise valid federal regulatory statutes. We cannot conclude that the Amendment rendered Congress powerless when it concluded that remedies available in courts of law were inadequate to cope with a problem within Congress' power to regulate to create new public rights and remedies by statute and commit their enforcement, if it chose, to a tribunal other than a court of law such as an administrative agency in which facts are not found by juries.

*Id.* at 460.

2.        *Granfinanciera*

The Supreme Court's language in *Atlas Roofing* is expansive vis-à-vis its formulation of the public rights exception to the Seventh Amendment. *Atlas Roofing* does not appear to require a probing examination of the nature of the claims that a statutory enactment diverts into non-judicial tribunals, nor to the nature of the remedies sought. A fair reading of *Atlas Roofing's* rationale could lead to the conclusion that Congress has plenary authority to establish "public rights" and corresponding non-judicial remedies when it deems existing means of enforcing some public policy goal as inadequate. The Supreme Court clarified the extent to which the jury trial may be circumvented consistent with the Seventh Amendment in *Granfinanciera*.

*Granfinanciera* involved a challenge to the provisions of the bankruptcy code that allowed a trustee's suit to avoid fraudulent money transfers and to recover damages, costs, expenses and interests to be decided in bankruptcy court without a jury. *Granfinanciera*, 492 U.S. at 36–37. In determining whether the Seventh Amendment was violated, the Supreme Court examined the cause of action at issue to determine whether it was "analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Id.* at 42 (citation omitted). The Supreme Court formulated a two-fold analysis to determine whether the Seventh Amendment is implicated: "First, we compare the statutory cause of action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* (citation omitted).

The Supreme Court held that the action by the trustee to avoid the fraudulent transfers "should be denominated legal rather than equitable." *Id.* at 47. It then examined whether the

public rights exception applied. Significantly, in doing so, it walked back from the broad interpretation of the exception that it had rendered in *Atlas Roofing*:

> Congress' power to block application of the Seventh Amendment to a cause of action has limits. Congress may only deny trials by jury in actions at law…in cases where 'public rights' are litigated: "Our prior cases support administrative factfinding in only those situations involving 'public rights,' *e.g.* where the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights. Wholly private tort, contract and property cases, as well as a vast range of other cases, are not all implicated.

*Id.* at 51 (quoting *Atlas Roofing*, 430 U.S. at 458). The Supreme Court explained that "Congress [cannot] conjure away the Seventh Amendment by mandating that traditional legal claims be brought there or taken to an administrative tribunal." *Id.* at 52. The Supreme Court held that a bankruptcy trustee's right to recover a fraudulent conveyance is more accurately characterized as a private, rather than a public, right. *Id.* at 55. Therefore, it held that a jury trial was guaranteed by the Seventh Amendment. *Id.* at 64.

### 3. *Jarkesy*

The Supreme Court's 2024 decision in *Jarkesy* confirms that Congress' right to create alternatives to Article III courts to determine violations of statutory or regulatory provisions is not without limit.

*Jarkesy* involved civil fraud penalties in the securities regulation context. Under the statutes designed to prevent or punish misrepresentation and concealment of material facts in the sale of securities, the Securities and Exchange Commission ("SEC") promulgated Rule 10b-5 making it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,

> (b) To make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240,10b-5 (2023); *see* 15 U.S.C. § 77q(a)(2).  Likewise, SEC Rule 206(4)-8 prohibits investment advisers from making "any untrue statement of a material fact" and from engaging in "fraudulent, deceptive, or manipulative" acts as to investors or prospective investors.  17 C.F.R. §§ 275.206(4)-8(a)(1), (2); *see* 15 U.S.C. § 80b-6(4).  To enforce these provisions, Congress created the SEC and gave it power to seek civil penalties against violators.  *Jarkesy*, 603 U.S. at 116.  The SEC can bring an enforcement action by adjudicating the matter itself or filing suit in federal court.  *Id.* (internal citations omitted).  The SEC's choice of forum dictates two aspects of the litigation: the procedural protections enjoyed by a defendant and the remedies available to the SEC.  *Id.* at 116–17.  If the SEC elects to proceed in federal court, a jury finds the facts (depending on the nature of the claims), a life-tenured, salary protected Article III judge presides, and the litigation is governed by the Federal Rules of Evidence and the ordinary rules of discovery.  *Id.* Conversely, when the SEC adjudicates the matter, there is no jury.  *Id.*  Instead, the Commission presides and finds facts while its division of enforcement prosecutes the case.  *Id.*  The Commission has the option to delegate its role as judge and factfinder to one of its members or an ALJ.  *Id.* (citing 15 U.S.C. § 78d-1).  The Commission or its delegee decides discovery disputes and the SEC's rules of practice govern the proceedings.  *Id.* (citing 17 C.F.R. § 201.100 *et seq*.).  Judicial review of the Commission's decision is available once the proceedings conclude, but the review is deferential.  *Id.*  By law, the reviewing court is required to treat the SEC's factual findings as "conclusive" if sufficiently supported by the record – even when its findings rest on evidence inadmissible in federal court.  *Id.* (internal citations omitted).

