**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HDH GROUP, INC.,**<br>**Plaintiff,**<br>**vs.**<br>**UNITED STATES OF AMERICA,**<br>**Defendant.**<br>______________________________<br>**UNITED STATES OF AMERICA,**<br>**Counterclaim Plaintiff,**<br>**vs.**<br>**HDH GROUP, INC.,**<br>**Counterclaim Defendant.** | **Case No.: 2:24-cv-00988-WSS** |

**MEMORANDUM OF LAW IN SUPPORT OF HDH GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS THE UNITED STATES' COUNTERCLAIM**

## I. INTRODUCTION

Plaintiff, HDH Group, Inc., requests that the Court, pursuant to Fed. R. Civ. P. 56 ("Rule 56"), grant it summary judgment on its claim for the recovery demanded in its Complaint, the return of $989,000 paid to the Defendant as a partial payment of the tax shelter promoter (a fraud penalty) assessed pursuant to § 6700 of the Internal Revenue Code (the "IRC § 6700 Penalty"). Simultaneously, HDH Group, Inc., as Counterclaim Defendant, requests that the Court, pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), dismiss the United States' Counterclaim for payment of the remainder of the assessed IRC § 6700 Penalty. Both the Motion to Dismiss the

United States' Counterclaim and the Motion for Summary Judgment on Plaintiff's claims may be granted at this early juncture in the proceedings because the statutes governing the imposition of the IRC § 6700 Penalty, that is the sole subject of this litigation, are unconstitutional.[1]

In the Court's Opinion supporting its denial of HDH's previously filed Motion for Summary Judgment and Motion to Dismiss (ECF 49), the Court noted in footnote 3 of page 25 of its Opinion that: "The Court does not address whether the statutory requirement to pay 15 percent of the assessed penalty under IRC § 6700 has any implications under the Seventh Amendment. HDH does not challenge the requirement of prepayment." The within Motions are filed in part to raise that very argument. Additionally, Plaintiff raises these Motions again now because of recent case law out of the 5th Circuit, *AT&T, Inc. v. Federal Communications Comm.*, 149 F.4th 491 (5th Cir. 2025), *cert. granted*, 2026 WL 73092, No. 25-406 (January 9, 2026); *U.S. v. Sagoo,* 2025 WL 2689912, No. 4:24-cv-01159 (N.D. Tex. Sept. 19, 2025), which were authored after HDH filed its last brief with respect to the previous motions and which support Plaintiff's interpretation of *Jarkesy* and require a finding that the statutes at issue are unconstitutional under the Seventh Amendment.[2]

On June 27, 2024, the United States Supreme Court released its decision in *SEC v. Jarkesy*, 603 U.S. 109 (2024). In *Jarkesy*, the Supreme Court held that citizens must be afforded a right to jury trial **prior to** the imposition by the SEC, an agency of the United States, of a fraud penalty which involved private rights rooted in common law with no public rights exception. *Id.* at 125 (emphasis added).

---

[1] Because the argument justifying the motion to dismiss and motion for summary judgment are identical, Plaintiff is filing only this one brief in support of each of the motions.

[2] The same issue before this Court through the motions raised herein is about to be argued before the United States Supreme Court in the case *FCC v. AT&T*, --- S.Ct. ---, 2026 WL 73092 (January 9, 2026). That case from the 5th Circuit, *AT&T, Inc. v. Federal Communications Comm.*, 149 F.4th 491 (5th Cir. 2025), *cert. granted*, 2026 WL 73092, No. 25-406 (January 9, 2026), is discussed in detail later in this brief (see pp. 15-17, *infra.*).

On , July 29, 2025, the Third Circuit decided *Sun Valley Orchards, LLC v. U.S. Department of Labor*, 148 F.4th 121 (3d Cir. 2025), in which it followed the holding in *Jarkesy* In *Sun Valley*, the Third Circuit held that employers are entitled to a jury trial **prior to** the enforcement by the DOL, an agency of the United States, of civil penalties and back wages for violations of wage and facilities requirements under an H-2A job order, a breach of contract action which involved private rights rooted in common law with no public rights exception. *Id.* at 132.

Based on the holdings in *Jarkesy* and *Sun Valley*, USA , through its agency, the Internal Revenue Service, denied HDH its constitutional rights by assessing the IRC § 6700 Penalty (which is rooted in common law fraud) prior to HDH being tried by a jury and by requiring it to pay fifteen percent of the assessed IRC § 6700 Penalty pursuant to IRC § 6703 in order to obtain a jury trial to dispute the unconstitutionally assessed penalty.

