**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

HDH GROUP, INC.,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

---

UNITED STATES OF AMERICA,

Counter-Claimant,

v.

HDH GROUP, INC.,

Counterclaim Defendant.

Case No. 2:24-CV-00988

**UNITED STATES' RESPONSE IN OPPOSITION TO HDH'S SECOND MOTION TO DISMISS AND SECOND MOTION FOR SUMMARY JUDGMENT**

Rather than answering the United States' counterclaim, HDH filed, under the guise of a Second Motion to Dismiss and a Second Motion for Summary Judgment, yet another request for the same relief that this Court already denied via disposition of HDH's First Motions to Dismiss and for Summary Judgment and HDH's Motion for Reconsideration. These motions are improper, and the Court should not consider them on the merits—especially the Second Motion to Dismiss, which is explicitly barred by Fed. R. Civ. P. 12(g).

To the extent the Court decides to consider HDH's duplicative, successive motions here, the Court should deny both motions because HDH is wrong on the merits.

## I. HDH's Second Motions are improper and should not be considered.

HDH already filed a motion to dismiss and a motion for summary judgment, raising essentially the same arguments and seeking identical relief. ECF Nos. 25, 26. But "[s]uccessive applications for what is essentially the same thing . . . is not generally how litigation works." *Khalil v. Trump*, 793 F. Supp. 3d 630, 633 (D.N.J. 2025). And "when a party does try to make a successive filing, courts generally hold that there are no do-overs." *Id.* Such holdings "are a basic part of the architecture of our legal system" and "serve critical functions." *Id.* at 634. The Third Circuit, like other courts across the nation, generally disfavors "piecemeal litigation." *In re Essar Steel Minnesota LLC*, 607 B.R. 409, 415 (D. Del. 2019). Accordingly, "courts do not allow a litigant to take a second bite at the apple any time the litigant loses a motion." *IQVIA, Inc. v. Veeva Sys., Inc.*, No. 2:17-CV-00177-CCC-MF, 2021 WL 12319550, at *7 (D.N.J. Jan. 15, 2021), *rev'd and vacated*, No. CV1700177JXNJSA, 2022 WL 17990836 (D.N.J. Dec. 29, 2022).

Having already filed (and been denied) a motion for reconsideration on its first motions for summary judgment and dismissal on the same grounds, these filings are HDH's attempt to get a *third* bite at the apple. After the Court denied its First Motion to Dismiss, First Motion for Summary Judgment, and Motion for Reconsideration, HDH had two options: it could have moved for certification of an interlocutory appeal, *see* 28 U.S.C. § 1292(b), or it could proceed with the case until a final, appealable order was entered, and then filed an appeal of that order. HDH did neither. Filing repetitive, successive motions is not the proper procedure, and the Court should decline to consider the motions.

### *A. HDH's Second Motion to Dismiss is barred by Rule 12(g) and should not be considered by the Court.*

The Federal Rules of Civil Procedure are clear that, except in specific circumstances not present here, successive motions to dismiss are not permitted. Rule 12(g)(2) states that "[e]xcept

as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The Third Circuit has clearly stated that the "procedural bar of Rule 12(g) . . . covers all motions to dismiss for failure to state a claim, regardless of the grounds asserted." *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 321 (3d Cir. 2015). And because "no exception to Rule 12(g)(2) covers [HDH's] successive motion, it [is] improper to consider that motion." *Id.* at 320-21. HDH has either misunderstood or ignored the Federal Rules and binding Third Circuit precedent, which "[do] not permit a party to file duplicative, successive motions to dismiss under Rule 12(b)(6)," *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1078 (E.D. Pa. 2017), as HDH has done here. Because HDH's Second Motion to Dismiss violates Rule 12(g), it is improper to consider the motion and this Court should "decline[] to consider any of the arguments" set forth in the motion. *Gary v. Hladik Onorato & Federman, LLP*, 509 F. Supp. 3d 368, 375 (W.D. Pa. 2020) (finding that a court "cannot, and should not," consider any arguments set forth in a second Rule 12(b)(6) Motion to Dismiss because the motion violated Rule 12(g)(2)'s restrictions on successive motions to dismiss).

