**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HDH GROUP, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>**Defendant.**<br><br>---<br><br>**UNITED STATES OF AMERICA,**<br><br>**Counterclaim Plaintiff,**<br><br>**v.**<br><br>**HDH GROUP, INC.,**<br><br>**Counterclaim Defendant.** | ) | **Case No.: 2:24-cv-00988-WSS** |

**HDH GROUP, INC.'S REPLY TO UNITED STATES' RESPONSE IN OPPOSITION TO HDH'S FEBRUARY 9, 2026, MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Contrary to the assertions made by the United States in its Response in Opposition to HDH's Motion to Dismiss and Motion for Summary Judgement (ECF No. 70) (which take up most of the first ten pages of the total seventeen pages of the Response), HDH did not violate Rule 12(g)(2) by filing the current Motion to Dismiss (ECF No. 60).[1] Nor should HDH be barred from moving for summary judgement because the current Motion for Summary Judgement (ECF No. 61) is not a "renewed" motion for summary judgement as suggested by the United States,

[1] Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

because it raises new issues that have not been addressed or that could not have been raised in any earlier motion.

## II. ARGUMENT

### A. HDH's Motion for Summary Judgement and Motion to Dismiss were proper and should be considered.

HDH's Motion for Summary Judgment (ECF No. 61) and Motion to Dismiss (ECF No. 60) (together, the "Current Motions") present three issues:

> (1) HDH was deprived of its constitutional right to a jury trial prior to the assessment of the IRC § 6700 promoter penalty by the statutory scheme set forth in IRC § 6703(c)(1) which requires payment of at least fifteen percent of the assessed penalty in order to obtain a jury trial.
>
> (2) To determine the constitutional right to a jury trial, *Jarkesy* requires the application of *both* prongs of the two-prong test regardless of any standard of review.
>
> (3) The unconstitutional statutory scheme set forth in IRC § 6703(c)(1) which allows a governmental agency to assess a penalty without a jury trial and which requires payment of at least fifteen percent of that assessed penalty in order to obtain a jury trial, is not cured by a de novo review in district court because the jury trial must take place prior to the original assessment. (ECF No. 64)

The issues presented in the Current Motions were not placed before the Court in HDH's original Motion for Summary Judgment filed on February 2, 2025 (ECF No. 26), nor in HDH's original Motion to Dismiss filed on February 2, 2025 (ECF No. 25), nor in HDH's Motion for Reconsideration filed on November 20, 2025 (ECF No. 53). In fact, these issues—which stem from the Opinion of this Court (ECF No. 49) issued on September 23, 2025, over eighteen months after HDH's Original Motions were filed—did not even exist at the time the original motions were filed.

In the Court's Opinion (ECF No. 49) supporting its denial of HDH's original Motion for Summary Judgment (ECF No. 26) and original Motion to Dismiss (ECF No. 25) (together, the

Original Motions"), the Court noted in footnote 3 of page 25 of its Opinion that: "The Court does not address whether the statutory requirement to pay 15 percent of the assessed penalty under Internal Revenue Code ("IRC") § 6700 has any implications under the Seventh Amendment. HDH does not challenge the requirement of prepayment." This was a clear invitation from the Court for HDH to address this issue and HDH does so now.

In its Motion for Reconsideration (ECF No. 53), HDH asked the Court to examine the prepayment issue believing that the Court may have misunderstood the position asserted by HDH; but the Court declined to do so. (ECF No. 57). Therefore, HDH's issue regarding the prepayment requirement has never been addressed by the Court.

Likewise, HDH's issue regarding the application of the second prong of the two-prong *Jarkesy* test to determine if the IRC § 6700 Penalty falls within the public rights exception has never been addressed by the Court. In fact, the Court short-circuited this issue by ruling that there was no need to apply the second prong because no Constitutional violation was present. (ECF No. 40 at 25).

Finally, the Current Motions are the first instance in which HDH has requested relief based upon the assertion that the unconstitutional statutory scheme set forth in IRC § 6703(c)(1) is not cured by a de novo review in district court because the jury trial must take place prior to the original assessment. This issue arose only after the Court issued its Opinion (ECF No. 49) and was not previously presented by HDH in any of its prior filings.

