**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HDH GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 2:24-CV-00988-WSS |
| UNITED STATES OF AMERICA,<br><br>Counter-Claimant,<br><br>v.<br><br>HDH GROUP, INC.,<br><br>Counterclaim Defendant. | |

**UNITED STATES' SUPPLEMENTAL BRIEF IN COMPLIANCE WITH THE COURT'S JUNE 4, 2026 ORDER**

Pursuant to the Court's June 4, 2026 order (ECF No. 75), the United States submits the following supplemental brief to address how, if at all, *Federal Communications Commission v. AT&T,* 608 U.S.-- --, 146 S. Ct. 1418 (2026), impacts the issues raised by HDH Group, Inc.'s ("HDH") Second Motion to Dismiss the United States' Counterclaim (ECF No. 60) and Second Motion for Summary Judgment (ECF No 61) (collectively the "Second Motions").[1]

[1] HDH previously filed a motion for summary judgment (ECF No. 26) and motion to dismiss the United States' counterclaims (ECF No. 25) (collectively the "First Motions"), arguing that its Seventh Amendment rights were violated by the assessment of § 6700 penalties. The Court denied (continued...)

*AT&T* supports denial of HDH's Second Motions. Most prominently, *AT&T* holds that the Seventh Amendment is not violated where, prior to a party's legal rights and obligations being *conclusively* ascertained and determined, the party has a chance to insist that a jury make the *ultimate* determination of issues of fact. As evidenced by HDH's undisputed right to a de novo jury trial on its liability under IRC § 6700 *in this case*, the assessments at issue here do not violate the Seventh Amendment. Moreover, *AT&T* does nothing to diminish Congress's well-established taxing power, which includes the power to require prepayment of an assessment before jury review of the assessment. Nor does *AT&T* alter the conclusion that the public rights doctrine insulates § 6700 penalty assessments from a finding that the assessments violate the Seventh Amendment.

## I. Relevant Background

In its Second Motions, HDH requests a judgment on its refund claim in the amount of $989,000, plus prejudgment interest, and dismissal of the United States' counterclaim with prejudice. ECF 60-1, 61-1. In doing so, HDH requests that the Court find that "the statutes governing the imposition of the IRC § 6700 penalty…are unconstitutional." ECF No. 64 at 2.[2]

HDH filed a single brief in support of its Second Motions (ECF No. 64), in which it raised three primary arguments: (1) § 6703(c)'s prepayment requirement violates the Seventh Amendment; (2) in denying the First Motions, this Court erred by failing to consider the public rights doctrine (also referred to in this case as the public rights exception), even though this Court

the First Motions in September 2025, *see* ECF No. 49, and a motion for reconsideration of that denial in December 2025. ECF No. 57. The Court held that given HDH's opportunity for de novo jury review in this case to challenge the assessment of § 6700 penalties, the assessments did not deprive HDH of its right to a jury trial and, therefore, did not violate the Seventh Amendment.

[2] HDH never clarifies which statutes it asserts govern the imposition of penalties under IRC § 6700 (and thus which statutes it asserts are unconstitutional), but it could include foundational tax litigation statutes like 28 U.S.C. § 1346 and IRC § 7422.

expressly found it was not necessary to do so; and (3) two out-of-circuit opinions issued last year, *AT&T, Inc. v. FCC,* 149 F.4th 491 (5th Cir. 2025) and *United States v. Sagoo,* No. 4:24-cv-01159, 2025 WL 2689912, (N.D. Tex. Sept. 19, 2025) show that a post-assessment de novo jury trial is not sufficient under the Seventh Amendment. In its brief, HDH notified the Court that the "same issue before this Court through the motions raised herein is about to be argued before the United States Supreme Court['s review of the Fifth Circuit's decision] in *FCC v. AT&T….*" ECF No. 64 at 2 n. 2.