Civil penalties were at issue in *Jarkesy*. Originally, civil penalties were only available if the SEC chose to pursue litigation in federal court. *Id.* at 117-18 (internal citations omitted). But in 2010, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"). *Id.* at 118. The Dodd-Frank Act permitted the SEC to seek penalties in federal court or impose them through its own in-house proceedings. *Id.* (internal citations omitted). These civil penalties "rank among the SEC's most potent enforcement tools." *Id.* The penalties consist of fines up to $725,000 per violation. *Id.* They may be levied even when no investor suffered financial loss. *Id.* (citing *SEC v. Blavin*, 760 F.2d 706, 711 (6th Cir. 1985) (per curiam)).

Shortly after the passage of the Dodd-Frank Act, the SEC began investigating Jarkesy and his firm, Patriot28, LLC ("Patriot28") for securities fraud. *Id.* Between 2007 and 2010, Jarkesy launched two investment funds that raised approximately $24 million from 120 "accredited" investors. *Id.* Patriot28 served as the funds' investment advisor. *Id.* The SEC alleged that Jarkesy and Patriot28 misled investors and thus initiated an enforcement action contending that the defendants violated the anti-fraud provisions of the Securities Act, the Securities Exchange Act, and the Investment Advisers Act. *Id.* The SEC sought civil penalties and other remedies. *Id.* at 119. The SEC opted to adjudicate the matter itself rather than in federal court. *Id.* The SEC's final order levied a civil penalty of $300,000 against Jarkesy and Patriot28, directed them to cease and desist committing or causing violations of the antifraud provisions, ordered Patriot28 to disgorge earnings, and prohibited Jarkesy from participating in the securities industry and in offerings of penny stocks. *Id.*

Jarkesy and Patriot28 petitioned for judicial review. *Id.* The United States Court of Appeals for the Fifth Circuit granted their petition and vacated the final order. *Id.* (citing *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 450 (5th Cir. 2022)). The panel held that the agency's

decision to adjudicate the matter in-house violated Jarkesy's and Patriot28's Seventh Amendment right to a jury trial. *Id.* (citing *Jarkesy*, 34 F.4th at 451). First, the panel determined that because these SEC antifraud claims were "akin to [a] traditional action[ ] in debt," a jury trial would be required if this case were brought in an Article III court. *Id.* (citing *Jarkesy*, 34 F.4th at 453–55). It then considered whether the "public rights" exception applied. That exception permits Congress, under certain circumstances, to assign an action to an agency tribunal without a jury, consistent with the Seventh Amendment. *Id.* (citing *Jarkesy*, 34 F.4th at 455–59). The panel concluded that the exception did not apply, and that the case should have been brought in federal court where a jury could have found the facts pertinent to the defendants' fraud liability. *Id.* at 120 (citing *Jarkesy*, 34 F.4th at 459).

The Supreme Court affirmed the Fifth Circuit's decision that the administrative route authorized by the Dodd-Frank Act violates the Seventh Amendment. *Id.* at 140–41. Its opinion addressed two issues: (1) whether the SEC's actions implicated the Seventh Amendment and (2) if so, whether the public rights exception nonetheless removed the SEC's action from the reach of the Seventh Amendment.

First, the Supreme Court held that the SEC's enforcement of civil penalties for securities fraud implicates the Seventh Amendment because the SEC's antifraud provisions replicate common law fraud and "it is well established that common law claims must be heard by a jury." *Id.* at 120. The Supreme Court reasoned:

> By its text, the Seventh Amendment guarantees that in "[s]uits at common law, . . . the right of trial by jury shall be preserved." In construing this language, we have noted that the right is not limited to the "common-law forms of action recognized" when the Seventh Amendment was ratified. . . . The Amendment therefore "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." The Seventh Amendment extends to a particular statutory claim if the claim is "legal in nature."