It logically follows that because it was unconstitutional to impose the IRC § 6700 Penalty against HDH prior to a jury trial, it **certainly** was unconstitutional to require HDH to pay fifteen percent of the assessed IRC § 6700 Penalty to "buy" its way into district court where a jury trial would take place. HDH, facing a fraud penalty, has a Seventh Amendment right to an **initial** finding of fraud by a jury in a trial presided over by an Article III court. U.S. Const. amend. XII; U.S. Const. art. III **before** any assessment can be made and **before** any payment of such penalty can be required. U.S. Const. amend. XII; U.S. Const. art. III

Any jury trial that could occur moving forward as a result of HDH's Complaint in this case would be too late because both *Jarkesy* and *Sun Valley* require that HDH be provided with a jury trial **before** the penalty can be imposed. When the IRS requires a 15% prepayment, it confirms that it has made its assessment and now intends to impose the penalty. This sentiment is

also exemplified by the fact that the only alternative to paying the 15% prepayment is to wait for the IRS to impose the penalty by going to collection proceedings.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to present the defense of failure to state a claim upon which relief can be granted through a motion to dismiss. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, plaintiff (in this case, the counterclaim Plaintiff United States of America) is obligated to provide reasons that it is entitled to relief beyond labels, mere legal conclusions, and/or a list of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The facts alleged "must be enough to raise a right to relief above the speculative level." *Id.* (citing 5 C. Wright & Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). Further, the plaintiff's complaint must have more than facts "'that merely create a suspicion [of] a legally cognizable right of action'." *Id.* (citing 5 C. Wright & Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)).

Federal Rule of Civil Procedure 56 requires a court to grant summary judgment when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A moving party is not required to support its motion with affidavits or similar materials to negate the nonmoving party's claim. *Celotext Corp. v. Catrett*, 477 U.S. 317 (1986). Instead, once a party moving for summary judgment has shown that there are no genuine issues of material fact, the burden shifts to the nonmoving party to show specific, genuine factual issues. *Celotex* at 322. Additionally, when the contentions in a case raise questions of law, a court can utilize a motion for summary judgement to decide the questions of law. *Dupree v. Younger*, 598 U.S. 729, 737 (2023).

## III. RELEVANT PROCEDURAL BACKGROUND

HDH originally filed a Motion for Summary Judgment (ECF No. 26) and a Motion to Dismiss Counterclaim (ECF No. 25), both of which were denied. (ECF No. 49). In its Opinion, the Court held that the statutory scheme at issue implicates the Seventh Amendment because the elements of IRC § 6700 sound in fraud, a "prototypical common law cause of action," (ECF. No. 49, p. 23 fn. 2) but does not violate the Seventh Amendment because it does not deprive HDH of its right to a jury trial. (ECF No. 49, p. 2 and p. 25).

The Court analyzed several cases in reaching its holding: *Jarkesy*; *Sun Valley*; *Atlas Roofing Co.* v. *Occupational Safety and Health Review Commission*, 430 U.S. 442 (1977); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989); and *Axalta Coating Systems LLC v. Federal Aviation Administration*, 144 F. 4th 467 (3d Cir. 2025). The courts in each one of those cases, including the United States Supreme Court in *Jarkesy*, applied a two-prong test to determine if there had been a Seventh Amendment violation. The threshold issue in each of those cases was the first prong of the *Jarkesy* test, whether the case implicated the Seventh Amendment. If the case implicated the Seventh Amendment, the second prong considered whether the "public rights" exception to Article III jurisdiction applies which permits Congress to assign certain matters to agencies for adjudication even though such proceedings would not afford the right to a jury trial.

In the instant case, the Court ruled on the first prong of the test that the Seventh Amendment was implicated because the elements of the IRC § 6700 Penalty sound in fraud, a prototypical common law cause of action. (ECF No. 49, p. 23 and fn. 2). The Court also found that HDH was not deprived of its right to a jury trial because under the refund procedures (including the prepayment requirement), HDH will have a jury trial in district court with de novo

review. (ECF No. 49, pp. 24-25). Therefore, the Court determined it to be unnecessary to decide the second prong of the test: whether the IRC § 6700 penalty falls under the public rights exception to the Seventh Amendment. (ECF No. 49, p. 25). Omitting an analysis of the second prong of the test leaves a gaping hole in the analysis of the instant case.[3]

Further, the Court stated that HDH did not challenge the prepayment requirement of fifteen percent of the assessed penalty, and therefore, the Court did not address whether that requirement has any implications under the Seventh Amendment. (ECF No. 49, p. 25, fn.3). In its Memorandum Order (ECF No. 57) ruling on HDH's Motion for Reconsideration of this issue (ECF No. 53), the Court stated that: (1) HDH abandoned the prepayment issue (ECF No. 57, p.2); (2) *Flora v. United States*, 362 U.S. 145 (1960) is controlling on this issue; (3) HDH did not ask the Court to overrule *Flora*; and (4) as a district court, it would not have been able to overrule *Flora*. (ECF. No. 57, p. 3).