### ***B. HDH's Second Motion for Summary Judgment (filed before discovery has begun) is also improper, and the Court should exercise its discretion not to consider it.***

It is within the Court's discretion to allow a party to file a renewed motion for summary judgment. *Doe v. Luzerne Cnty.*, No. CIV.A. 3:08-1155, 2012 WL 1183716, at *1 (M.D. Pa. Apr. 9, 2012). However, such motions are generally disfavored and denied as improper, especially where intervening discovery has not taken place. *See, e.g.*, *Campers' World Int'l, Inc. v. Perry Ellis Int'l, Inc.*, 221 F.R.D. 409, 409–10 (S.D.N.Y. 2004) ("[I]t is improper for a party to file a successive motion for summary judgment which is not based upon new facts, and which seeks to

raise arguments it could have raised in its original motion.”). Courts “do not approve in general the piecemeal consideration of successive motions for summary judgment, since defendants might well normally be held to the requirement that they present their strongest case for summary judgment when the matter is first raised.” *Ware v. Hosp. of the Univ. of Pennsylvania*, No. 2:14-CV-00014, 2016 WL 4702117, at *7 (E.D. Pa. Sept. 8, 2016), *judgment entered*, No. 2:14-CV-00014, 2016 WL 4702116 (E.D. Pa. Sept. 8, 2016), and *aff'd sub nom. Est. of Ware v. Hosp. of the Univ. of Pennsylvania*, 871 F.3d 273 (3d Cir. 2017) (quoting *Allstate Fin. Corp. v. Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961) and citing *Brown v. City of Syracuse*, 673 F.3d 141, 147 n.2 (2d Cir. 2012)).

***C. The out-of-circuit cases that HDH cites were available when HDH filed its previous briefings.***

HDH argues that its renewed motions are appropriate “because of recent case law out of the 5th Circuit . . . authored after HDH filed its last brief with respect to the previous motions.” ECF No. 64 at 2, referring to *AT&T, Inc. v. Federal Communications Comm*., 149 F.4th 491 (5th Cir. 2025), *cert granted*, No. 25-406, 2026 WL 73092 (Jan. 9, 2026); and *United States v. Sagoo*, No. 4:24-cv-01159, 2025 WL 2689912 (N.D. Tex. Sept. 19, 2025). This representation to the Court is incorrect. HDH had ample opportunity to bring these cases to the Court's attention if it believed they were relevant, but did not do so. HDH should not be permitted to file renewed successive motions every time it realizes that it missed, or could have better articulated, a potential argument in its prior briefings. The “last brief” HDH filed with respect to its previous motions was its Motion for Reconsideration and accompanying brief, filed on November 20, 2025, well after both opinions were issued.

The Fifth Circuit's opinion in *AT&T* discussing *Jarkesy*, the timing of jury trials, and Seventh Amendment issues was initially published on April 17, 2025, before HDH filed its reply brief with respect to its First Motions on June 2, 2025.[1] Defendant's Statement of Additional Material and Undisputed Facts, ¶ 18. The district court in the Northern District of Texas filed its opinion in *Sagoo* on September 19, 2025, well in advance of HDH's briefing on its Motion for Reconsideration (ECF No. 53, filed on November 20, 2025). Defendant's Statement of Additional Material and Undisputed Facts, ¶ 21. Moreover, three days before *Sagoo* was published, HDH filed a Notice of Supplemental Authority (ECF No. 47, filed September 16, 2025). Defendant's Statement of Additional Material and Undisputed Facts, ¶ 20. HDH clearly knew the proper procedure for bringing the *AT&T* or *Sagoo* cases to the Court's attention while their motions were pending but simply failed to do so before this Court ruled. And they could have raised both cases in their motion for reconsideration (ECF Nos. 53-54, filed November 20, 2025), but again, did not. Waiting until after this Court issues an adverse decision and then filing an entirely new briefing to raise the same arguments with additional case cites is inefficient, improper, and is not a procedure this Court should endorse.

HDH's representations that it could not have included these cases in any of its prior briefings are incorrect, and the Court should not permit HDH to renew its pleadings based on these cases.

---

[1] The Fifth Circuit published an updated opinion in *AT&T* on August 22, 2025, after a request for an *en banc* rehearing failed to garner sufficient support. However, the updated opinion was substantially similar to the original opinion, with the primary exception that the original opinion included two paragraphs addressing an issue specific to 47 U.S.C. § 504 and Fifth Circuit caselaw, which were excised from the later opinion as unnecessary to the holding. *See AT&T, Inc., v. Fed. Communications Commission*, 149 F.4th 491, n.16 (5th Cir. Aug. 22, 2025). But the Fifth Circuit's holdings related to *Jarkesy* have been published and unchanged since April of last year.