**B. *AT&T* and *Sagoo* became relevant only after the Court issued its Opinion and should be considered by the Court.**

The United States complains that the cases relied on by HDH in its Current Motions, *AT&T, Inc. v. Federal Communications Comm.*, 149 F.4th 491(5th Cir. 2025), *cert. granted*, 2026

WL 73092, No. 25-406 (January 9, 2026), *argued* April 21, 2026[2] and *United States v. Sagoo*, 2025 WL 2689912, No. 4:24-cv-01159 (N.D. Tex. Sept. 19, 2025), were available when HDH filed its reply brief accompanying its Original Motions and when it filed its Motion for Reconsideration, and therefore, HDH should not be permitted to bring them before the Court in the Current Motions. (ECF No. 70 at 5).

What the United States fails to recognize and bring to the Court's attention is that none of the issues presented in the Current Motions existed at the time HDH filed its Original Motions or at the time it filed its reply brief regarding its Original Motions. Nor were any of the issues presented in the Current Motions at issue in HDH's Motion for Reconsideration.[3] The issues presented in the Current Motions arose only from the Court's Opinion (ECF No. 49). The issues are not motivated by the fact that HDH respectfully disagrees with the rulings in the Opinion, and therefore is trying to get another chance to advance its positions by filing its Current Motions. HDH's Current Motions urge the Court to opine on issues that it declined to consider in the Original Motions and in the Motion for Reconsideration. The Current Motions are the first instance in which the issues presented were ripe for review.

The United States has cited no cases that hold that a litigant loses its right to use legal authority in a subsequent motion if that authority was available, but not used in a prior motion because: (1) the issue presented in a subsequent motion did not exist at the time of the prior motion and briefing, and/or (2) the authority was not relevant to any of the issues presented in

---

[2] A decision is anticipated prior to the Supreme Court's recess in June 2026.

[3] In its Memorandum of Law in Support of HDH Group Inc.'s Motion for Summary Judgement and Motion to Dismiss the United States' Counterclaim, HDH could have more precisely explained, as it does herein, what it meant by the phrase "recent case law out of the 5th Circuit … which were authored after HDH filed its last brief with respect to the previous motions". (ECF No. 64 at 2). The omission of a detailed explanation was unintentional.

the prior motion. Therefore, the Court should consider both *AT&T* and *Sagoo* as authority in the Current Motions.

**C. The "law of the case" doctrine does not apply and the Current Motions fall outside the scope of an analysis under the exceptions to the doctrine.**

The United State correctly stated that "[a] denial of summary judgment is an interlocutory order and therefore is not "law of the case". *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017). (ECF No. 70 at 8). Relying on *Henkel v. Highgate Hotels, LP*, No. 24-2984, 2026 WL 146695, at *2 (3d Cir. Jan. 20, 2026), the United State goes on to extrapolate that although the law of the case doctrine does not apply in this case, nevertheless, the Current Motions should be viewed "through the lens" of the doctrine, and specifically with regard to its exceptions set forth in *Thomas v. Blocker*, No. 21-1943, 2022 WL 2870151, at *3 n.6 (3d Cir. July 21, 2022). (ECF No. 70 at 8-10).

Viewing the Current Motions through the lens of the doctrine presents insurmountable hurdles for the United States. The principle of the doctrine is that when a court decides upon a rule of law, that decision should continue to govern the ***same issue*** in subsequent stages in the same case. *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 233 (3d Cir. 2002). (ECF No. 70 at 8). Thus, under the doctrine, a court would deny a motion that is based on the ***same issue*** as a previous one. The exceptions to the doctrine set forth the when reconsideration of a ***previously decided issue*** would be appropriate. *Thomas* WL 2870151, at *3 n.6 . (ECF No. 70 at 8-9).

Without even reviewing the language of the exceptions, it is clear that the Current Motions fall outside the scope of what the United States urges—*i.e.,* that the Court has already ruled on the issues and that the arguments presented by HDH were made or could have been made earlier. The key words in this analysis are "same issue" and "previously decided issue". No issues contained in the Current Motions met this description. The Current Motions are the

same ***type*** of motions as the Original Motions, but they do not involve the same issues or were not previously decided. As explained above: (1) HDH's issue regarding the prepayment requirement has never been addressed by the Court; (2) HDH's issue regarding the application of the second prong of the two-prong *Jarkesy* test has never been addressed by the Court; (3) HDH's issue regarding de novo review was not in existence prior to the time the Court issued its Opinion and has not been presented by HDH in any of its prior filings.