In response, the United States noted that HDH was barred, under Fed. R. Civ. P. 12(g) from again moving to dismiss the United States' counterclaim, and that the Court's denial of HDH's First Motions—which held that a post-assessment jury trial complied with the Seventh Amendment—had effectively become the law of the case. While those arguments alone merit denial of the Second Motions, the United States again explained why Congress's framework for the assessment of taxes and tax penalties—and challenges to such assessments—is constitutional, ECF No. 70 at 12, and that in any event the public rights doctrine applied to the § 6700 penalty assessments. ECF No. 70 at 14. The United States also showed that *AT&T* and *Sagoo* lend no support to HDH's arguments, which the Supreme Court's recent reversal of *AT&T* confirms.

## II. The *AT&T* Opinion

On June 4, the Supreme Court issued its opinion in *AT&T.* The Supreme Court reversed the Fifth Circuit and held that the FCC's forfeiture order did not violate the Seventh Amendment because it did not "definitively resolve" the parties' legal rights and obligations and the factual findings giving rise to the forfeiture order were not "conclusive." *AT&T,* 608 U.S. .-- --, 146 S. Ct. at 1427. The Supreme Court explained that the Seventh Amendment "does not…prescribe at what stage of a legal dispute trial by jury must, if demanded, be had." *Id*. at 1427. Rather, the

Seventh Amendment "requires only that, before legal rights and obligations are *conclusively* ascertained and determined, a party has the chance to insist that a jury make the *ultimate determination* of issues of fact." *Id.* (emphasis added) (internal citations and quotations omitted). Because the process through which the FCC's forfeiture order was issued did not conclusively ascertain and determine AT&T's liability for violating the Communications Act, the Seventh Amendment did not apply to it.

The Supreme Court firmly rejected the reasoning the Fifth Circuit used to vacate the forfeiture order. Rather than "adjudicating liability," the FCC forfeiture order was merely the FCC's "own determination," not a conclusive determination of AT&T's rights and obligations. Therefore, it was not subject to the Seventh Amendment. *AT&T,* 608 U.S. .-- --, 146 S. Ct. at 1429. The Supreme Court further explained that in *Jarkesy* the SEC improperly had the authority to make the "ultimate determination" of the facts establishing liability, when that power should have rested with a jury. *Id.* at 1430. That was not the case in *AT&T* and it is not the case here. The Supreme Court also dismissed the notion that "reputational and practical harms" caused by an administrative action trigger the Seventh Amendment, because they have "never been thought to pose a Seventh Amendment problem." *Id.* at 1430.[3]

## III. Argument

The Supreme Court's *AT&T* decision employs the same reasoning this Court used to deny HDH's First Motions—the Seventh Amendment does not dictate specifically *when* in a legal dispute a jury trial must be held. Rather, the Seventh Amendment requires only that, before its

---

[3] The Supreme Court also addressed the unconstitutional conditions doctrine. *AT&T,* 608 U.S. .-- --, 146 S. Ct. at 1431-432. HDH has never raised that issue and it is not at issue in its Second Motions. Even if it were, as explained below, courts have affirmed the constitutionality of the framework created by Congress to assess and contest tax penalties.

legal rights and obligations are conclusively determined, a party has the chance to insist that a jury make the "ultimate determination of issues of fact." The post-assessment right to a jury trial afforded to HDH by a combination by IRC §§ 6703(c) and 7422 and 28 U.S.C. §§ 1346(a) and 2402 satisfies that standard. That conclusion is not altered by the fact that § 6703(c) requires a taxpayer to pay 15 percent of the assessment to invoke federal court refund jurisdiction. Additionally, *AT&T* does nothing to detract from the United States' argument that the assessment of § 6700 penalties is covered by the public rights doctrine and therefore cannot violate the Seventh Amendment.

### A. *AT&T* Held that a Post-Assessment Jury Trial is Adequate under the Seventh Amendment

In denying HDH's First Motions, this Court held that "HDH's Seventh Amendment challenge fails because it has not been deprived of its right to a jury trial." ECF No. 49 at 24. The Court reasoned that "HDH has the right to a jury trial before the Court where *the ultimate question of its liability* for the penalty assessed under IRC § 6700 will be determined de novo." *Id.* (emphasis added). The Court's denial of HDH's First Motions completely aligns with the Supreme Court's opinion in *AT&T* and applies with equal force to HDH's Second Motions.