*Id.* at 122 (internal citations omitted). It found that the remedy was "all but dispositive." *Id.* at 123. The Supreme Court noted that civil penalties are a form of monetary relief. *Id.* "While monetary relief can be legal or equitable, money damages are the prototypical common law remedy." *Id.* (internal citations omitted). Under the Supreme Court's reasoning, "[w]hat determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to 'restore the status quo.'" *Id.* Legal remedies, as opposed to equitable ones, can only be enforced in a court of law. *Id.* The Supreme Court found that the civil penalties at issue were punitive, as opposed to remedial, "[b]ecause they tie the availability of civil penalties to the perceived need to punish the defendant rather than to restore the victim." *Id.* at 124. The Supreme Court also found it relevant that the SEC is not obligated to return money to the victims. *Id.* (internal citations omitted). Although the SEC could compensate injured shareholders, it was not required to do so. *Id.* (internal citations omitted). The Supreme Court found that "[s]uch a penalty by definition does not 'restore the status quo' and can make no pretense of being equitable." *Id.* Its conclusion was confirmed by the close relationship of the causes of action with common law fraud. *Id.* at 125. While federal securities fraud and common law fraud are not identical, both target the same basic conduct: misrepresenting or concealing material facts. *Id.* (internal citations omitted).

> In sum, the civil penalties in this case are designed to punish and deter, not to compensate. They are therefore "a type of remedy at common law that could only be enforced in courts of law." That conclusion effectively decides that this suit implicates the Seventh Amendment right, and that a defendant would be entitled to a jury on these claims.

*Id.*

Second, after finding that civil securities fraud implicated the Seventh Amendment, the Supreme Court analyzed whether the public rights exception to Article III jurisdiction applied.

16

The Supreme Court held that it did not because the action did not fall within any of the "distinctive areas involving governmental prerogatives where the Court has concluded that a matter may be resolved outside of an Article III court, without a jury." *Id.* at 120.

The public rights exception permits Congress to assign a matter for decision to an agency without a jury, without violating the Seventh Amendment. *Id.* at 127.

> The Constitution prohibits Congress from "withdraw[ing] from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856). Once such a suit "is brought within the bounds of federal jurisdiction," an Article III court must decide it, with a jury if the Seventh Amendment applies. *Stern v. Marshall*, 564 U.S. 462, 484 (2011). These propositions are critical to maintaining the proper role of the Judiciary in the Constitution: "Under 'the basic concept of separation of powers . . . that flow[s] from the scheme of a tripartite government' adopted in the Constitution, 'the judicial Power of the United States'" cannot be shared with the other branches. *Id.* at 483 (quoting *United States v. Nixon*, 418 U.S. 683, 704 (1974) (alteration in original)).

*Id.* (cleaned up). Matters involving private rights may not be removed from Article III courts. *Id.* A lawsuit concerns private rights if it "is made of the stuff of traditional actions at common law tried by courts at Westminster in 1789." *Id.* at 127-28 (cleaned up). "If a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory." *Stern*, 564 U.S. at 484. In contrast, cases involving public rights are those that "historically could have been determined exclusively by [the executive and legislative] branches" even when the cases are "presented in such form that the judicial power [wa]s capable of acting on them." *Id.* at 128 (*citing Murray's Lessee*, 59 U.S. at 284). No involvement by an Article III court in the initial adjudication is required in such a case. *Id.* The Supreme Court acknowledged that its "opinions governing the public rights exception have not always spoken in precise terms." *Id.* at 130. Thus, the public rights exception is an "area of frequently arcane distinctions and confusing precedents." *Id.* (citing *Thomas v. Union Carbide*

*Agric. Prods. Co.*, 473 U.S. 568, 583 (1985)) (internal quotation marks omitted). The Supreme Court "has not 'definitely explained' the distinction between public and private rights," and it did not claim to do so in *Jarkesy*. *Id.* at 131.

The Supreme Court ultimately held that the public rights exception did not apply to civil penalties for securities fraud, stating that such penalties "target the same basic conduct as common law fraud, employ the same terms of art, and operate pursuant to similar legal principles." *Id.* at 134. It concluded: "A defendant facing a fraud suit has the right to be tried by a jury of his peers before a neutral adjudicator. . . . Jarkesy and Patriot28 are entitled to a jury trial in an Article III court." *Id.* at 140. Also, it noted that although administrative proceedings are arguably more efficient than jury trials, this practical consideration is not dispositive:

> We have never embraced the proposition that "practical" considerations alone can justify extending the scope of the public rights exception to such matter. . . . "[E]ven with respect to matters that arguably fall within the scope of the 'public rights' doctrine, the presumption is in favor of Article III courts." . . . And for good reason: "Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decision making if the other branches of the Federal Government could confer the Government's judicial Power on entities outside Article III."