## IV. <u>ARGUMENT</u>

### A. <u>HDH was deprived of its constitutional right to a jury trial prior to the assessment of the IRC § 6700 promoter penalty by the statutory scheme set forth in IRC § 6703(c)(1) which requires payment of at least fifteen percent of the assessed penalty in order to obtain a jury trial.</u>

HDH's challenge to the required prepayment of fifteen percent of the assessed IRC § 6700 Penalty is fundamental to application of the Seventh Amendment to the instant case. As it stands at the current time, 28 U.S.C. § 1346(a)(1) supports the traditional IRS refund procedure of "pay first, litigate later" by requiring full payment of "any penalty claimed to have been

[3] HDH previously addressed the public rights exception in its Memorandum of Law at pp. 12-17 in support of its first Motion for Summary Judgment and Motion to Dismiss. ECF 29. HDH also addressed the public rights exception in its Memorandum of Law in Reply to United States' Opposition to Motion for Summary Judgment and Motion to Dismiss at pp. 14-24. ECF 38. HDH incorporates those arguments by reference as if fully set forth herein.

collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws". For the IRC § 6700 Penalty, the required payment is fifteen percent of the assessed amount. IRC § 6703(c)(1).

This traditional refund procedure is supported by *Flora v. United States*, 362 U.S. 145 (1960). *Flora* considered whether a Federal District Court has jurisdiction under 28 U.S.C. § 1346(a)(1) of a suit by a taxpayer for the refund of income tax payments when the taxpayer did not discharge the entire amount of the tax assessment. In the *Flora* opinion, the United States Supreme Court held that full payment was necessary in order for such court to have jurisdiction. *Id.* In doing so, *Flora* declined to disturb the existing statutory refund procedures. *Id.* at 157.

However, importantly, the *Flora* Court treated and analyzed the full payment issue as a *jurisdictional* matter, not as a constitutional matter. *Id.* at 157. In *Flora*, the Supreme Court did not consider whether the underlying assessment of tax had been made in a constitutionally sound manner. It considered only whether the taxpayer had followed the statutory refund procedures to satisfy the jurisdictional requirements to gain access to a jury trial in federal district court. The *Flora* Court stated:

> [t]his is our second consideration of the case. In the 1957 Term, we decided that full payment of the assessment is a ***jurisdictional prerequisite*** to suit. Subsequently the Court granted a petition for rehearing. The case has been exhaustively briefed and ably argued. After giving the problem our most careful attention, we have concluded that our original disposition of the case was correct.

*Flora*, 362 U.S. 146. (emphasis added) (internal citations omitted).

In order to obtain access to a jury trial in federal district court, HDH had no choice but to take the actions required by parameters of the statutory refund procedures as they existed and were interpreted at that time. Before it could access a jury trial, HDH had to: (1) submit the required fifteen percent partial payment of the fraud penalty unilaterally assessed by the Internal

Revenue Service, (2) file an administrative refund claim with the IRS, and (3) wait until the refund claim was denied by the IRS 26 U.S.C. § 7422(a) and 26 U.S.C. § 6703(c)(1). This refund procedure pursuant to Internal Revenue Code §§ 7422(a) and 6703(c)(1) provides the district court with jurisdiction over the case. The jurisdictional refund procedure is not a procedure that can constitutionally substitute for an initial determination by a jury of whether the fraud penalty should ever have been assessed in the first place.

To make matters worse, administratively assessed penalties are not tied to any revenue loss or collection of revenue (which could invoke the public rights exception), nor as with the IRC § 6700 Penalty, do they have to be tied to any tax return filed by the alleged wrongdoer taxpayer or to any tax deficiency reported by such taxpayer. For that matter, as with HDH, the alleged wrongdoer does not even have to be a taxpayer.

Pursuant to IRC § 7422(e), the IRC § 6700 Penalty can be assessed administratively by the IRS. An administrative penalty can be imposed by the IRS and collected from a taxpayer immediately after notice and demand without any requirement to follow the normal deficiency procedures set forth in IRC § 6703. Such deficiency procedures provide the taxpayer the opportunity to dispute proposed assessment of tax and penalty in Tax Court prior to the proposed assessment becoming final and before the IRS can unleash its power to collect any amounts of the proposed deficiency.

These problems do not exist for penalties that are not administratively assessed such as the civil fraud penalty set forth in IRC § 6663 and the accuracy-related penalty set forth in IRC § 6662. Those penalties are related to a tax return filed by an actual taxpayer (which makes them related to revenue and revenue collection, thereby subject to the public rights exception) but also

are imposed by the IRS through deficiency procedures whereby the taxpayer can obtain a jury trial before the penalty actually is assessed.