## II. HDH is wrong on the merits.

To the extent the Court does consider HDH's motions, they should both be denied on the merits. First, the motions should be denied on the same grounds set forth in this Court's earlier Opinion denying the First Motion for Summary Judgment and First Motion to Dismiss (ECF No. 49) and Memorandum Order denying the Motion for Reconsideration (ECF No. 57). Having already completed a thorough and substantive analysis of HDH's requests, the Court need not repeat the exercise. The two out-of-circuit cases that HDH cites as additional support for its arguments should not affect the Court's analysis. HDH could have brought up both cases in its earlier briefing but failed to do so; both cases are easily distinguishable; neither is binding on this Court; and both cases currently face reconsideration at different levels of appeal.

### *A. The Court has already ruled on the issues HDH raises, and those rulings should stand because HDH only presents arguments it made or could have made previously.*

HDH's latest motions are more accurately characterized as a Motion for Re-Reconsideration. But the Court has already answered the questions HDH raises, and those answers should stand. Thus, for the reasons the Court described in its prior decisions, the Second Motions should be denied. *See Dorley v. S. Fayette Twp. Sch. Dist.*, No. 2:15-CV-00214, 2016 WL 3102227, at *9 (W.D. Pa. June 1, 2016) (denying a second Motion to Dismiss which "could fairly be construed as a motion for reconsideration because it really just asks the Court to change its prior ruling").

HDH's arguments in its latest motions are the same—purely legal—arguments found in its First Motions and the Motion for Reconsideration: that the § 6700 promoter penalties it faces, and the statutory scheme for their assessment and collection, are unconstitutional under the Seventh Amendment. (ECF No. 26 ¶3; ECF No. 53 ¶8.) The Court has already considered this issue and found otherwise, holding "that the statutory scheme at issue implicates but does not violate the

Seventh Amendment because it does not deprive HDH of its right to a jury trial." Opinion, ECF No. 49 at 2. The Court reiterated this holding at the end of its opinion: "Because the Court holds that HDH has not been deprived of the right to a jury trial, the Seventh Amendment has not been violated." *Id.* at 25. HDH now (again) asks the Court to overturn its earlier decision. HDH Brief, ECF No. 64 at 2.

Similarly, HDH's second attempt to revive its previously abandoned argument that the prepayment requirement violates the Seventh Amendment was already answered by the Court when HDH sought to raise that argument in its Motion for Reconsideration. The Court found that binding Supreme Court precedent precludes a ruling in HDH's favor on this issue. *See* Memorandum Order, ECF No. 57 at 3 ("*Flora* is controlling on the issue of the prepayment requirement. . . . [arguments against the constitutionality of the requirement] would unavoidably run headlong into the United States Supreme Court's decision in *Flora*."). HDH now asks the Court to overturn its earlier decision on this matter as well.

That HDH is simply trying to re-urge arguments it has already made is underscored by its attempt to incorporate large portions of its prior briefing "by reference as if fully set forth herein." HDH Brief, ECF No. 64 at 6 n.3.[2] HDH's attempts to challenge the Court's prior decisions continue throughout its briefing. Apparently unsatisfied with the Court's analysis of two Third Circuit cases, *Axalta Coating Sys. LLC v. Fed. Aviation Admin.*, 144 F.4th 467 (3d Cir. 2025) and

---

[2] Such incorporation "by reference" is not condoned, "because it has the capacity to '"improperly circumvent[ ] ... page limits, unfairly prejudice[ ] the opposing parties, and tax[ ] the Court's resources."' *Debar v. FirstEnergy Corp.*, No. CV 24-5164, 2025 WL 1241903, at *4 (E.D. Pa. Apr. 29, 2025), quoting *Daugherty v. Adams*, No. CV 17-368, 2019 WL 7987859, at *14 (W.D. Pa. Nov. 15, 2019), *report and recommendation adopted sub nom. Daugherty v. Tiversa Holding Corp.*, No. CV 17-368, 2020 WL 467828 (W.D. Pa. Jan. 29, 2020), *aff'd sub nom. LabMD Inc. v. Boback*, 47 F.4th 164 (3d Cir. 2022).