It is impossible to do as the United States asks and deny HDH's Current Motions on the same grounds as HDH's Original Motions because they were not identical motions. The United State cites no authority that holds that a litigant cannot bring more than one motion to dismiss or more than one motion for summary judgment. Therefore, HDH's Current Motions should be considered.

**D. HDH did not abandon its argument that the prepayment requirement violates the Seventh Amendment.**

HDH did not abandon its argument that the prepayment requirement violates the Seventh Amendment by simply acknowledging that the traditional refund procedure is supported by *Flora v. United States*, 362 U.S. 145 (1960). Both *Flora* and later *Larson v. United States,* 888 F.3d 578 (2nd Cir. 2018), first cited by the United States in its Response, analyzed the prepayment requirement as a jurisdictional matter. In *Larson*, the Court held that it did not have jurisdiction to hear his refund claim because Larson made only a partial payment when full payment of the assessment was required for such jurisdiction. *Larson* 88 F.3d at 583. Neither the *Axalta* court, nor the *Larson* court considered the constitutionality of requiring full payment or partial payment of the assessment (in the form of a punishment for a matter known at common law) prior to a jury trial. Being required to, and actually following, the statutory refund procedures to satisfy the jurisdictional requirements to gain access to a jury trial in federal

district court does not equate to HDH acquiescing its position that the prepayment requirement is a constitutional violation.

**E. HDH is satisfied with the Court's analysis of *Axalta* and *Sun Valley*.**

The United States indicated that HDH was unsatisfied with the Court's analysis of *Axalta* and *Sun Valley*. *Axalta Coating Systems LLC v. Federal Aviation Administration*, 144 F. 4th 467 (3d Cir. 2025); *Sun Valley Orchards, LLC v. U.S. Department of Labor*, 148 F.4th 121 (3d Cir. 2025) (ECF No. 70 at 7). To the contrary, the Third Circuit decided both cases correctly under the second prong of the Jarkesy two-prong test. In *Axalta,* the Third Circuit ruled that there was no constitutional violation because under the second prong, the public rights exception applied because the agency had the right to enforce agency regulations which were unknown at common law. *Axalta,* 144 F.4th at 475. This Court analyzed *Axalta* exactly that way, and so did HDH. In *Sun Valley,* the Third Circuit ruled that there was a constitutional violation because under the second prong, the public rights exception did not apply because the agency was trying to access penalties in a breach of contract action which was a private, not a public right. *Sun Valley,* 148 F.4th at 132. This Court analyzed *Sun Valley* exactly that way, and so did HDH. Had the Court analyzed the instant case under the second prong, it would have considered the fact that a claim for fraud is an action known at common law.

**F. *AT&T* and *Sagoo* are germane to the instant case regarding the issue of whether an "after-the-fact" de novo review protects an individual's constitutional rights.**

It is astonishing that the United States asserted that the reasoning in *AT&T* and *Sagoo* is not persuasive (ECF No. 70 at 10) in light of the fact that both cases are on point in the instant case. Both cases held that an after-the-fact jury trial does not cure a violation of an individual's Seventh Amendment rights. *AT&T,* 149 F.4th at 503; *Sagoo at *4,*. The United States attempts to

distinguish both cases; however, those attempts fall flat and do not make any distinctions regarding de novo review, which is the issue at bar on both cases.

With regard to *AT&T*, the United States asserts that it is distinct from the instant case because *AT&T* does not involve the Internal Revenue Code or the Internal Revenue Service (the "IRS"). (EFC 70, p. 10). However, the United States cites no authority to establish that the IRS should be treated any differently than any other governmental agency that assesses penalties without a jury trial at the outset. As a matter of fact, the IRS tried that angle in *Mann v. U. S.*, 27 F.4th 1138 (6th Cir. 2022), in which it strenuously argued that the Treasury Department and the IRS are different that other federal agencies and should not be subject to the Administrative Procedures Act. However, the Sixth Circuit disagreed concluding that the IRS was no different than any other branch of government when issuing regulations and that it must abide by the same rules. Mann v. U.S., *following Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 55 (2011). The holding in *AT&T* is applicable to all governmental agencies taking the same action, including the IRS.