The Seventh Amendment "does not…'prescribe at what stage' of a legal dispute 'a trial by jury must, if demanded, be had.'" *AT&T,* 608 U.S. .-- --, 146 S. Ct. at 1427 (quoting *Cap. Traction Co. v. Hof*, 174 U.S. 1, 23 (1899)). Rather, the "Seventh Amendment requires only that, before legal rights are 'conclusively ascertained and determined,' a party has the chance to insist that a jury make the 'ultimate determination of issues of fact.'" *Id.* at 1427 (quoting *Ex parte Peterson,* 253 U.S. 300, 310 (1920)). This holding is consistent with the reasoning of *Jarkesy*. *SEC v. Jarkesy*, 603 U.S. 109, 156 (2024) (Gorsuch, J., concurring) (crediting the 1941 conclusions of "a committee overseen by Attorney General (soon-to-be Justice) Robert H. Jackson" that later

"'review de novo by a Federal district court'" would "resolve any doubts concerning the constitutionality" of an agency's power to assess civil penalties).

Here, it is beyond dispute that HDH's legal rights and obligations were not "conclusively determined and ascertained" by the penalty assessments at issue, and therefore those assessments could not have violated the Seventh Amendment. The procedures governing this case demonstrate that. HDH filed this suit pursuant to the statutory rights granted to it under IRC §§ 6703 and 7422 and 28 U.S.C. § 1346. HDH requested a jury trial, as it was entitled to do under 28 U.S.C. § 2402. The United States has conceded that HDH is entitled to a jury trial on HDH's refund claim and the United States' counterclaim. ECF No. 74 at ¶¶ 1-3. The United States also concedes it has the burden of proof with respect to HDH's liability under § 6700. *Id.* at ¶ 6; IRC § 6703(a).

As a result, the United States will have to prove to a jury that each of the elements of § 6700 has been met for each of the years at issue. This will occur in a de novo proceeding in which no deference whatsoever is given to any factual findings made by the IRS at the administrative stage. If the jury determines that the United States failed to meet its burden for any of the years at issue, the penalty assessments for those years will be abated and any money paid toward the assessments will be refunded or otherwise credited to HDH, with interest. *See e.g.,* 28 U.S.C. § 2411 ("In any judgment of any court…for any overpayment in respect of any internal-revenue tax, interest shall be allowed [at a rate set by IRC § 6621]…from the date of the payment…."); IRC § 6611. Through this process, a jury in a de novo proceeding will make the "ultimate determination on issues of fact" bearing on HDH's liability under § 6700. HDH has specifically admitted that in this case it "has the opportunity for all facts which may be relevant to its" § 6700 liability to be determined by a jury. ECF No. 74 at ¶ 4. The penalty assessment process "cut[] off no defense, interpose[d] no obstacle to a full contestation of the issues, and took no question of fact from the

jury." *AT&T, Inc.*, 608 U.S. .-- --, 146 S. Ct. at 1428 (quoting *Meeker v. Lehigh Valley R. Co.*, 236 U.S. 412, 430 (1915)). This Court has already found as much. ECF No. 49 at 25 ("Once HDH initiated a refund action, it began with a clean slate").

HDH itself acknowledges that the IRS's assessments were not conclusive as to the ultimate question of its liability under IRC § 6700. For instance, HDH repeatedly refers to itself as an "*alleged* wrongdoer" and an "*alleged* promoter," characterizations that belie any argument that the IRS's assessment conclusively ascertained and determined HDH's legal rights and obligations. ECF No. 64 at 8-9 (emphasis added). HDH admits that assessments at issue amount to allegations, which it is permitted to challenge before a jury. ECF No. 74 at ¶ 4. HDH similarly argues that the Seventh Amendment requires a jury (and not the IRS) to make the *initial* finding of § 6700 liability, ECF No. 64 at 3, implying the factual findings underlying assessments at issue were *initial*, rather than final and conclusive. *AT&T, Inc.*, 608 U.S. .-- --, 146 S. Ct. at 1427-28 ("this Court has upheld nonjury adjudications making *initial* findings of fact that are subject to *de novo* review in a subsequent jury trial.") (emphasis added in part). A successful challenge of the assessments in this case will result in their abatement, as if they had never been made.