*Id.* at 132 (internal citations omitted). The Supreme Court also noted that the presence of the government as a party is not, standing alone, sufficient to trigger the public rights exception. *Id.* at 135.

### 4.    *Recent Third Circuit Cases*

In recent months, the Third Circuit decided two cases applying the Supreme Court's *Jarkesy* jurisprudence to Seventh Amendment challenges to the administrative assessment of penalties – *Axalta Coating Sys. LLC v. Fed. Aviation Admin.,* 144 F.4th 467 (3d Cir. 2025), and *Sun Valley Orchards, LLC v. U.S. Dep't of Labor*, 148 F.4th 121 (3d Cir. 2025). Both cases found

that the Seventh Amendment was implicated by the assessment. However, one case found that the public rights exception applied, while the other found the exception inapplicable.

a)    *Axalta*

In *Axalta*, the plaintiff challenged the imposition of a civil penalty assessed by an ALJ of the Federal Aviation Administration ("FAA") for violating the Hazardous Materials Regulations ("HMR"), 49 C.F.R. §171 *et seq*., by improperly packaging paint for transport. The ALJ assessed a penalty of $1,900 against Axalta, which was affirmed on appeal by the FAA administrator. *Axalta*, 144 F.4th at 471. Axalta appealed to the Third Circuit under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq*. Under the APA, a court of appeals' standard of review of an ALJ's liability determination is deferential. *Id*. at 472 (quoting 5 U.S.C. § 701). Its determination of whether the imposition of the penalty violates the Seventh Amendment, as a question of law, is de novo. *Id.* The Third Circuit determined that the imposition of the civil penalty by the FAA did not violate the Seventh Amendment because it fell under the public rights exception.

In addressing the post-*Jarkesy* challenge, the Third Circuit summarized the legal landscape governing the Seventh Amendment and the practical test to be applied in such challenges:

> We draw several conclusions from the Court's opinion in *Jarkesy*. First, the Court in *Jarkesy* applied, but did not abrogate, the public rights doctrine. Second, the Court distinguished, but did not overrule, its holding in *Atlas Roofing*. And, third, the Court's opinion in *Jarkesy* confirmed that a claim under the Seventh Amendment for relief from an administrative adjudication is subject to a two-part analysis. A court first considers the "threshold" question whether the "action implicates the Seventh Amendment" because of its common law ancestry or the common-law nature of the remedy sought. *Id*. at 120, 144 S.Ct. 2117. But even if a "case does implicate the Seventh Amendment," the court must "next consider whether the 'public rights' exception applies. *Id*. This inquiry, the Court in *Jarkesy* suggested, is a matter of ascertaining whether an action more closely resembles the essentially common law action in *Granfinanciera*, in which case the public rights doctrine does not apply, or, instead, the action in *Atlas Roofing*, in which case an administrative adjudication does not violate the Seventh Amendment. *See id*. at 132–40, 144 S.Ct. 2117.

19

*Id.* at 475.

As to the first prong of the *Jarkesy* analysis, the FAA acknowledged that the civil monetary penalty imposed was a "prototypical common law remedy," and conceded that the Seventh Amendment was implicated. *Id.* at 475. Consequently, the Third Circuit confined its inquiry to "the second part of the *Jarkesy* analysis: whether the public rights doctrine justifies the administrative adjudication of the FAA's enforcement action." *Id.* The Third Circuit held, "[b]ecause we are persuaded that the FAA's enforcement action cannot be distinguished from the enforcement action considered in *Atlas Roofing*, we are constrained to answer this question affirmatively." *Id.* at 475–76. Specifically, it held the technical standards imposed by the HMR and enforced by the FAA were "unknown to the common law" but were, instead, within the power of the coordinate branches to regulate and to determine violations thereof. *Id.* at 476–77. The public rights exception applied, and the plaintiff's Seventh Amendment challenge was rejected by the Third Circuit.