To add to the constitutional violations caused by the assessment of the IRC § 6700 Penalty, and in stark contrast to the deficiency procedures, the review of HDH's claim for refund was another completely administrative procedure of the IRS. The administrative refund review process again did not provide for any type of hearing or official proceeding whereby HDH, an alleged promoter, could offer evidence in a neutral forum (Tax Court) or could be heard by any fact finder in a jury trial in an Article III court. The decision regarding whether to grant the refund was in the sole discretion of the IRS. To top off this scenario, HDH had to "buy" the privilege of filing this case in district court in order to have a jury determine if HDH actually committed the wrong under IRC § 6700 as alleged by the IRS.

Surely, the Supreme Court did not intend for its opinion in *Flora* to create, or to condone, such an unconstitutional chain of events because it would be akin to a police officer arresting an alleged wrongdoer for an alleged crime, and without a jury trial to determine guilt or innocence, placing the alleged wrongdoer in prison for a term determined only by the arresting officer, and then making the alleged wrongdoer serve fifteen percent of that prison term before he is given a jury trial to test his guilt or innocence.

In the instant case, HDH is only an *alleged* wrongdoer accused of wrongdoing (making false or fraudulent statements) by an IRS auditor who calculated the punishment amount and demanded payment of fifteen percent of that amount before the IRS was required to provide any proof of the alleged wrongdoing. The prepayment requirement at issue in the instant case essentially required HDH to serve a sentence before HDH was constitutionally found guilty.

Rather than overturn *Flora*, HDH logically asserts that Flora is distinguishable from the instant facts in this case and that USA seeks an impermissible overextension of the *Flora* holding which the United States Supreme Court did not intend to happen.

**B. <u>To determine the constitutional right to a jury trial, *Jarkesy* requires the application of *both* prongs of the two-prong test regardless of any standard of review.</u>**

Two recent cases decided by the Third Circuit applied the two-prong test set forth in *Jarkesy* without mentioning or applying *Flora*. In addition to *Sun Valley*, the Third Circuit decided *Axalta Coating Sys. LLC v. Federal Aviation Administration*, 144 F.4th 467 (3d Cir. 2025). In both cases, the Third Circuit determined that the issue implicated the Seventh Amendment, and therefore the first prong of the test was met. *Sun Valley*, 148 F.4th at 128; *Axalta* 144 F.4th at 475. In both cases, the Third Circuit applied the second prong of the two-part test to determine there was a violation of the Seventh Amendment.

In *Sun Valley*, the Third Circuit ruled that the second prong of the two-part test was not met because the case involved a private right—breach of contract . *Sun Valley*, 148 F.4th at 131. The DOL attempted to enforce civil penalties and back wages against employer Sun Valley Orchards for violations of wage and facilities requirements under the H-2A visa program. The program required employers to post wage and benefits offered to foreign guest workers. That information was required to be contained in an H-2A job order. The job order was required to comply with regulations promulgated by the DOL which had the power to enforce those regulations by imposing civil penalties and assessing back wages against employer violators of a job order.

No jury trial was required prior to the imposition of such penalties and back wages, and only the administrative action of the DOL was required. Review of the DOL administrative

action rested with an administrative law judge and any appeal for judicial review of such action was reviewed with a deferential standard.

The employer, Sun Valley Orchards, found itself faced with penalties and back wages assessed by the DOL for alleged violations of the DOL regulations. Not surprisingly, Sun Valley Orchards received no relief through the administrative review process and so it filed an action in federal court for declaratory judgment and injunctive relief seeking a declaration that the administrative imposition by the DOL of the civil penalties and back wages without a jury trial violated the Seventh Amendment.

The Third Circuit fully reviewed both prongs of the two-part *Jarkesy* test. After finding that the Seventh Amendment was implicated, the Third Circuit went on to consider whether the public rights exception applied. *Sun Valley*, 148 F.4th at 128. The DOL argued that the public rights exception should apply because the issue was an immigration matter which traditionally is a public right. The Third Circuit disagreed, analyzing the matter as a breach of contract action between employer and employee, which traditionally is private right. *Id.* at 128. Therefore, the Third Circuit held that the imposition of the civil penalties and back wages violated the Seventh Amendment because Sun Valley Orchards was deprived of a jury trial in a matter in which the public rights exception did not apply. *Id.*

Notably, the Third Circuit mentioned the deferential review appeal standard for the DOL's factual findings but did not consider the issue of de novo review of the constitutional issues as opposed to deferential review of the DOL's factual findings of the alleged violation in its reasoning or decision. Nor did the Third Circuit refuse to review the second prong of the two-part test.

In *Axalta*, the Third Circuit ruled that the second prong of the two-part test was met because the public rights exception applied to the case. *Axalta*, 144 F.4th at 475-76. Axalta Coating was assessed a civil penalty by the Federal Aviation Administration for two violations of the Hazardous Materials Regulations ("HMR") stemming from the way Axalta Coating packaged its materials for transport. The assessment was upheld through the FAA's administrative procedures. Axalta Coating appealed the matter to the Third Circuit under the Administrative Procedures Act (the "APA").