*Sun Valley Orchards, LLC v. U.S. Dep't of Labor*, 148 F.4th 121 (3d Cir. 2025), HDH devotes several pages to re-explaining its own interpretation of those cases to the Court and arguing that the Court's analysis was wrong. *Compare* Court's analysis, Opinion, ECF No. 49 at 18-22, *with* HDH's analysis, HDH Brief, ECF No. 64 at 10-15.

A denial of summary judgment is an interlocutory order and therefore is not "law of the case." *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017). *But see Henkel v. Highgate Hotels, LP*, No. 24-2984, 2026 WL 146695, at *2 (3d Cir. Jan. 20, 2026) (stating that the Third Circuit has "consistently held" that courts are "free to reconsider an earlier denial of summary judgment" under the exceptions to the law of the case doctrine, implying that such orders are otherwise generally subject to law of the case doctrine). Nonetheless, the "underlying principles" of the law of the case doctrine "may provide grounds for declining" to reconsider an interlocutory order. *In re Le-Nature's, Inc.*, No. 8-1518, 2012 WL 363981, at *2 (W.D. Pa. Feb. 2, 2012). The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" and thus "promotes the finality and efficiency of the judicial process." *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 233 (3d Cir. 2002) (internal citations and quotation marks omitted). "The law of the case doctrine does not limit a federal court's power; rather, it directs its exercise of discretion." *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997) (internal citations omitted). The doctrine holds that, "as a rule courts should be loathe to [revisit their prior decisions] in the absence of extraordinary circumstances." *Id.* The Third Circuit has identified three "extraordinary" exceptions that justify reconsideration of a previously decided issue under the law-of-the-case doctrine: when "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous

and would create manifest injustice." *Id.* at 116–17; *Thomas v. Blocker*, No. 21-1943, 2022 WL 2870151, at *3 n.6 (3d Cir. July 21, 2022) (same). District courts may exercise their discretion to apply the law of the case doctrine and its exceptions when reconsidering earlier orders. *See, e.g.*, *Wintjen v. Denny's Inc.*, No. 2:19-CV-00069-CCW, 2024 WL 757085, at *6 (W.D. Pa. Feb. 22, 2024) ("No such extraordinary circumstances exist here. Accordingly, the Court exercises its discretion to apply the law of the case doctrine to its prior rulings.") (denying a motion for summary judgment that asked the court to reconsider earlier interlocutory orders); *Dorley*, 2016 WL 3102227, at *9 (invoking "the law of the case doctrine" when denying a Second Motion to Dismiss).

The principles underlying the law-of-the-case doctrine are also principles that guide courts' approach to litigation generally, by prioritizing efficiency in litigation and working to preserve the resources of the judiciary. "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotations omitted); *see also Akeva L.L.C. v. Adidas Am., Inc.*, 385 F.Supp.2d 559, 565 (M.D.N.C. 2005) ("Public policy favors an end to litigation and recognizes that efficient operation requires the avoidance of re-arguing questions that have already been decided."); *Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001) ("It is hard to imagine a less efficient means to expedite the resolution of cases than to allow the parties unlimited opportunities to seek the same relief simply by conjuring up a new reason to ask for it."). Tellingly, HDH's current "concise statement of material facts" (ECF No. 62) is identical in substance to the statement of facts submitted with its unsuccessful First Motion for Summary Judgment.

These judicial principles, whether applied through the lens of the law-of-the-case doctrine or otherwise, counsel against permitting HDH to argue successive, repetitive motions. Its Second Motion for Summary Judgment and Second Motion to Dismiss should be denied on the same grounds as its First Motions and its Motion for Reconsideration.

### *B. Neither* **AT&T** *nor* **Sagoo** *changes the analysis in this case.*

As noted above, HDH could have raised *AT&T* and *Sagoo* in its earlier briefings if it felt they were relevant but failed to do so. In any case, neither *AT&T* nor *Sagoo* should affect the Court's analysis here. Neither case is binding on this Court, and together they do not represent a change in authority justifying reconsideration. *See United States v. Schwarzbaum*, No. 18-CV-81147-BB, 2026 WL 741852, at *16 (S.D. Fla., Mar. 16, 2026). And to the extent any of the reasoning in these two cases could be considered persuasive, both are easily distinguishable from the circumstances here, where the United States maintains that under the second prong of *Jarkesy*, the public rights exception applies.