The United States further attempts to distinguish *AT&T* with the mistaken notion that HDH controlled its right to obtain a jury trial, unlike *AT&T*, which had to wait on the governmental agency to file suit to make it to district court. (ECF No. 70 at 10). First, HDH did not control its right to a jury trial that would have taken place ***prior*** to the assessment of the IRC § 6700 Penalty. Second, HDH could get to district court only by prepaying a portion of the already assessed penalty or by waiting for the IRS (a governmental agency) to take collection action--which of course, was the exact plight of *AT&T*.

Finally, it is irrelevant to the instant case that the United States appealed the decision of the Fifth Circuit in *AT&T*. With some circuits unwilling to hold that a de novo review in district

court cures the constitutional issue of no jury trial prior to assessment of a penalty, but other circuits reaching a different conclusion, it is not at all surprising that the Supreme Court granted certiorari in the *AT&T* case. Specifically the Fifth Circuit in *AT&T*, the D.C. Circuit in *Sprint Corporation v. Federal Communications Commission,* 151 F.4th 347 (D.C. Cir. 2025), and the Second Circuit in *Verizon Communications, Inc. v. Federal Communications Commission*, 156 F.4th 86 (2d Cir., 2025) have ruled differently on whether an eventual de novo review is enough to withstand any constitutional challenge to the imposition of penalties by the FCC. As of this date, a decision has not been issued by the Supreme Court.

The United States also attempts to distinguish *Sagoo* from the case at bar by arguing that FBAR penalties are distinct from tax penalties and are assessed under a different statutory scheme as set forth in the Bank Secrecy Act ("BSA"), 31U.S.C. §§ 5311–5328. These distinctions also fall flat. First, the FBAR penalty may not be exactly the same as a tax penalty; but, the IRC § 6700 Penalty also is not a tax penalty. The IRC § 670 Penalty is a penalty that just so happens to be codified in Title 26, but is solely designed as a punishment for fraud, in a cause of action known at common law. Second, the IRS (the same governmental agency that assesses the IRC § 6700 Penalty). is fully involved with FBAR process. Under the BSA, reporting requirements are satisfied by filing with the IRS. BSA § 5314(a). Further, just as with the IRC § 6700 Penalty, it is the IRS that imposes the FBAR penalty with no jury trial required, which then allows the government to immediately collect the penalty. BSA § 5321(a)(5). This is exactly the process that the IRS follows when it assesses the IRC § 6700 Penalty.

The United States asserts that *Sagoo* is on "shaky ground" because of the grant of certiorari in the *AT&T* case and because the Fifth Circuit in *Ortega v. Off. of the Comptroller of the Currency*, 155 F.4th 394 (5th Cir. 2025), declined to apply *AT&T* and *Jarkesy*. (ECF No. 70

at 11, fn. 4). But, the reason the *Ortega* court declined to apply those cases was only because it held that the public rights exception applies to federal banking enforcement actions, Id. at 409. The *Ortega* court did not opine that either *AT&T* or *Sagoo* were wrongly decided; those cases were not applicable because the Seventh Amendment was not implicated. Further, there is no way for anyone to determine at this stage of the review process whether *Sagoo* is on "shaky ground" any more anyone can determine if *AT&T* is on "shaky ground".

**G. The United States again rehashes the same argument, but fails to explain how the statutory framework for tax refund claims can constitutionally substitute for an initial determination by a jury of whether a fraud penalty should ever have been assessed in the first place.**

The jurisdictional refund procedure is not a procedure that can constitutionally substitute for an initial determination by a jury of whether the fraud penalty, designed to punish an alleged wrongdoer in an action known at common law, should ever have been assessed in the first place. The United States once again points out that the statutory refund procedure designed for the collection of tax revenue, has been determined to be constitutional, in particular by *Flora*. (ECF No. 70 at 12-13). However, the United States continues to purposefully ignore that the refund procedure tramples HDH's constitutional right to a jury trial prior to the penalty being assessed and certainly prior to being forced to make any payment of the assessed penalty.

The United States can attempt to justify the traditional refund procedure for the collection of tax revenue under *Flora*. However, it has not presented one scintilla of authority interpreting *Flora*, or any other case, to demonstrate that the traditional refund procedure is constitutionally sound when the IRS inflicts a penalty on a taxpayer, not to collect revenue for the good of citizens or for remedial purposes, but only to punish the alleged wrongdoer with a claim known at common law, all prior to the alleged wrongdoer being able to exercise his constitutional right to a jury trial. *Jarkesy* teaches that in that case, the Seventh Amendment provides for a jury trial

in an Article III court for the initial adjudication of the penalty. *Jarkesy*, 603 U.S. at 109. The challenge in the instant case is the ability of the IRS to assess the IRC § 6700 Penalty without a jury trial.