Because assessment of § 6700 penalties did not determine the *ultimate* question of HDH's liability for violations of § 6700, *AT&T* supports the conclusion that the Seventh Amendment is not violated by the administrative assessment process, as other courts have found. *Thompson v. I.R.S.*, No. S-85-349 MLS, 1986 WL 11156, at *3 (E.D. Cal. Apr. 24, 1986) ("The right to a jury trial only applies when a trial in a suit a common law is conducted and does not apply to administrative proceedings, such as administrative assessment and collection activity."); *Neal v. Regan*, 587 F. Supp. 1558, 1562 (N.D. Ind. 1984) ("Petitioner's primary argument for refund of the penalty is that it was assessed without due process; petitioner asserts that due process required

a jury trial on the issue. This is not correct. There is no right to a jury trial on the issue of assessing a penalty under the Internal Revenue Code."); *cf. Cappozi v. United States,* 980 F.2d 872, 874 (2d Cir. 1992) (Assessment of a § 6700 penalty does not amount to an "action, suit, or proceeding.")

**B. *AT&T* does not Support a Conclusion that IRC § 6703(c)'s Prepayment Requirement Violates the Seventh Amendment**

While *AT&T* pointed to the FCC's inability to collect the forfeiture order administratively as a basis for finding that AT&T's legal obligations were not conclusively determined by the forfeiture order, the opinion provides no support for HDH's assertion that § 6703(c)'s prepayment requirement violates the Seventh Amendment. Rather, under *AT&T*, § 6703(c)'s prepayment requirement is more properly seen as a "statutory condition [] precedent [to] enable a subsequent suit," a "preliminary procedure" to which the Seventh Amendment does not extend. *AT&T,* 608 U.S. .-- --, 146 S. Ct. at 1430; *see also* IRC § 7422(a) (imposing conditions that must be met before the waiver of sovereign immunity for tax refund claims can be invoked); *Flora v. United States*, 362 U.S. 145, 177 (1960) (full payment of an assessment is necessary to invoke federal court refund jurisdiction).

This is consistent with Congress's exclusive authority to determine the circumstances under which the United States' sovereign immunity is waived. The Seventh Amendment right to a jury trial is inapplicable in tax suits. *Lehman v. Nakshian,* 453 U.S. 156, 160 (1981) ("It has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the federal government."). Thus, Congress is permitted to place conditions on its waivers of sovereign immunity. *Lehman,* 453 U.S. at 160; *United States v. Clintwood Elkhorn Min. Co.,* 553 U.S. 1, 11 (2008). Congress's waiver of sovereign immunity for § 6700 refund suit is on the condition that 15% of the assessment is prepaid. See § 6703(c)(1). HDH could have sought prepayment review of the penalty assessments before IRS appeals and potentially the Tax Court

through a Collection Due Process request. *see, e.g.*, *Lemay v. Comm'r*, 119 T.C.M. (CCH) 1389 (T.C. 2020), *aff'd*, No. 20-9001, 2021 WL 3930279 (10th Cir. Sept. 2, 2021) (Tax Court engaging in de novo review of § 6700 penalty liability). HDH chose to seek jury review in the district court through the refund procedures of § 6703. Congress may prescribe prerequisites to such a suit.

Further, unlike HDH, AT&T did not control its access to a de novo jury trial on its liability.[4] Whereas AT&T's access to a de novo trial was dependent on the government filing a collection suit, HDH could initiate a de novo jury trial on its own. Thus, administrative collection would be far more conclusive with respect to a party in AT&T's position than it would be for HDH, which had a clear, statutory path to cutting off collection and obtaining jury review of a disputed assessment. Here, the conclusive determination of HDH's liability under § 6700 will be made in a de novo jury trial initiated by HDH and HDH cannot face administrative collection until after the jury has made its determination. IRC § 6703(c)(1) (prohibiting levies during the pendency of a refund suit to recover § 6700 penalties). Moreover, while it had to pay 15 percent of the assessment to invoke the Court's jurisdiction, *a jury will decide* whether HDH can recover that money, with interest. To the same point, in *AT&T* the Supreme Court *did not* say that in all circumstances the possibility of administrative collection means legal rights and obligations had been conclusively determined, and it certainly did not speak to the effect of administrative collection of taxes or tax penalties.