### b)    *Sun Valley*

Just two weeks after issuing the opinion in *Axalta*, the Third Circuit decided *Sun Valley* holding that the imposition of civil penalties and back wages by the DOL violated the Seventh Amendment. *Sun Valley* involved a challenge to regulations that permitted the DOL to impose civil penalties and assess back wages against employers for violations of the H-2A nonimmigrant visa program. Under this program, the employer is required to post a "job order" that outlines the wages and benefits offered to foreign guest workers. The contents of the job order must comply with the applicable regulations promulgated by the DOL. The job order functions as a work contract and the DOL is empowered to enforce its terms. *Sun Valley*, 148 F.4th at 124. Under DOL regulations, its Wage and Hour Division may impose civil penalties and assess back wages

against employers it finds to have violated the terms of the job order. *Id.* at 124–25. An employer targeted for enforcement may seek review by an ALJ whose decisions are final unless review is taken by the Administrative Review Board. *Id.* As in *Axalta*, judicial review is limited to an appeal in which the imposition of any civil penalty and/or back wage award is reviewed with a deferential standard.

After being assessed $212,250 in civil penalties and $369,703.22 in back wages, Sun Valley exhausted its administrative appeals. This resulted in the affirmance of the determination that Sun Valley violated provisions of the job order, but a recalculation and reduction of the civil penalties and back wages. *Id.* at 125–26. Sun Valley then filed an action in the United States District Court for the District of New Jersey seeking declaratory and injunctive relief. It sought a declaration that the DOL's administrative imposition of civil penalties and back wages without a jury violated the Seventh Amendment. The district court dismissed the action, holding that the DOL's administrative action fit within the public rights exception. *Id.* at 127.

The Third Circuit reversed, holding that the DOL's administrative enforcement action and imposition of back wages and civil penalties violated the Seventh Amendment. Looking at the nature of the enforcement action, the Third Circuit held that it was, at its essence, a breach of contract action. *Id.* at 128–29. Further, the civil penalties and back wages assessed were akin to common law damages. *Id.* at 129. Having found the Seventh Amendment implicated, the Third Circuit rejected the argument that the public rights exception applied. It rejected the DOL's argument that the case was essentially about immigration—a traditional public right. The Third Circuit held that the case was really about labor and revolved around the relationship between employer and employee, matters traditionally deemed private rights. *Id.* Because public rights were not at issue, and because Sun Valley was deprived of the right to a jury trial, the Third Circuit

21

held that the imposition of civil penalties and back wages violated the Seventh Amendment. *Id.* at 129–31.

### B.    The IRC § 6700 Penalty Implicates the Seventh Amendment

The threshold issue in this case is whether the IRC § 6700 penalty implicates the Seventh Amendment. To answer this question, the Court must examine the nature of the claim to determine whether the statutory claim, as its essence, has a common law ancestry. The Court must also examine whether the remedy is analogous to traditional common law remedies—such as monetary damages. If the answer is "yes" to either of these questions, then the IRC § 6700 penalty implicates the Seventh Amendment and the Court must proceed to determine whether it violates the Amendment.

IRC § 6700 allows the Government to impose a penalty on any person who, in relevant part:

> (2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale) –
>
>> (A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is **false or fraudulent as to any material matter**.

26 U.S.C. § 6700(2)(A) (emphasis added). The essential elements of a violation of IRC § 6700 are: "(1) that the defendant was involved in an abusive tax shelter, and (2) that the defendant made statements about the tax benefits investors would receive if they participated in the shelter which the defendant knew or had reason to know were false or fraudulent." *Kaun*, 827 F.2d at 1147.

As the Supreme Court held in *Jarkesy*, statutory claims with elements mirroring common-law fraud implicate the Seventh Amendment. As with the SEC claim in *Jarkesy*, the penalty in IRC § 6700 "target[s] the same basic conduct" as common-law fraud—

"misrepresenting…material facts." *Jarkesy*, 603 U.S. at 111. "Congress deliberately used 'fraud' and other common law terms of art" in the statutory formulation of the IRC § 6700 penalty. *Id.* at 125. The Court holds that the close relationship between the IRC § 6700 penalty and common law fraud confirms that this action is legal in nature. Being legal in nature, the Court holds that the penalty of IRC § 6700 implicates the Seventh Amendment.[2]

### B. While the IRC § 6700 penalty implicates the Seventh Amendment, it does not violate it because it does not deny HDH the right to a jury trial.