The Third Circuit stated:

> [o]ur review of whether an agency action is in accordance with federal statute and the *Constitution is de novo*. See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 392 (2024) ("Under the APA, it . . . 'remains the responsibility of the court to decide whether the law means what the agency says.'" (quoting Perez v. Mortg. Bankers Ass'n, 575 U.S. 92, 109 (2015) (Scalia, J., concurring in the judgment))). But we must accept an agency's factual findings as conclusive "if they are 'supported by substantial evidence given the record as a whole.'" Crozer-Chester Med. Ctr. v. NLRB, 976 F.3d 276, 283–84 (3d Cir. 2020) (quoting Hertz Corp. v. NLRB, 105 F.3d 868, 872 (3d Cir. 1997)).

*Axalta* at 472-73.

As in *Sun Valley*, the Third Circuit in *Axalta* mentioned the deferential review appeal standard of the FAA's factual findings but differentiated that review from the de novo review of the possible constitutional violation of the Seventh Amendment. *Id.* at 472. For that issue, the Third Circuit reviewed the second prong of the two-part test: whether the public rights doctrine justifies the administrative adjudication of the FAA's enforcement action. *Id.* at 475-76.

In examining the second prong, the Third Circuit in *Axalta* found *Atlas Roofing*, 430 U.S. 442 (1977), to be controlling precedent. Relying on the Supreme Court's holding in *Atlas,*, the Third Circuit determined that the HMR were simply technical standards unknown to common

law, and therefore, the Seventh Amendment was not violated because the enforcement of the HMR by the FAA, a governmental agency, by obtaining a civil monetary penalty against a violator is a public right that Congress may assign to the executive branch for adjudication.

In *Atlas*, the United States Supreme Court held that the Seventh Amendment did not prohibit the administrative adjudication of a civil penalty imposed on two employers by the Occupational Safety and Health Review Commission for alleged violations of safety regulations under the Occupational Safety and Health Act of 1970 ("OSH Act"). *Atlas,* 430 U.S. at 447-48. The regulations had been promulgated by the Secretary of Labor under the authority of the OSH Act. *Id*. The Supreme Court determined that the safety standards created by the OSH Act and related regulations were "unknown to the common law'. *Id.* at 461. The Supreme Court concluded that the assignment of the safety standards for adjudication by the administrative agency did not violate the Seventh Amendment right to a jury trial because the safety standards were "new statutory public rights." *Id*. at 455.

In *Jarkesy*, the Supreme Court discussed *Atlas* and found a "meaningful distinction" between the provisions of the OSH Act which was not a common law cause of action, the fraudulent conveyance cause of action at issue in *Granfinanciera,* and the statutory fraud provisions at issue in *Jarkesy*. 603 U.S. at 136-37.

The Third Circuit in *Axalta* recognized that *Jarkesy* confirmed that a claim under the Seventh Amendment for relief from an administrative adjudication is subject to a two-part analysis. *Axalta*, 144 F.4th at 475. (citing *Jarkesy*, 603 U.S. at 120). A court first considers the "threshold" question whether the "action implicates the Seventh Amendment" because of its common law ancestry or the common-law nature of the remedy sought. *Axalta.* at 475. (citing *Jarkesy*, 603 U.S. at 120). But even if a "case does implicate the Seventh Amendment," the court must "next consider

whether the 'public rights' exception" applies. *Axalta* at 475 (quoting *Jarkesy*, 603 U.S. at 120). The Third Circuit Court explained:

> This inquiry, the Court in *Jarkesy* suggested, is a matter of ascertaining whether an action more closely resembles the essentially common law action in *Granfinanciera*, in which case the public rights doctrine does not apply, or, instead, the action in *Atlas Roofing*, in which case an administrative adjudication does not violate the Seventh Amendment. See *Id*. at 132–40.

*Axalta*, 144 F.4th at 475 (citing *Jarkesy*, 603 U.S. at 132-40).

In *Axalta*, the Third Circuit specifically recognized two considerations that are essential to the instant case. First, the court determined that the right to enforce agency regulations unknown at common law is markedly different from a fraud cause of action like those considered in *Granfinanciera* and *Jarkesy*. *Axalta* at 474. Second, the court recognized that a claim under the Seventh Amendment for relief from an administrative adjudication is subject to the *Jarkesy* two-prong test. *Id*. at 475. In the instant case, although this Court ruled that the cause of action met the first prong because it implicated the Seventh Amendment, this Court declined to even consider the second prong. (ECF 49 p. 22-25).