*AT&T* does not involve taxes, the Internal Revenue Code, or the Internal Revenue Service at all and therefore does not change the application of the public rights exception in this case. Additionally, the court in *AT&T* found relevant the fact that AT&T's opportunity to obtain a jury trial depended on the government filing suit in district court. *AT&T,* 149 F.4th at 503. Conversely, here, HDH fully controlled its right to obtain a jury trial. The United States, moreover, has sought Supreme Court review of the Fifth Circuit's conclusion that a Seventh Amendment issue arises when an agency determination is followed by a de novo jury trial, arguing that the Fifth Circuit's decision is in direct conflict with binding Supreme Court precedent, *e.g., Meeker & Co. v. Lehigh*

*Valley Railroad*, 236 U.S. 412 (1915).[3] *AT&T* is also in conflict with opinions from other circuits, such as *Sprint Corp. v. FCC*, 151 F.4th 347 (D.C. Cir. 2025) and *Verizon Commc'ns Inc. v. FCC*, 156 F.4th 86 (2d Cir. 2025), which held that—even assuming there was a Seventh Amendment right to a jury trial—there was no constitutional violation because plaintiffs could have had a jury trial in a district court proceeding. As Justice Gorsuch recognized in his *Jarkesy* concurrence, "a committee overseen by Attorney General (soon-to-be Justice) Robert H. Jackson" concluded in 1941 that "any doubts concerning the constitutionality" of an agency's power to assess civil penalties could be resolved by affording the aggrieved person an opportunity to obtain *de novo* review in district court. *Jarkesy*, 603 U.S. at 156 (citation and internal quotations omitted).

*Sagoo* is also irrelevant. A single unpublished out-of-circuit district court case, decided under precedent which is binding on that court but does not apply here, does not provide a reason to overturn this Court's prior decisions. The district court in *Sagoo* relied almost exclusively on the Fifth Circuit's opinion in *AT&T* to reach its holding.[4] *Sagoo* is further distinguishable in that it dealt with FBAR penalties, which are distinct from the tax penalties at issue here and which are assessed under a different statutory scheme (FBAR penalties, for example, are provided for in Title 31 (Money and Finance), rather than as part of the Internal Revenue Code in Title 26, which

---

[3] The Supreme Court granted the United States' petition for certiorari in *AT&T*. *FCC v. AT&T, Inc.*, No. 25-406, 2026 WL 73092 (U.S. Jan. 9, 2026). Oral argument is scheduled to take place April 21, 2026.

[4] The grant of certiorari, combined with the fact that the Fifth Circuit subsequently declined to apply the holding of *AT&T* in a challenge to other government enforcement efforts, demonstrate the shaky ground upon which *Sagoo* sits. *See Ortega v. Off. of the Comptroller of the Currency*, 155 F.4th 394, 409 (5th Cir. 2025) (declining to apply *AT&T* and *Jarkesy* because the Seventh Amendment is not implicated in the government's regulation of the banking sector in contrast to the SEC's regulation of private securities transactions).

governs HDH's penalties). And the court in *Sagoo* did not consider the public rights exception, as the government had not argued it.[5]

### *C. HDH again fails to explain how its arguments about the constitutionality of the tax framework created by Congress can be justified under existing Supreme Court and Third Circuit precedent.*

HDH once again argues that the tax refund framework created by Congress is unconstitutional, but does not address existing caselaw that has repeatedly endorsed the existing procedures.

As the United States previously pointed out in its briefing, the Supreme Court has repeatedly affirmed the Internal Revenue Code's procedures, including those that provide only limited access to the courts for refund suits. *See, e.g.*, *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 11 (2008) (denying a challenge to the tax refund procedures—even where the government did not dispute the unconstitutionality of the underlying tax—and observing that "we see no constitutional problem at all. Congress has indeed established a detailed refund scheme that subjects complaining taxpayers to various requirements before they can bring suit."); *Phillips v. Comm'r*, 283 U.S. 589, 595 (1931) (it has "long been settled" that the United States has the right "to collect its internal revenue by summary administrative proceedings"). Requiring payment before judicial review has been part of the taxation framework throughout—and even predating—the nation's history and has been repeatedly endorsed by the Supreme Court. *See, e.g.*, *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 281-82 (1855) (historical analysis found that rather than permitting "claims for public taxes . . . to become subjects of judicial controversy," such claims were instead "carried out by summary methods of proceeding, and

---

[5] The United States also disagrees with the decision in *Sagoo* and has filed an appeal.