Although the reason is unclear, the United States continues to rely on *Kahn v. United States*, 753 F.2d 1208 (3d Cir. 1985) which held that the tax refund procedures are constitutional. The *Kahn* case was not litigated on the right to a jury trial pursuant to the Seventh Amendment and it did not include a claim known at common law, making *Kahn* distinguishable from the instant case.

The statutory refund procedure of IRC § 6703(c)(1), standing wholly alone, may meet the purely "jurisdictional" requirement, it certainly fails to pass muster under constitutional scrutiny. HDH should not have been subjected to the refund procedure because there never should have been any amount to refund. HDH should have had a jury trial prior to any assessment of the IRC § 6700 Penalty to determine whether the penalty actually should be assessed.

**H. Analysis of this case under the second prong of *Jarkesy* would determine that the public rights exception does not apply.**

The Court declined to analyze the second prong of the *Jarkesy* two-prong test to determine whether the public rights exception applies to this case. (ECF No. 70 at 25). If the Court were to apply the second prong, it would find that the public rights exception does not apply. The outcome of the second prong depends on whether or not the cause of action is rooted in common law. If it is not rooted in common law, the public rights exception applies and a jury trial is not required. If the cause of action is rooted in common law, as in the instant case, the public rights exception does not apply and a jury trial is required.

In its Response (ECF No. 70), the United States describes the public rights exception and its historic application to the collection of revenue stating:

> "[i]t is within the undoubted power of Congress to provide any reasonable system for the collection of taxes and the recovery of them when illegal, without a jury trial," ***so long as due process is satisfied.*** *Wickwire* v. *Reinecke*, 275 U.S. 101, 105-06 (1927); *accord Jarkesy*, 603 U.S. at 128-29. (ECF No. 70 at 15). (*Emphasis added)*

Instead of bolstering the position asserted by the United States, this statement supports HDH's argument by pinpointing the central issue challenging this historic application after Ja*rkesy:* it is impossible to provide due process when the constitutional right to a jury trial of a party facing liability for penalties is being trampled. The United States does not provide any ideas, nor does it cite any case law that holds otherwise.

As developed over the years, public rights are a narrow class of matters, including the collection of revenue, which have been defined and limited by history. *Jarkesy*, 603 U.S. at 129-30. Federal courts, including this Court and the Third Circuit, have consistently followed the traditional public rights "rule" that imposition of a penalty in matters including the collection of revenue can be assigned by Congress by an executive officer. *McDowell v. Heiner*, 9 F.2d 120, 123 (W.D. Pa. 1925), *aff 'd*, 15 F.2d 1015 (3d. Cir. 1926).

However, after *Jarkesy*, blind adherence to the historical "rule" is no longer appropriate. Instead, as in *Jarkesy*, the appropriate analysis is the two-prong test established in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) and *Tull v. United States*, 481 U.S. 412 (1987): (1) does the action resemble a traditional common law claim which historically would have required a jury trial; and (2) does the public rights exception apply because the action involves a "public right" rather than a "private right".

*Granfinanciera* involved a statutory action for fraudulent conveyance which was a well-known action at common law. *Granfinanciera,* 492 U.S. at 43. As codified in the Bankruptcy Code, the claim permitted a trustee to void certain transfers or obligations made by the debtor

before bankruptcy. 11 U. S. C. §548(a)(2)(A) (1982 ed., Supp. V). Although Congress designated fraudulent conveyance actions "core [bankruptcy] proceedings" and authorized non-Article III bankruptcy judges to hear them without juries, *Granfinanciera* held that this was not permissible under the public rights exception and that such assignment was not dispositive because Congress cannot "conjure away the Seventh Amendment by mandating that traditional legal claims be . . . taken to an administrative tribunal." *Granfinanciera,* 492 U. S. at 50, 52.

*Granfinanciera* examined the substance of the statutory claim for fraudulent conveyance and whether under the principles of *Tull,* the claim implicated the right to a jury trial under the Seventh Amendment, specifically whether the nature of the claim was suit at common law and found that it was. *Id*. at 56. *Granfinanciera* also considered whether fraudulent conveyance actions were so "closely intertwined" with the bankruptcy process that they are highly interdependent and require coordination with fair resolution possible only with a single adjudicator and found that they were not. *Id.* at 54. Accordingly, *Granfinanciera* concluded that fraudulent conveyance actions were "suits at common law" and were not inseparable from the bankruptcy process. Therefore, the public rights exception did not apply and a jury was required even though a claim for fraudulent conveyance had statutory origins. *Id*. at 54, 56.