---

[4] In *AT&T,* the FCC could follow two paths to seek a finding of liability against a regulated entity. First, the FCC could pursue an adjudication before an administrative law judge, which would be subject to limited judicial review in the appeals court. *AT&T,* 608 U.S. .-- --, 146 S. Ct. at 1425. Second, the FCC could issue a forfeiture order imposing a penalty against the regulated entity, leaving the recipient of the forfeiture order with two options: (1) seek review in the appeals court or (2) do nothing. If the forfeiture order recipient did nothing, the FCC could attempt to recover the penalty through a de novo judicial proceeding, if it chose to. *Id* at 1425-26.

In any event, imposing a prepayment requirement prior to jury review of a tax assessment is within Congress's taxing power and is not contrary to the Seventh Amendment. The taxing power has "unique importance" because taxes are essential to the government's existence. *Learning Res., Inc. v. Trump*, 146 S. Ct. 628, 638 (2026); *accord G. M. Leasing Corp. v. United States*, 429 U.S. 338, 350 (1977) ("[T]he collection of taxes [is] the lifeblood of government, and their prompt and certain availability an imperious need." (cleaned up)); *Murray's Lessee v. Hoboken Land & Imp. Co.*, 59 U.S. 272, 282 (1855) ("Imperative necessity has forced a distinction between such claims and all others . . . ."). Congress's power to lay and collect taxes is broad. *Learning Resources, Inc.,* 607 U.S. at 241 (The whole power of taxation rests with Congress); *Brushaber v. Union Pac. R. Co.*, 240 U.S. 1, 12 (1916) ("That the authority conferred upon Congress by § 8 of article 1 'to lay and collect taxes, duties, imposts and excises' is exhaustive and embraces every conceivable power of taxation has never been questioned . . . ."); IRC § 6671(a) ("any reference to tax imposed by [the IRC] shall be deemed also to refer to" assessable penalties, like the § 6700 penalty.) Nothing in Article III suggests courts make tax or tax penalty assessments. *Taylor v. Secor,* 92 U.S. 575, 614–15 (1875) ("The levy of taxes is not a judicial function . . . [it] is exclusively legislative.").

Considering Congress's broad and exclusive taxing power, statutes requiring prepayment prior to jury review of an assessment of tax and tax penalties have, time after time, been held to be constitutional. *Phillips v. Comm'r,* 283 U.S. 589, 595 (1931)("The right of the United States to collect its internal revenue by summary administrative proceedings has been long settled. *Where…adequate opportunity is afforded for a later judicial determination of legal rights*, summary proceedings…have been consistently sustained.") (emphasis added); *Olthausen v. Comm'r,* 273 F.2d 23, 27 (9th Cir. 1959) (holding "there is no right to a jury trial without paying

first as a statutory matter and no right to a jury trial at all in all tax matters as a constitutional requirement."); *Kahn v. United States,* 753 F.2d 1208, 1218 (3d. Cir. 1985) ("Congress has long been empowered to enact legislation authorizing the Executive Branch to assess and collect taxes without prior administrative or judicial review so long as an adequate opportunity is afforded for *a later judicial determination of liability*.") (emphasis added); *Blackburn v. Comm'r*, 681 F.2d 461, 462 (6th Cir. 1982) (holding Seventh Amendment "jury trial issue has been decided many times" based on the rule: "For a taxpayer to obtain a trial by jury, he must pay the tax allegedly owed and sue for a refund in district court" (cleaned up)); *Larson v. United States,* 888 F.3d 578, 585 (2d Cir. 2018) (Reasoning, with respect to a § 6707 penalty, that the "strong governmental interest in the efficient administration of the tax system…allows courts to conclude that adequate summary or administrative prepayment review of tax assessment—with adequate post-payment judicial review—provides the required constitutional procedural protections.")