Having determined that the penalty in IRC § 6700 implicates the Seventh Amendment, the Court must now determine whether it violates the Seventh Amendment. Under the analytical framework set forth by *Jarkesy* and applied by the Third Circuit in *Axalta*, the next step in the Court's analysis would be to determine whether IRC § 6700 falls under the public rights exception. However, given the specific facts in this case, the Court must first determine whether the statutory framework deprives HDH of the right to a jury trial before undertaking the public rights analysis. If not, there is no violation of the Seventh Amendment and it is unnecessary for the Court to determine whether the public rights exception applies.

As an initial observation, the statutory framework permitting a de novo review of the IRS's assessment of the IRC § 6700 penalty, and placing the burden of proof on the Government, stands in stark contrast to the statues challenged in *Atlas Roofing*, *Jarkesy*, *Axalta*, and *Sun Valley*. In *Atlas Roofing*, penalties for OSHA violations were assessed by an ALJ and reviewed by the Commission. *Atlas Roofing*, 430 U.S. at 446. If affirmed, the Commission's decision is final and may be appealed to a circuit court of appeals, where the factual findings of the Commission as to

---

[2]   Because the Court holds that the elements of the IRC § 6700 penalty sound in fraud, a prototypical common law cause of action, it is unnecessary to determine whether the monetary penalty is akin to a traditional common law remedy or, as the Government argues, is in the nature of a tax.

liability are reviewed under the deferential "substantial evidence" standard.  *Id.* at 446-47.  In *Jarkesy,* the SEC was statutorily vested with the authority to choose whether to initiate proceedings in federal court or before the SEC's administrative apparatus.  If administrative proceedings were initiated before the SEC, there was no jury.  The Commission or one of its ALJs presided over the proceedings and made factual findings as to liability for sanctions.  Judicial review of the Commission's decision is available in one of the circuit courts of appeal once the proceedings concluded, but, as in *Atlas Roofing*, the review was deferential.  15 U.S.C. §77i(a).  By law, the reviewing court was required to treat the SEC's factual findings as "conclusive" if sufficiently supported by the record – even when its findings rested on evidence that was inadmissible in federal court. *Jarkesy*, 603 U.S. at 116.  Likewise, in both *Axalta* and *Sun Valley*, the civil penalties at issue were imposed by the respective administrative agencies by an ALJ.  Judicial review in both cases was limited to an appeal lodged in conformity to the APA.  The imposition of the civil penalties was reviewed in court only through the prism of a deferential standard of review.  In neither case was the challenger ever afforded an avenue to a jury trial.

The Court holds that HDH's Seventh Amendment challenge fails because it has not been deprived of its right to a jury trial.  Unlike the penalties assessed in the cases discussed above, the judicial review afforded to HDH is not limited to the appellate court with a deferential standard of review.  Rather, HDH has the right to a jury trial before the Court where the ultimate question of its liability for the penalty assessed under IRC § 6700 will be determined de novo.  The Court owes no deference to the IRS's conclusions about HDH's alleged conduct in relation to its purported captive insurance program.  Under § 6703(a), it is the burden of the IRS to establish HDH's liability.

This case stands in stark contrast to the situations encountered in *Atlas Roofing*, *Jarkesy*, *Axalta*, and *Sun Valley*. There, the determination of liability made by an administrative agency was not afforded de novo review in a district court. Consequently, the government was never required to carry its burden of proof on issues of fact relating to liability before an Article III court and jury. Instead, judicial review was limited by a deferential standard that required the court to affirm the fact findings of the respective administrative agency as long as they found support in the record. Not so here. Once HDH initiated a refund action, it began with a clean slate. As in any civil action, the burden is placed on the IRS to prove HDH's liability in this Court in the ordinary course of federal litigation. HDH has not been deprived of its right to a jury trial under the Seventh Amendment.[3]

In each of the cases discussed above, the respective court was required to examine whether the administrative proceedings at issue were encompassed by the Seventh Amendment's public rights exception because there was no available jury trial. This case is different. Because the Court holds that HDH has not been deprived of the right to a jury trial, the Seventh Amendment has not been violated. It is not necessary for the Court to decide whether the IRC § 6700 penalty falls under the public rights exception to the Seventh Amendment.

## IV.    CONCLUSION

For the reasons set forth above, HDH's motions will be denied by Order of Court to follow.

Dated: ___9/23/25___

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

---

[3] The Court does not address whether the statutory requirement to pay 15 percent of the assessed penalty under IRC § 6700 has any implications under the Seventh Amendment. HDH does not challenge the requirement of the payment.