Moreover, each of the cases relied upon by this Court appropriately analyzed **both prongs** of the two-prong test as mandated by *Jarkesy*. In each of those cases, the outcome of the second prong was determined by whether the cause of action met the public rights exception because the action was not rooted in common law (*Atlas* and *Axalta*) or whether the cause of action failed the public rights exception because, like the instant case, the action was rooted in common law (*Granfinanciera, Jarkesy, and Sun Valley*). Unlike the Court's opinion in the case at bar, none of the opinions in the aforementioned cases mentioned the judicial standard of review, let alone whether the standard should be de novo or deferential. None of those cases held

that a de novo trial cures an unconstitutional assessment or an unconstitutional prepayment requirement.

The instant case must follow the holding in *Sun Valley*, not the holding in *Axalta*, because, like in *Sun Valley*, the fraud cause of action in the instant case is rooted in common law, and therefore, the public rights exception does not apply.

**C. The unconstitutional statutory scheme set forth in IRC § 6703(c)(1) which allows a governmental agency to assess a penalty without a jury trial and which requires payment of at least fifteen percent of that assessed penalty in order to obtain a jury trial, is not cured by a de novo review in district court because the jury trial must take place prior to the original assessment.**

A de novo review by a district court of the imposition of an assessable penalty by the IRS without a jury trial does not cure a violation of the Seventh Amendment. *AT&T, Inc. v. Federal Communications Comm.*, 149 F.4th 491 (5th Cir. 2025), *cert. granted*, 2026 WL 73092, No. 25-406 (January 9, 2026); *U.S. v. Sagoo,* 2025 WL 2689912, No. 4:24-cv-01159 (N.D. Tex. Sept. 19, 2025). In *AT&T*, the Federal Communications Commission (the "Commission") conducted an internal proceeding and found that AT&T violated section 222 of the Telecommunications Act (the "Act") by mishandling customer data. The Commission fined AT&T a forfeiture penalty of 57 million dollars. AT&T sought a review of the forfeiture penalty order, complaining that the in-house adjudication violated the Seventh Amendment to the Constitution because it denied AT&T a jury trial in an Article III court. The Fifth Circuit agreed with AT&T. *AT&T*, 149 F.4th 491.

Section 222 of the Act provides that telecommunications carriers must protect the confidentiality of customer proprietary network information and how that information can be used or disclosed. 47 U.S.C. § 222(a) and (c)(1). Commission regulations further prescribe the responsibilities of the carriers. The Commission assesses forfeiture penalties for violations of

Section 222 of the Act. 47 U.S.C. § 503(b)(3)(A). The Commission adjudicates alleged violations in two ways: either by assigning a case to an administrative law judge or by investigating and adjudicating the case itself. *Id*. The Commission, through its enforcement bureau, investigated and adjudicated the AT&T alleged violation case itself. *AT&T*, 149 F.4th at 494.

The Commission found violations and issued a charging document, Notice of Apparent Liability for Forfeiture ("NAL"), 47 U.S.C. § 503(b)(4)(A), to AT&T to advise it how it violated the law and proposed the penalty. A carrier's only ability to respond to an NAL and to object to the penalty was to do so in writing to the Commission. 47 U.S.C. § 503(b)(4)(C). The Commission alone decides whether to affirm the NAL. Once affirmed, the Commission issues a forfeiture order which it did for the AT&T NAL. A carrier does not receive a hearing or a trial before it incurs a Commission forfeiture order and accompanying penalty. *AT&T*, 149 F.4th at 495.

A carrier can seek review of forfeiture orders in either of two ways. Option one, a carrier can fail to timely pay the penalty, which becomes a debt to the United States. 47 U.S.C. § 504(a). The Commission refers the debt to the United States Attorney General ("DOJ") for a collection action in federal district court. *Id.* If DOJ pursues the action, the carrier is entitled to a trial *de novo*. Or, option two, a carrier can timely pay the penalty and seek review in the appropriate court of appeals. *AT&T,* 149 F.4th at 495. This review challenges only the order's legal validity, but no jury trial is available. *AT&T*, 149 F.4th at 495.

AT&T took the second option, paid the penalty, and sought review by the Fifth Circuit. AT&T challenged the Commission's enforcement regime because the process did not include a jury trial in an Article III court as required by Seventh Amendment. The Fifth Circuit applied the

*Jarkesy* two-prong test and determined that the public rights exception did not apply to save the solely administrative review from being a violation of the Seventh Amendment. *AT&T* at 503-04.