sometimes by systems of fines and penalties”). The “experience of ages” has shown that “the payment of taxes has to be enforced by summary and stringent means against a reluctant and often adverse sentiment; and to do this successfully, other instrumentalities and other modes of procedure are necessary, than those which belong to courts of justice.” *Taylor v. Secor*, 92 U.S. 575, 614 (1875) (citations omitted); *see also Phillips*, 283 U.S. at 599 (“[T]he right of the United States to exact immediate payment and to relegate the taxpayer to a suit for recovery is paramount.”). And in *Flora v. United States*, the Court definitively held that prepayment is a prerequisite to district court consideration of tax refund cases. 362 U.S. at 177. *Flora* thoroughly and carefully considered the prepayment requirement before rejecting the taxpayer’s request to allow prepayment litigation in the district courts. In its order denying HDH’s motion for reconsideration, the Court acknowledged *Flora’s* application to the penalties at issue and HDH has not cited any authority that *Flora’s* prepayment rule does not apply in this context.[6]

HDH attempts to limit *Flora’s* holding to a *jurisdictional* question (ECF No. 62 at 7)—thereby implying a *constitutional* challenge to the prepayment rule is still viable—but fails to provide any analysis or cite any authority in support of that proposition. Regardless, the Supreme Court long ago affirmed the constitutionality of conditioning district court review of taxes and

---

[6] HDH argues that the inapplicability of the Internal Revenue Code’s deficiency procedures (which can lead to prepayment Tax Court review of an IRS assessment) to § 6700 penalties supports the conclusion that a prepayment rule is unconstitutional when applied to § 6700 penalties. However, courts have repeatedly rejected this argument in similar contexts. *See, e.g. Larson v. United States,* 888 F.3d 578, 583-584 (2nd Cir. 2018) (Rejecting a taxpayer’s challenge to the prepayment rule in the context of IRC § 6707 penalties (which require full payment, rather than the 15 percent required under IRC § 6703(c)) and stating “[t]he basis of the *Flora* decisions is that when Congress enacted § 1346(a)(1) it understood the statute to require full-payment to maintain ‘the harmony of our carefully structured twentieth century system of tax litigation,’ not that the full-payment rule only applies when Tax Court review is available.”) *quoting Flora,* 362 U.S. at 176-77.

associated penalties on the pre-payment thereof. *Cheatham*, 92 U.S. at 88-90; *cf. G.M. Leasing Corp. v. United States*, 429 U.S. 338, 352 n.18; *Phillips*, 283 U.S. at 596-97.

Additionally, the Third Circuit has affirmatively recognized the constitutionality of tax refund procedures, including collection that occurs before judicial review:

> In the tax context, the constitutionality of a scheme providing for only post-assessment judicial review is well-settled. Congress has long been empowered to enact legislation authorizing the Executive Branch to assess and collect taxes without prior administrative or judicial review so long as an adequate opportunity is afforded for a later judicial determination of liability.

*Kahn v. United States*, 753 F.2d 1208, 1218 (3d Cir. 1985) (citations omitted).

HDH still does not address how its arguments can be squared with such precedent – likely because its arguments *cannot* be sustained under binding law. HDH's motions therefore must be denied.

### *D. Proceeding with an analysis of this case under the second prong of* **Jarkesy** *would not change the outcome because the public rights exception applies.*

If the Court were to take HDH up on its invitation to disclaim its prior decisions and move forward with an analysis of the second prong of the *Jarkesy* analysis, the outcome would be the same—denial of HDH's motions—because the public rights exception applies to tax matters like those at issue in this case.

The second prong of analysis under *Jarkesy* considers whether the "public rights" exception to Article III jurisdiction applies to permit an agency (here, the IRS) to reach a determination without the involvement of a court. *Sec. & Exch. Comm. v. Jarkesy*, 603 U.S. 109, 120 (2024). This exception covers matters which "historically could have been determined exclusively by the executive and legislative branches, even when they were presented in such form that the judicial power was capable of acting on them." *Jarkesy* at 128 (cleaned up, internal