In *Jarkesy*, the SEC relied on *Atlas Roofing* which the *Jarkesy* Court determined did not apply and even derided it as a case that lacks substance. *Jarkesy*, 603 U.S. at 113, citing *Atlas Roofing Co.* v. *Occupational Safety and Health Review Commission*, 430 U.S. 442 (1977). The *Jarkesy* Court determined that *Atlas Roofing* did not control its decision because *Atlas Roofing* held that that Congress could assign Occupational Safety and Health Act of 1970 (OSHA) adjudications to the governmental agency (Secretary of Labor) because the claims for violations

of safety regulations were "unknown to the common law." 603 U.S. at 25; 430 U.S. at 461. The *Jarkesy* court stated:

> The cases that *Atlas Roofing* relied upon did not extend the public rights exception to "traditional legal claims." *Granfinanciera*, 492 U. S. at 52. Instead, they applied the exception to actions that were "not . . . suit[s] at common law or in the nature of such . . . suit[s]." *Atlas Roofing*, 430 U. S. at 453 (quoting *Jones & Laughlin Steel Corp.*, 301 U. S., at 48); see *Atlas Roofing*, 430 U. S. at 450–451 (discussing, *e.g.*, *Murray's Lessee*, *Ex parte Bakelite Corp.*, *Helvering* v. *Mitchell*, 303 U. S. 391 (1938), and *Oceanic Steam Navigation Co*.).

*Jarkesy*, 603 U.S. at 137-138.

This quote underscores the *Jarkesy* holding that the public rights exception applies only to actions that are not traditional legal clams based upon common law. The claim against the Plaintiffs for fraudulent conduct, like the claim against Mr. Jarkesy, is a civil penalty that invokes a punitive remedy that J*arkesy* and *Tull* have recognized "could only be enforced in courts of law." *Tull*, 481 U. S. at 422, and which Congress may not withdraw from judicial cognizance. *Murray's Lessee*, 59 U.S. (18 How.) at 284.

*Jarkesy* recognized that the public rights exception applies to revenue collection, i.e. collection of public funds, so that the government can promptly secure its funds. However, the analysis in *Jarkesy*, which included consideration of *Granfinanciera* and *Tull* and soundly rejected *Atlas Roofing*, makes clear that the Seventh Amendment right to a jury trial applies in the instant case because the IRC § 6700 Penalty is not the collection of revenue which is covered by the public rights exception, but rather is a legal remedy, as defined under common law, being assessed solely to punish Plaintiffs. *Jarkesy*, 603 U.S. at 136-7. The Third Circuit has recognized that the civil fraud penalty bears a close resemblance to criminal liability because its purpose is not to compensate for loss, but to punish and deter wrongful conduct. *Asphalt Industries, Inc. v. C.I.R.*, 384 F.2d 229, 234-5 (3rd Cir. 1967). This is private right which is outside the authority of

the IRS to collect revenue, including the authority of the IRS to collect penalties as part of its revenue collection authority, and cannot be removed from judicial review by Congress.

## III. CONCLUSION

Sections 7422(a) and 6703(c)(1) do not provide the Plaintiff with a trial by jury before a penalty is imposed as mandated by the Seventh Amendment to the United States Constitution and the United States Supreme Court in *SEC v. Jarkesy*, 603 U.S. 109 (2024). Accordingly, application of these statutes in the instant matter is unconstitutional and the Plaintiff's Motion to Dismiss under Rule 12(b)(6) and Motion for Summary Judgment under Rule 56 should both be granted.

Respectfully Submitted,
/s/ Ralph Minto, Jr.

Ralph Minto, Jr.
PA Id. No. 51746

David B. Spear
PA Id. No. 62133

Michelle L. Kopnski
PA Id. No. 52096

Minto Law Group, LLC
Stone Quarry Crossing
811 Camp Horne Road, Suite 320
Pittsburgh, PA 15237
412-201-5525

rminto@mintolaw.com
dspear@mintolaw.com
mkopnski@mintolaw.com

Counsel for Plaintiff