To the extent these cases resolved due process challenges, as opposed to explicit Seventh Amendment challenges, they are still relevant to resolving HDH's Seventh Amendment claim. *See Jarkesy,* 603 U.S. at 141, (Gorsuch, J., concurring) ("The Seventh Amendment's jury-trial right does not work alone. It operates together with Article III and the Due Process Clause of the Fifth Amendment to limit how the government may go about depriving an individual of life, liberty, or property.") In tax cases, satisfaction of the Due Process Clause is indicative of satisfaction of the Seventh Amendment. *King v. IRS,* No. IP-85-1452-C, 1986 WL 5442 *1, (S.D. Ind. January 23, 1986) (rejecting the taxpayer's Fifth and Seventh Amendment challenges because "[i]t is firmly established that the statutory provisions for a taxpayer to challenge tax assessments and collections are not a deprivation of due process."); *Neal v. Regan*, 587 F. Supp. 1558, 1562 (N.D. Ind. 1984).

Tellingly, HDH has yet to cite any authority which holds that assessing a tax or tax penalty and requiring payment of 15 percent of the assessment before jury review violates the Seventh Amendment. The portion of its primary brief arguing this issue does not cite a single case supporting HDH's position. *See* ECF No. 64 at 6-10. Rather, HDH makes an inapt comparison to the pretrial detention of a criminal defendant. ECF 64 at 9.[5] Moreover, *Jarkesy* does not support that argument (in part because, unlike HDH, the plaintiff in *Jarkesy* never had the opportunity for a de novo jury trial), and neither does *AT&T* (which did not involve Congress's taxing power, and which did not analyze a statutory prepayment requirement).

**C. *AT&T* does not Diminish the Government's Argument that the Public Rights Doctrine Applies to Assessments of § 6700 Penalties**

Because the Supreme Court determined that the Seventh Amendment did not apply to the FCC's forfeiture order, *AT&T* does not discuss the Seventh Amendment's public rights doctrine. Consequently, the existing precedent on the public rights doctrine remains intact. That includes precedent that tax penalties, even if rooted in claims of fraud, may be assessed without the involvement of a jury. *Silver Moss Properties, LLC v. Comm'r,* 165 T.C. 37, 50 (2025) (holding that assessment of fraud penalties under IRC § 6663 is not subject to the Seventh Amendment because they vindicate public rights—protecting the government's revenue, backstopping our system of self-assessment, and deterring fraud against the government); *Helvering v. Mitchell,* 303 U.S. 391, 402 (1938) (The "determination of the facts upon which liability [for a civil fraud penalty] is based may be made by an administrative agency instead of a jury."); *Oceanic Steam*

---

[5] While the right to a jury in criminal trials is governed by the Sixth Amendment, not the Seventh, the Supreme Court has held that pretrial detention is not unconstitutional. *United States v. Salerno*, 481 U.S. 739, 752 (1987). At a more basic level, a criminal defendant cannot get a refund of the time he or she serves before being found not guilty. HDH *can* potentially get a refund of its partial prepayment, along with interest to compensate it for the time the government holds the money.

*Navigation Co. v. Stranahan,* 214 U.S 320, 339 (1909) ("as to internal revenue [and] taxation" Congress is competent to "impose appropriate obligations *and sanction their enforcement by reasonable money penalties*, *giving to executive officers the power to enforce such penalties without the necessity of invoking the judicial power*.") (emphasis added). To that point, HDH has conceded that *Silver Moss* was rightly decided and that the civil fraud penalty of IRC § 6663 is covered by the public rights doctrine because it is "related to revenue and revenue collection." ECF No. 64 at 8. The United States agrees with that conclusion and further asserts that HDH's concession logically extends to § 6700 penalties.