Nonetheless, the Commission argued that there was no constitutional violation because AT&T could have obtained a jury trial by failing to timely pay the forfeiture penalty and waiting to be sued by the DOJ in district court in a collection action where AT&T would have had a jury trial. The Fifth Circuit did not agree that this "back-end" path to a jury trial satisfied AT&T's constitutional right to a jury trial. *AT&T* at 503. The Fifth Circuit granted AT&T's petition and vacated the forfeiture order. *Id.*

The Fifth Circuit explained that by the time the DOJ brings the collection action, if in fact it does bring a collection action, the Commission already would have "adjudged a carrier guilty of violating Section 222 and levied fines" in a completely in-house process whereby the Commission would be acting as prosecutor, jury, and judge. *AT&T* at 503. The Fifth Circuit also pointed out the forfeiture orders "are not mere suggestions." *Id.* at 503.

AT&T had no way to obtain a jury trial prior to the imposition of the forfeiture penalty. To obtain a jury trial, AT&T either had to refuse to pay and wait for the DOJ to bring a collection action (risking that the DOJ does not bring a collection action) or pay the entire penalty and appeal to the appellate court where no jury is available. Finally, the Fifth Circuit stated that the "Commission cites no authority supporting the proposition that the constitutional guarantee of a jury trial is honored by a trial occurring **after** an agency has already found the facts, interpreted the law, adjudged guilt, and levied punishment." *Id.* at 503. (emphasis added). These are exactly the arguments that HDH makes in the instant case.

The Fifth Circuit concluded in *AT&T* that:

1. an "after-the-fact jury trial" does not protect an individual's Seventh Amendment right because the agency already adjudicated liability without the benefit of a neutral factfinder. *Id.* at 503;
2. an after-the-fact trial does not protect an individual's Seventh Amendment right because the adjudication and civil penalties come with "real world impacts," including the threat to either pay or get sued, reputational harm, and administrative offsets. *Id.* at 503; and
3. an after-the-fact trial does not protect an individual's Seventh Amendment right when the after-the-fact trial is the only opportunity for an individual to exercise his or her Seventh Amendment right. *Id.*

In *United States v. Sagoo*, 2025 WL 2689912, No. 4:24-cv-01159 (N.D. Tex. Sept. 19, 2025), the Northern District of Texas followed the holding in *AT&T* and also followed and expanded on the holding in *Jarkesy*. *Sagoo* held that an after-the-fact jury trial did not protect an individual's Seventh Amendment rights. Congress enacted the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5311–5328, which requires record keeping and reporting requirements by U.S. citizens or residents (a "U.S. Person") to disclose financial interests in foreign financial accounts. 31 U.S.C. § 5314(a); 31 C.F.R. § 1010.350(a). The reporting requirements are satisfied by filing a Foreign Bank and Financial Accounts Report ("FBAR") with the IRS. BSA § 5314(a). The IRS is authorized to impose civil penalties for willful failure to comply with the reporting requirements. BSA § 5321(a)(5)(C). No jury trial is required. Once the IRS assesses a penalty, it becomes a nontax debt to the United States and the government can initiate litigation to collect them.

Sagoo, a U.S. Person, held financial interests in several foreign financial accounts. Sagoo allegedly failed to meet the reporting requirements by not timely filing FBARs with the IRS for

the years that she held those interests. *Sagoo* at *2. The IRS administratively assessed a penalty against Sagoo for willfully failing to report her foreign financial interests and sent Sagoo a notice of the assessed FBAR penalties and a demand for payment. Sagoo did not pay the assessed FBAR penalties. The Government filed a collection action in the Fifth Circuit seeking to reduce the assessment to judgment pursuant to 31 U.S.C. § 5321(a)(5)(C). Sagoo moved to dismiss the government's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Germane to the instant case, Sagoo argued that the IRS acted in violation of the Seventh Amendment because she did not receive a jury trial prior to the assessment of the FBAR penalty, contending that the Fifth Circuit case was an action to reduce an already assessed penalty to judgment and not one to determine whether the penalty should have been assessed. *Sagoo* at *3. In other words, as HDH does in the instant case regarding a refund procedure, Sagoo argued that the IRS's **underlying assessment** was invalid because the Seventh Amendment guarantees a jury trial in an Article III court ***before*** a penalty can be assessed. *Id.* at *3.

The government conceded that following *Jarkesy*, Sagoo was entitled to a jury trial because the Seventh Amendment is implicated when the IRS seeks FBAR penalties and did not contend that the public rights exception applied. *Sagoo* at *3. The government argued that there was no Seventh Amendment violation because Sagoo could request a jury trial as part of the district court proceedings. *Id.* at *3.

As in *AT&T*, the government in *Sagoo* could not and did not cite to any authority "supporting the proposition that the constitutional guarantee of a jury trial is honored by a trial occurring *after* an agency has already found the facts, interpreted the law, adjudged guilt, and levied punishment." *Sagoo* at *3-4 (citing *AT&T,* 135 F.4th at 242 (emphasis added)). For the same three reasons as the Fifth Circuit held in *AT&T*, the *Sagoo* court held that a jury trial that

follows an agency's assessment of civil penalties violates the Seventh Amendment right to a jury trial. *Sagoo*, 2025 WL 2689912.