citations omitted). The Constitution assigns the "power to lay and collect taxes, duties, imposts and excises" to the legislature. U.S. Const. Art. I § 8, cl. 1. And courts have affirmed that "the levy of taxes is not a judicial function. Its exercise, by the constitutions of all the States, and by the theory of our English origin, is exclusively legislative." *Taylor v. Secor*, 92 U.S. 575, 614-15 (1875) (citation omitted). Thus, as matters which historically could have been determined exclusively by the executive and legislative branches, taxes and revenue collection fall within the public rights exception. *Jarkesy* affirmed this point. *See Jarkesy* at 128-29 (the case which introduced the public rights exception, *Murray's Lessee*, was itself a revenue collection case); at 131 (the history of the public rights exception to the Seventh Amendment is based on the "centuries-old rules concerning revenue collection by a sovereign"); at 129 (the principle underlying the public rights exception "extends beyond cases involving the collection of revenue"); and at 152 (the class of public rights "has traditionally included the collection of revenue…") (Gorsuch, J., concurring).

These centuries-old rules reflect the critical role that the collection of revenue plays in government and the attendant disruption that might follow if taxpayers were entitled, as a matter of right, to forestall payment pending judicial review. *Cheatham* v. *United States*, 92 U.S. (2 Otto) 85, 88-89 (1875); *see also Bull* v. *United States*, 295 U.S. 247, 259 (1935) ("taxes are the lifeblood of government, and their prompt and certain availability an imperious need"). Thus, "[i]t is within the undoubted power of Congress to provide any reasonable system for the collection of taxes and the recovery of them when illegal, without a jury trial," so long as due process is satisfied. *Wickwire* v. *Reinecke*, 275 U.S. 101, 105-06 (1927); *accord Jarkesy*, 603 U.S. at 128-29.

Furthermore, Congress can exercise its power over issues that fall under the public rights exception "to impose appropriate obligations and sanction their enforcement by reasonable money

penalties . . . without the necessity of invoking the judicial power." *Oceanic Steam Nav. Co. v. Stranahan*, 214 U.S. 320, 339 (1909). Notably, *Oceanic Steam* based that conclusion on three prior cases involving penalties designed to discourage fraud. *Id.* (citing *Origet v. Hedden*, 155 U.S. 228 (1894); *Passavant* v. *United States*, 148 U.S. 214 (1893); *Bartlett v. Kane*, 57 U.S. (16 How.) 263 (1853)). Indeed, revenue collection and related matters, such as enforcement, represent the heartland of the public rights exception and were the first category of public rights recognized by the Supreme Court in *Jarkesy*. *Silver Moss Properties, LLC v. Comm'r,* No. 10646-21, 165 T.C. 3, at *9 (Aug. 21, 2025) ("The Supreme Court has repeatedly recognized the collection of revenue and related penalties as a public right. It is the quintessential public right because revenue collection falls exclusively within the domain of a sovereign. And…civil tax penalties [are] provided to safeguard the revenue and backstop our system of self-assessment.")

Furthermore, an opinion from this Court, adopted by the Third Circuit, emphasized "that the imposition of a penalty by an executive officer, when authorized by Congress in a field wholly within its competency, such as alien immigration, internal revenue, taxation, and other subjects, does not violate the Fifth Amendment, or any constitutional provision." *McDowell v. Heiner*, 9 F.2d 120, 123 (W.D. Pa. 1925), *aff'd*, 15 F.2d 1015 (3d. Cir. 1926) (citing and analyzing *Oceanic Steam*). The § 6700 penalties at issue in this case are exactly this type of penalty and can thus be imposed by an executive officer without violating "any constitutional provision." *Id.*

Therefore, even if the Court were to abandon its prior decisions in this case and conduct a public rights analysis, it should still deny HDH's motions because the tax penalties at issue fall squarely within the public rights exception.

## III. Conclusion

HDH's repetitive, successive motions are improper and should not be considered by the Court. In any case, HDH is wrong on the merits. The motions should therefore be either disregarded or denied.

Dated: April 2, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General,
Tax Litigation Branch

*/s/ Christopher Rajotte*
ELISABETH K. KRYSKA
Maryland Bar No. 2211280290
CHRISTOPHER RAJOTTE
Florida Bar No. 107742
ALAN D. BAILEY
Kentucky Bar No. 100427
Trial Attorneys, Tax Litigation Branch
Civil Division, U.S. Department of Justice
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-6717 (Kryska)
(202) 514-6491 (Rajotte)
(202) 514-6075 (Bailey)
Fax: (202) 514-6770
Elisabeth.K.Kryska@usdoj.gov
Christopher.Rajotte@usdoj.gov
Alan.Bailey@usdoj.gov