In enacting § 6700, Congress's goal was to improve "public confidence in the fairness of the tax system and in the effectiveness of existing enforcement provisions." S. Rep. No. 97-494 (Vol. 1) at 266, *reprinted in* 1982 U.S.C.C.A.N. 781, 1014. It also sought to reduce the burden abusive tax shelters impose on IRS resources. *Id.* To do so, it sought to target abusive tax shelters "at their source: the organizer and salesman." *Id.* Penalties under § 6700 are tied directly to statements "with respect to the allowability of any deduction or credit, the excludability, of any income, or the securing of any other tax benefit…." IRC § 6700(a)(2)(A). In short, Congress's primary purpose in enacting § 6700 was to protect the system it created to raise revenue,[6] the same purpose the Tax Court pointed to in *Silver Moss* in holding that assessment of § 6663 penalties vindicates a public right not subject to the Seventh Amendment. *Silver Moss,* 165 T.C. at 50 (the collection of revenue "is the quintessential public right because revenue collection falls exclusively

---

[6] HDH itself has conceded that § 6700's purpose is to protect tax revenue. ECF No. 29 at 5 (the § 6700 penalty was enacted "as a deterrent to taxpayers overstating deductions and incorrectly omitting items of income.").

within the domain of a sovereign. And the statutory civil tax fraud penalty, like other civil tax penalties, is provided to safeguard the revenue and backstop our system of self-assessment.”)[7]

HDH’s attempt to draw a distinction between §§ 6663 and 6700 on this issue is unavailing. Both statutes serve the public interest of protecting the government’s revenue. While the amount of a § 6663 penalty is tied to the understatement of tax on a return, it—like § 6700—is fundamentally a means to protect the government fisc. *See Silver Moss,* 165 T.C. at 50 (“And the statutory civil tax fraud penalty, *like other civil tax penalties*, is provided to safeguard the revenue and backstop our system of self-assessment.”) (emphasis added). The assessment of civil tax penalties, even if rooted in claims of fraud, is subject to the public rights doctrine. HDH has conceded this point and *AT&T* does not change it.[8] Consequently, the public rights doctrine provides an independent basis to affirm the constitutionality of the assessment of § 6700 penalties against HDH.[9]

---

[7] *Silver Moss* also shows that HDH’s assertion that because § 6700 penalties are rooted in common law, the public rights doctrine does not apply, is incorrect. ECF No. 64 at 15. *Silver Moss* notes that for purposes of the public rights doctrine there is difference between causes of action arising out of fraud against private partes (like the investors in *Jarkesy*) and fraud against the government, which is what §§ 6663 and 6700 combat. *Silver Moss,* 165 T.C. at 50-51.

[8] HDH incorrectly asserts that a taxpayer challenging a penalty assessed under the IRC’s deficiency procedures “can obtain a jury trial before the penalty is actually assessed.” ECF No. 64 at 9. A taxpayer can obtain pre-assessment review of penalties subject to the deficiency procedures, but only in the Tax Court, where no jury is available. Appeals from the Tax Court go directly to the appeals court. IRC § 7482. These procedures do not violate the Seventh Amendment. *Statland v. United States,* 178 F.3d 465, 472-473 (7th Cir. 1999).

[9] Notably, the Supreme Court just denied a petition for writ of certiorari in *Hirsch v. United States Tax Court,* Case No. 25-739 (*see* June 22, 2026, order list at 2). In that case, the IRS asserted fraud penalties under IRC § 6663(a) and the taxpayers sought review of the penalties in the Tax Court. The taxpayers requested a jury trial, which the Tax Court denied. The taxpayers then sought a writ of mandamus from the Eleventh Circuit directing the Tax Court to hold a jury trial, which was also denied, in part because the taxpayers had not established “the right to relief” (compelling the Tax Court to provide a jury trial on the fraud penalties) “is clear and indisputable.” (Case No. 25-739,

(continued...)

**D. The Fifth Circuit's *AT&T* Opinion and the *Sagoo* Opinion Have Lost any Persuasiveness**

HDH's Second Motions rely heavily on the Fifth Circuit's *AT&T* decision and *Sagoo.* ECF No. 64 at 2 (asserting that *AT&T* and *Sagoo* "support Plaintiff's interpretation of *Jarkesy…*"); ECF No. 64 at 17 (noting that the Fifth Circuit's reasoning, ultimately rejected by the Supreme Court, represented "exactly the arguments HDH makes in the instant case."); *ECF* No. 73 at 5 ("Therefore, the Court should consider *AT&T* and *Sagoo* as authority in the Current Motions."); ECF No. 73 at 7 (The Fifth Circuit *AT&T* decision and *Sagoo* "are on point in the instant case.") Separate from the numerous flaws with that reliance raised in the United States' response brief, the Supreme Court's decision in *AT&T* eliminates any persuasiveness the Fifth Circuit's *AT&T* decision and *Sagoo* may have had.