*Sagoo* reasoned that first, an "after-the-fact jury trial" does not protect an individual's Seventh Amendment right because the IRS already adjudicated liability without the benefit of a neutral factfinder, with the IRS acting "as prosecutor, jury, and judge." *Id.* at *3. The IRS investigated Sagoo, determined that she was liable, and assessed a penalty based on its own factual conclusions which deprived Sagoo of her right to a neutral factfinder in a suit at common law as required by *Jarkesy*. *Id.* at *3.

Second, the court determined that trial held after-the-fact does not protect a party's Seventh Amendment right "because the adjudication and civil penalties come with 'real-world impacts,'" such as the threat to either pay or get sued, reputational harm, and administrative offsets. *Id.* at *4. In essence, the FBAR penalty assessment by the IRS produced the real-world consequence of enabling the IRS to collect the FBAR penalties through administrative offsets before a jury ever determined that Sagoo was liable for those penalties. *Id.* at *4.

Third, *Sagoo* found that an after-the-fact trial cannot protect one's constitutional right under the Seventh Amendment "when the after-the-fact trial is the only opportunity for an individual to exercise her Seventh Amendment right." *Id.* at *4 (citing *AT&T*, 135 F.4th at 241–42). Like in the instant case, Sagoo had access to an Article III court with a jury *only after* the penalty had been assessed, and even then, her ability to gain access to a jury trial was through the review procedures which were subject to whether or not the IRS chose to bring an action to convert the penalty into a judgment. As held in *AT&T*, "defy[ing] a multi-million dollar penalty" and "wait[ing] for DOJ to sue" just to gain access to Seventh Amendment rights is unconstitutional. *AT&T*, 149 F.4th at 503.

The same issues as those found in *AT&T* and *Sagoo* exist in the instant case. The HDH case involves an issue at common law which the Court has found implicates the Seventh Amendment. (ECF No. 49). Here, the Court failed to analyze the second prong of the two-part test because it determined that an after-the-fact do novo jury trial did not violate the Seventh Amendment. The Fifth Circuit, in persuasive and well-reasoned opinions in *AT&T* and *Sagoo*, held the opposite.

In the instant case, as in *AT&T* and *Sagoo*, the IRS did not cite any authority to support its position that a jury trial that would take place in district court after HDH had already been assessed the IRC § 6700 Penalty by the IRS satisfied the Seventh Amendment right to a jury trial. The IRS administratively found the facts, interpreted the law, judged HDH to be liable for the IRC § 6700 Penalty, and meted out punishment without any check on its authority. In other words, the IRS acted as prosecutor, jury, and judge, running afoul of *Jarkesy*.

Furthermore, in the instant case, the IRS was permitted to immediately start the collection process for the assessed IRC § 6700 Penalty. There was no way to stop the collection process except by entering the refund process, paying a partial amount of the assessed IRC § 6700 Penalty and bringing suit in district court. Alternatively, HDH could have refused to pay the assessed IRC § 6700 Penalty and waited for the collection process to provide a collection due process hearing which could lead to a Tax Court case (which is an Article II court, not an Article III court), which finally could lead to district court.

But, like the *Sagoo* case, in which Sagoo had to sit and wait for the government entity to commence a collection action in district court or had to pay the full amount of the penalty to obtain a de novo review by an appellate court without a jury, there simply was no practical way for HDH to have obtained even an after-the-fact jury trial when it was unconstitutionally denied

a jury trial prior to the assessment of the IRC § 6700 Penalty.

## V. CONCLUSION

IRC Sections 7422(a) and 6703(c)(1) do not provide Plaintiff with a trial by jury before a penalty is imposed as mandated by the Seventh Amendment to the United States Constitution and the United States Supreme Court in *SEC v. Jarkesy*, 603 U.S. 109 (2024). Additionally, in violation of the Seventh Amendment, pursuant to IRC Section 6703(c)(1), Plaintiff was required to prepay a portion of the IRC § 6700 Penalty imposed by an agency of the government without a trial by jury in order to obtain a jury trial. Accordingly, application of these statutes in the instant matter is unconstitutional and Plaintiff's Motion to Dismiss under Rule 12(b)(6) and Motion for Summary Judgment under Rule 56 should both be granted.

Respectfully Submitted,

/s/ Ralph Minto, Jr.
Ralph Minto, Jr.
PA Id. No. 51746

David B. Spear
PA Id. No. 62133

Michelle L. Kopnski
PA Id. No. 52096

Minto Law Group, LLC
Stone Quarry Crossing
811 Camp Horne Road, Suite 320
Pittsburgh, PA 15237
412-201-5525
rminto@mintolaw.com
dspear@mintolaw.com
mkopnski@mintolaw.com

Counsel for Plaintiff