The Fifth Circuit's decision has been reversed and is no longer good law. The same is true of *Sagoo*, where the district court's reasoning is inextricably intertwined with the Fifth Circuit's decision in *AT&T*. *Sagoo* specifically adopted the three reasons cited by the Fifth Circuit in *AT&T* as to why the FCC's forfeiture order violated the Seventh Amendment (*Sagoo,* 2025 WL 2689912, at *3-4), most of which the Supreme Court addressed and rejected in *AT&T*. Because the Fifth Circuit's *AT&T* decision has been reversed, *Sagoo's* foundations—which were tied to the Fifth Circuit's holding—collapse. Moreover, *AT&T* does not alter the reasons *Sagoo* is distinguishable from this case, including that it did not involve a tax penalty and that the plaintiff in *Sagoo,* unlike HDH, did not have the ability to initiate de novo jury review of the underlying penalty.

---

Brief in Opp. at 4). In their petition to the Supreme Court, the taxpayers framed one of the questions presented as: "Whether the [IRC] violates the Seventh Amendment…by authorizing the IRS to order payment of monetary penalties for fraud without providing the taxpayer a jury trial." (Case No. 25-739, Pet. at (i)). The Supreme Court denied cert notwithstanding the taxpayers' argument that *AT&T* "makes clear that the juryless adjudication of tax fraud penalties violates the Seventh Amendment…." (Case No. 25-739, Pet'r Supp. Brief at 5).

### E. *AT&T* Does not Affect the United States' Argument under Fed. R. Civ. P. 12(g)

In its response to Plaintiffs' Second Motions, the United States pointed out that Fed. R. Civ. P. 12(g) bars HDH from again moving to dismiss under Rule 12(b)(6). *AT&T* does nothing to diminish that argument. Thus, even if the Court grants HDH's motion for summary judgment, that judgment will extend only to HDH's refund claim. Notably, nothing in the Second Motions relates to HDH's liability for violating § 6700,[10] so granting HDH's motion for summary judgment (which there is no basis to do) would not preclude the United States from pursuing a judgment for HDH's § 6700 liability through its counterclaim. *Howell v. United States,* 164 F.3d 523, 526 n.4 (10th Cir. 1998) ("moreover, [] the IRS may bring a judicial tax collection action even if an invalid assessment prevents it from attempting to collect [] in an administrative proceeding.")

## IV. Conclusion

HDH has the opportunity to try this case before a jury in a de novo proceeding and potentially get back its partial prepayment, with interest. HDH's liability under § 6700 has not been "definitively" resolved, nor have its legal obligations been "conclusively ascertained and determined." The "ultimate determination of the issues of fact" bearing on whether HDH violated § 6700 will be up to the jury. As *AT&T* makes clear, the Seventh Amendment does not provide for more than that. The Court should deny HDH's Second Motions.

//

//

//

---

[10] To the extent the Second Motions can be interpreted as seeking a determination that § 6700 (separate and apart from the assessment process) is unconstitutional, HDH has never articulated why, so that issue is not before the Court.

Dated: June 25, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General, Tax Litigation Branch

*/s/ Christopher Rajotte*
ELISABETH K. KRYSKA
Maryland Bar No. 2211280290
CHRISTOPHER RAJOTTE
Florida Bar No. 107742
ALAN D. BAILEY
Kentucky Bar No. 100427
Trial Attorneys
Tax Litigation Branch
Civil Division, Department of Justice
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-6717 (Kryska)
(202) 514-6491 (Rajotte)
(202) 514-6075 (Bailey)
Fax: (202) 514-6770
Elisabeth.K.Kryska@usdoj.gov
Christopher.Rajotte@usdoj.gov
Alan.Bailey@usdoj.gov