**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HDH GROUP, INC.,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**UNITED STATES OF AMERICA,**<br><br>**Defendant.** | ) | **Case No.: 2:24-cv-00988-WSS** |
| **UNITED STATES OF AMERICA,**<br><br>**Counterclaim Plaintiff,**<br><br>**vs.**<br><br>**HDH GROUP, INC.,**<br><br>**Counterclaim Defendant.** | ) | |

**HDH GROUP, INC.'S MEMORANDUM OF LAW REGARDING THE IMPACT OF *FCC V. AT&T* ON ITS PENDING MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff, HDH Group, Inc., requests that the Court, pursuant to Fed. R. Civ. P. 56 ("Rule 56"), grant it summary judgment on its claim for the recovery of $989,000 paid to the Defendant as a partial payment of the tax shelter promoter penalty (a fraud penalty) assessed pursuant to § 6700 of the Internal Revenue Code (the "IRC § 6700 Penalty"). Simultaneously, HDH Group, Inc., as Counterclaim Defendant, requests that the Court, pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), dismiss the United States' Counterclaim for payment of the remainder of the assessed IRC § 6700 Penalty.

## II. RELEVANT PROCEDURAL BACKGROUND

HDH Group, Inc. ("HDH") originally filed a Motion for Summary Judgment (ECF No. 26) and a Motion to Dismiss Counterclaim (ECF No. 25), both of which were denied. (ECF No. 49). In its Opinion, the Court held that the statutory scheme at issue (the "IRS Statutory Scheme") implicates the Seventh Amendment because the elements of IRC § 6700 sound in fraud, a "prototypical common law cause of action," (ECF. No. 49, p. 23 fn. 2) but does not violate the Seventh Amendment because it does not deprive HDH of its right to a jury trial. (ECF No. 49, p. 2 and p. 25).

After the Court denied HDH's Motion for Reconsideration (ECF No. 53 and ECF No. 57), HDH filed the currently pending Motion for Summary Judgment (ECF No. 61) and Motion to Dismiss Counterclaim (ECF No. 60) (together referred to as the "Motions"), accompanied by a Memorandum of Law in Support of such Motions (ECF No. 64).

The Motions were filed for two reasons: first, to address HDH's position that the IRS Statutory Scheme set forth in IRC §6703(c)(1), which requires payment of at least fifteen percent of the assessed § 6700 Penalty in order to obtain a jury trial to determine if the penalty should have been assessed in the first place, violates the Plaintiff's Seventh Amendment rights; and second, to address *AT&T, Inc. v. Federal Communications Comm.*, 149 F.4th 491 (5th Cir. 2025), *cert. granted*, 2026 WL 73092, No. 25-406 (January 9, 2026)[1], a decision on which was pending with the Supreme Court of the United States at the time of such filing. (ECF No. 64, p. 2). On June 4, 2026, the Supreme Court issued its decision reversing the Fifth Circuit and affirming the Second Circuit in *Verizon Communications, Inc. v. Federal Communications Commission*, 156

---

[1] *AT&T, Inc. v. FCC*, 149 F.4th 491 (5th Cir. 2025), *rev'd*, 608 U.S. ---, 2026 WL 1593357 (June 4, 2026).

F.4th 86 (2d Cir., 2025). *FCC v. AT&T, Inc.*, 608 U.S. ---, 2026 WL 1593357 (June 4, 2026). On that same date, the Court sua sponte entered a Scheduling Order ordering the parties to submit supplemental briefing on or before June 25, 2026, addressing how, if at all, the Supreme Court's decision in *FCC v. AT&T* impacts the issues before the Court in the Motions. (ECF No. 75).

## III. IMPACT OF THE SUPREME COURT DECISION IN *FCC v. AT&T* ON THE ISSUES BEFORE THE COURT IN THE HDH MOTIONS

In its *AT&T* opinion, the Supreme clarified the circumstances under which a plaintiff, such as HDH, against whom a penalty is assessed by a governmental agency has a Seventh Amendment constitutional right to a jury trial in an Article III court prior to the imposition of the penalty. The Supreme Court also clarified the circumstances under which a de novo jury trial after the imposition of a penalty adequately protects such a plaintiff's Seventh Amendment rights. These clarifications provided by the Supreme Court in *AT&T* unequivocally establish that HDH had Seventh Amendment rights to a jury trial prior to the assessment by the IRS of the IRC § 6700 penalty, especially prior to being required to make any payments, and that a de novo jury trial that occurs after such assessment is inadequate to protect those rights.

This Court already has held that the close relationship between the IRC § 6700 Penalty and common law fraud confirms that this action is legal in nature. Because this action is legal in nature, the Court further held that the IRC § 6700 Penalty implicates the Seventh Amendment, consequently entitling HDH to a jury trial, but not prior to the assessment by the IRS of the IRC § 6700 Penalty because HDH will receive a de novo jury trial at some point within the statutory framework. (ECF No. 49, p. 23). Further, because the Court held that the elements of the IRC § 6700 Penalty sound in fraud, a prototypical common law cause of action, the Court found it unnecessary to determine if the penalty is in the nature of a tax as argued by the United States. (ECF No. 49, p.2 fn 2).

HDH has consistently argued in its Motions for Summary Judgment and Motions to Dismiss that it was denied its constitutional rights because the IRS assessed the IRC § 6700 Penalty against it prior to HDH being tried by a jury, and further, by requiring it to pay fifteen percent of the assessed IRC § 6700 Penalty pursuant to IRC § 6703(c)(1) in order to obtain a jury trial to dispute the unconstitutionally assessed penalty. (ECF No. 29; ECF No. 38; ECF No. 64, ECF No. 73) . Based on the above-referenced clarifications provided by the Supreme Court in *AT&T,* it is clear that HDH's arguments are correct.

**A. The Supreme Court in *AT&T* granted certiorari to resolve the conflict between the Fifth Circuit in *AT&T, Inc. v. FCC*, 149 F.4th 491 (5th Cir., 2025) and the Second Circuit in *Verizon Communications, Inc. v. Federal Communications Commission*, 156 F.4th 86 (2d Cir., 2025).**

In *AT&T*, the Supreme Court considered the constitutionality of the statutory scheme pursuant to which the Federal Communications Commission (the "FCC") imposes monetary forfeiture penalties under 47 U. S. C. § 503(b)(3) on carriers that the FCC determines to have mishandled consumer data in violation of Section 222 of the Telecommunications Act (the "Act") (together with 47 U.S.C. § 503(b)(3), the "FCC Statutory Scheme"). Specifically, the FCC Statutory Scheme allows the FCC to impose the forfeiture penalty through a totally in-house investigation in a totally administrative process where no jury is available. However, the penalty is collectible by the FCC only after the FCC brings a civil suit and proves its case to a jury in a federal district court trial de novo. 47 U. S. C. § 504(b).

The FCC conducted internal proceedings and found that both AT&T, Inc ("AT&T") and Verizon Communications, Inc. ("Verizon") violated section 222 of the Telecommunications Act (the "Act") by mishandling customer data. The FCC issued notices of apparent liability under § 503(b)(4) assessing a forfeiture penalty of $57 million against AT&T and a forfeiture penalty of $47 million against Verizon. AT&T paid the forfeiture penalty and sought review of

the forfeiture penalty in the Fifth Circuit. Verizon paid the penalty and sought review of the forfeiture penalty in the Second Circuit.[2]

Both AT&T and Verizon complained that the FCC in-house adjudication violated the Seventh Amendment because it denied them a jury trial in an Article III court prior to the imposition of the forfeiture penalty even though the FCC Statutory Scheme eventually provided them with a de novo jury trial. The Fifth Circuit agreed with AT&T that the FCC Statutory Scheme violated the Seventh Amendment. *AT&T*, 149 F.4th 491. The Second Circuit did not agree with Verizon. *Verizon*, 156 F.4th 86 (2d Cir., 2025).[3] The Second Circuit recognized what ultimately would be the crux of the Supreme Court's ruling in *AT&T*—that the FCC Statutory Scheme permits the government to enforce and collect the forfeiture penalty only by a successful federal district court jury trial de novo in which the forfeiture penalty becomes final and a carrier becomes obligated to make payment of the forfeiture penalty. 47 U. S. C. § 504(a); *Verizon*, 156 F.4th at 106. The Supreme Court granted certiorari as to both decisions to resolve the conflict. *AT&T*, 2026 WL 1593357 at *6.

**B. The Specifics of the FCC Statutory Scheme.**

The FCC Statutory Scheme for the assessment of the forfeiture penalty is as follows. Once it has investigated and determined that a carrier has violated Act 222 and therefore is liable to the United States for a forfeiture penalty under 47 U. S. C. § 503(b), the FCC can pursue the forfeiture penalty in either of two ways: (1) a formal adjudication before an administrative law judge (or the FCC itself) who conducts a hearing and may impose the penalty with limited

---

[2] As will be discussed later in this Memorandum, the carriers in AT&T and Verizon were under the mistaken belief that the penalty had to be timely paid in full before review could sought in the court of appeals.

[3] This split of the circuits was included in HDH's Reply to United States Response in Opposition (ECF No. 73, p. 8-9).

judicial review in the appeals court only § 503(b)(3); 5 U. S. C. § 554; 47 U. S. C. § 503(b)(3)(A); or (2) the FCC can handle the procedure itself by issuing a "notice of apparent liability" ("NAL") for the forfeiture penalty containing the suspected violations and the factual basis for those allegations.

A carrier's only ability to respond to an NAL and to object to the penalty was to do so in writing to the FCC. 47 U.S.C. § 503(b)(4)(C). The FCC alone decides whether to affirm the NAL. Once affirmed, the FCC issues a forfeiture order and assesses the forfeiture penalty, which it did for the both the AT&T and Verizon NALs. §§ 503(b)(1), (b)(2)(E). A carrier does not receive a hearing or a trial before it incurs an FCC forfeiture order and accompanying penalty. But, an FCC forfeiture order in and of itself does not definitively resolve the legal obligations of the carrier and the factual findings of the FCC are not conclusive. *AT&T*, 2026 WL 1593357, at *6.

A carrier can seek review of an FCC forfeiture order in either of two ways. Option one, a carrier can seek review in the appropriate court of appeals.[4] 28 U. S. C. § 2342(1). This review challenges only the legal validity of the forfeiture order based on the administrative record, but no jury trial is available. 47 U.S.C. § 402(a); 28 U.S.C. § 2347(a). Or, option two, a carrier can do nothing and simply decline to pay the assessed forfeiture penalty. In that case, the forfeiture penalty becomes a debt to the United States. 47 U.S.C. § 504(a). The FCC refers the debt to the United States Attorney General ("DOJ") for a collection action in a civil suit in federal district court. *Id.* If the DOJ pursues the action—which it actually is not required to do--within five years of the issuance of the order, the carrier is entitled to a trial de novo ("504(a) Trial"). 28 U.S.C. § 2462; 47 U.S.C. § 504(a).

[4] *See* footnote 2 above.

Without a successful 504(a) Trial with a resulting court order, the FCC Statutory Scheme provides no other mechanism for the FCC to enforce and collect the forfeiture penalty. *AT&T*, 2026 WL 1593357, at *4. Until the court issues such an order requiring payment of the forfeiture penalty, any payment made by a carrier is voluntary. *Id.*. Also, until a voluntary payment is made or the court issues such an order requiring payment of the forfeiture penalty, the FCC cannot use the notice of apparent liability to the prejudice of the carrier in other FCC proceedings. 47 U.S.C. § 504(c).

**C. The Fifth Circuit in *AT&T* and Second Circuit in the Supreme Court examined the FCC Statutory Scheme as applied to the AT&T and Verizon forfeiture penalties.**

AT&T took the first option, paid the forfeiture penalty, and sought appellate review of the FCC forfeiture order by the Fifth Circuit. Verizon also took the first option, paid the forfeiture penalty, and sought appellate review of the FCC forfeiture order by the Second Circuit. Both challenged the FCC Statutory Scheme, contending that the process did not include a jury trial in an Article III court as required by Seventh Amendment, with differing results.

In the Fifth Circuit, the FCC argued that there was no constitutional violation because AT&T could have obtained a jury trial by failing to timely pay the forfeiture penalty and waiting to be sued by the DOJ in district court in a collection action. The Fifth Circuit did not agree that this "back-end" path to a jury trial satisfied AT&T's constitutional right because by the time the DOJ brings the collection action, if in fact it does bring a collection action, the FCC already would have "adjudged a carrier guilty of violating Section 222 and levied fines" in a completely in-house process whereby the FCC acted as prosecutor, jury, and judge. *AT&T,* 149 F.4th at 503. The Fifth Circuit granted AT&T's petition for review and vacated the FCC forfeiture order. *Id.*

The Second Circuit took a different approach in *Verizon*, the approach that eventually

was embraced by the Supreme Court in *AT&T*. *Verizon*, 156 F.4th 86; *AT&T*, 2026 WL 1593357. For guidance, the Second Circuit looked to the Seventh Amendment and to *Securities & Exchange Commission v. Jarkesy*, 603 U.S. 109 (2024). *Verizon*, 156 F.4th at 105. In *Jarkesy*, the Supreme Court explained that Seventh Amendment rights extend to statutory claims that are "legal in nature." *Jarkesy* at 122-23. The Supreme Court in *Jarkesy* found that, because the SEC's action was "legal in nature," a jury trial was required. *Jarkesy* at 126.

The Second Circuit assumed for the sake of argument that Verizon had a Seventh Amendment right to trial by jury on the FCC forfeiture order. *Verizon*, 156 F.4th at 105. However, the Second Circuit found no violation of the Seventh Amendment because Verizon could have declined to pay the forfeiture penalty which would have preserved its right to a § 504 Trial under the FCC Statutory Scheme if the FCC sought to enforce and collect the forfeiture penalty. 47 U.S.C. § 503(b)(4) and § 504(a); *Verizon*, 156 F.4th at 105. The Second Circuit differentiated the procedures in *Jarkesy* whereby the SEC could "siphon" its securities fraud claims away from Article III courts and compel payment without a jury trial, and an FCC forfeiture order, which by itself, cannot compel payment. *Verizon*, 156 F. 4th at 106 (citing *Jarkesy*, 603 U.S. at 135). Because the FCC could not compel payment based on the forfeiture order, the Second Circuit denied Verizon's petition for review. *Verizon*, 156 F. 4th at 106.

**D. The Supreme Court examined the FCC Statutory Scheme used to assess a forfeiture penalty against the backdrop of the Fifth Circuit in *AT&T* and the Second Circuit in *Verizon*.**

In *AT&T*, the Supreme Court stated that the Seventh Amendment requires that before a parties' legal rights and obligations are conclusively ascertained and determined, the party must have the opportunity for a jury to make the ultimate determination of the issues of facts. *AT&T*, 2026 WL 1593357 at *6. The Seventh Amendment applies to all suits at common law, which the

Supreme Court described as *all proceedings*, whatever their peculiar form in which legal rights are to be settled. *AT&T*, 2026 WL 1593357, at *6 (quoting *Parsons* v. *Bedford*, 3 Pet. 433, 447 (1830)) (emphasis added). Whatever the proceeding, the Seventh Amendment secures a right to the individual that attaches when legal rights are to be determined. *AT&T*, 2026 WL 1593357, at *4 (citing *Parsons* v. *Armor*, 3 Pet. 413, 425 (1830) and *Lorillard* v. *Pons*, 434 U. S. 575, 583 (1978)). The Supreme Court concluded that although the Seventh Amendment does not prescribe at what stage of a legal dispute a jury trial must take place, it must take place ***before legal rights and obligations are conclusively ascertained and determined.*** *AT&T*, 2026 WL 1593357, at *6 (emphasis added). Further, the Supreme Court opined, legal rights and obligations are conclusively ascertained and determined when they ***create an obligation to pay.*** *Id.* at *6.

The Supreme Court found that there is no violation of the carrier's Seventh Amendment constitutional rights when the FCC issues forfeiture orders without the carrier having access to a jury trial before such issuance because under the FCC Statutory Scheme, forfeiture orders issued under 47 U.S.C. § 503(b)(4) do not definitively resolve the parties' legal obligations, but are simply nonjury adjudications making initial findings of fact that create no obligation for the carrier to pay, and that are subject to de novo review in a subsequent jury trial in an action that the FCC (not the carrier) is required to bring and prove its case. *AT&T*, 2026 WL 1593357, at *6.

The Supreme Court went on to state that the FCC literally has no power to act with just the mere existence of a forfeiture order. *Id.* The FCC Statutory Scheme does not give the FCC the authority to execute on a forfeiture order in any way, nor to seize the assets of a carrier, nor to obtain liens on their property. *Id.* Nor can the FCC hold the existence of a notice of liability or forfeiture order against a regulated party (carrier) under § 504(c) of the Act until the forfeiture order has been paid or there is a final adjudication by a court. *Id.* (citing *Pleasant Broad. Co. v.*

*FCC*, 564 F.2d 496, 500 (CADC 1977)). Additionally, there is no penalty for nonpayment and interest does not accrue on the penalty amount. *Id*. (citing *Pleasant Broad. Co. v. FCC*, 564 F.2d 496, 500 (CADC 1977)).

Because the FCC is powerless to act solely based on a forfeiture order, the carrier does not have to comply with the forfeiture order meaning that it does not have to take any action based on the forfeiture order, including not being required to make any payment of the penalty amount. *AT&T*, 2026 WL 1593357, at *6. Simply put, within the FCC Statutory Scheme, a forfeiture order is simply the FCC's own determination which does not settle the carriers' legal obligations. Therefore, they have no legal effect except to enable the government to bring an action wherein a jury can determine de novo if the carrier has committed the suspected violations. *AT&T*, 2026 WL 1593357, at *7.

Importantly, the Supreme Court stressed that it is the government that is required under § 504 of the Act to bring an action for a jury trial de novo to determine the legal obligations of the carrier. *AT&T*, 2026 WL 1593357 at *7. That burden does not fall to the carrier. *Id.* The government cannot collect a penalty before it successfully proves the carriers' violation in a jury trial. *Id.* The carriers in *AT&T* (AT&T and Verizon) mistakenly thought that the forfeiture order obligated them to pay the penalty, and they paid the penalty, before they filed an action judicial review in their respective appeals court. But, the Supreme Court determined that under the FCC Statutory Scheme, such payment was not required. *Id.*

The Supreme Court differentiated the FCC Statutory Scheme from the unconstitutional penalty procedures found in *Securities and Exchange Commission* v. *Jarkesy*, 603 U. S. 109 (2024) wherein the penalty sought by the SEC for violations of securities law was immediately enforceable by garnishing the alleged violator's wages or by deducting the penalty from his tax

return and where no jury was available to determine the underlying legal violation. *AT&T*, 2026 WL 1593357, at *8. In Jarkesy, the lack of a jury trial to determine the legal rights of the alleged violator before enforcement could take place was fatal.

**E. Issuance of a forfeiture order is a "preliminary procedure" under the FCC Statutory Scheme; assessment of the IRC 6700 penalty creates immediate liability under the IRS Statutory Scheme.**

It is clear from a reading of *AT&T* that the issuance of a forfeiture order by the FCC is only a preliminary procedure that does not establish the legal rights and obligations of a carrier because it does not create an obligation to pay. As such, the government could not take any collection action until it proved its case against the carrier in a de novo jury trial. The Supreme Court stated that the Seventh Amendment does not extend to such "preliminary" procedures. *AT&T*, 2026 WL 1593357, at *8.

Conversely, it follows that the Seventh Amendment extends to the IRS Statutory Scheme pursuant to which the IRC § 6700 Penalty is an immediately assessable penalty which must be paid upon notice and demand of the IRS. 26 U.S.C. § 6671(a). The IRS unilaterally determines and assesses the IRC § 6700 Penalty. The IRS assessment of the penalty is not a preliminary procedure like the issuance of a non-enforceable forfeiture order by the FCC. The unilateral assessment of the IRC § 6700 Penalty is a totally in-house administrative procedure which actually establishes the legal rights and obligations of an alleged promoter, such as HDH, because it creates an immediate obligation to pay, and in turn, creates an immediate right of collection by the IRS.

Unlike the FCC Statutory Scheme in *AT&T*, there is no requirement in the IRS Statutory Scheme that the IRS bring an action for a de novo jury trial to prove its case against the alleged promoter prior to the assessment. The facts as administratively determined by the IRS in its

assessment stand, the legal rights and obligations of the alleged promoter have been determined, and the alleged promoter is now required to make full payment of the assessed penalty, and the IRS is free to collect the assessed penalty.

Once the penalty is unilaterally assessed by the IRS, it is the alleged promoter, not the IRS, who must take action to challenge the assessment, including prepayment of at least a portion of the assessed penalty amount, in order to *eventually* gain access to a de novo jury trial. At that late stage in the IRS Statutory Scheme, the de novo jury trial obtained is not the "suit" required by the Seventh Amendment. With regard to the IRC § 6700 Penalty, the suit to which the Seventh Amendment rights attach is the "proceeding" where the legal rights and obligations of the alleged promoter are to be determined; and that suit must take place before those legal rights and obligations are conclusively ascertained and determined. That proceeding is the assessment by the IRS of the IRC § 6700 Penalty.

**F. HDH followed the procedures set forth in the IRS Statutory Scheme; but, the IRS instituted collection action.**

It is important to recognize in the IRS Statutory Scheme that if the alleged promoter takes no action to challenge the assessment or does not have the funds to make the required prepayments of at least a portion of the assessed penalty amount, the assessment is final. That is not satisfactory under the Supreme Court's rulings in either *Jarkesy* or *AT&T* because in order to eventually obtain access to a jury trial, HDH was obligated to prepay fifteen percent of the IRC § 6700 Penalty and file an administrative refund claim with the IRS where the IRS again unilaterally determines whether to grant HDH's refund claim. IRS 26 U.S.C. § 7422(a); 26 U.S.C. § 6703(c)(1). It should be no surprise that the IRS did not grant HDH's refund claim.

While HDH was waiting for the IRS to make a determination on HDH's refund claim, the IRS started the collection process. Again, this is not satisfactory under the Supreme Court's

rulings in either *Jarkesy* or *AT&T*. Internal Revenue Code § 6703(c)(1) and § 6703(c)(2) govern IRS collection power and the time limitations to which alleged promoters must adhere in order for collection action to be suspended. Internal Revenue Code § 6703(c)(1) provides that all collection activity pertaining to an IRC § 6700 penalty assessment is suspended if the alleged promoter pays fifteen percent or more of the assessed penalty and files a claim for refund within 30 days of the date of the notice and demand of such penalty from the IRS.

The timeline in this case is as follows: On November 13, 2023. HDH received notices of assessment and demand for payment of the IRC § 6700 Penalty for the years ended December 31, 2013, 2014, 2015, 2016, 2017 and 2018. On December 8, 2023, which was within 30 days of receipt of the assessments, HDH paid the required fifteen percent of the assessed penalty amounts. On December 11, 2023, HDH timely filed claims for refund under IRC § 7422 for the amounts paid. As shown by the timeline, HDH complied with the requirements of IRC § 6703(c). The suspended collection activity may be reinstated only if the alleged promoter fails to timely file an action in the district court if the refund action is disallowed.

Nevertheless, without regard to the rules of IRC § 6703, on April 22, 2024, the IRS initiated collection action against HDH for the assessed penalties by issuing "Notices of intent to seize (levy) your property or rights to property." Pl.'s App. of Exs., Ex. 1, ECF 63.[5] After HDH filed an appeal in response to the notices, the IRS finally suspended collection action as required by IRC § 6703(c). But, according to the Supreme Court in *Jarkesy* and *AT&T*, no such collection action should have been taken unless and until the IRS successfully proves that HDH is culpable under IRC § 6700.

[5] *See also* Def.'s App. of Exs., Ex. A, 2025 Decl. of IRS Supervisory Revenue Officer Mary Bailey at ¶ 10, ECF Doc. 69; Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 9 and 10, ECF Doc. 68

## IV. CONCLUSION

The Supreme Court's opinion in *AT&T* reaffirms what HDH has consistently argued: de novo review by a district court of the imposition of an assessable penalty by the IRS without a jury trial does not cure a violation of the Seventh Amendment. The statutory scheme that allows the IRS to assess and collect penalties against promoters without a jury trial and requires that the promoter pay a minimum fifteen percent of the penalty to reach a jury trial is unconstitutional, as evidenced by the Supreme Court's ruling in *Jarkesy* and further reinforced by the Supreme Court's ruling in *AT&T*.

In light of the ruling in *AT&T* and for all the reasons previously addressed in Plaintiff's Motion for Summary Judgment and Motion to Dismiss and related filings, HDH respectfully requests that the Court grant Summary Judgment in favor of HDH on the claim for reimbursement and dismiss the United States' counterclaim against HDH with prejudice.

Respectfully Submitted,

/s/ Ralph Minto, Jr.
Ralph Minto, Jr.
PA Id. No. 51746

David B. Spear
PA Id. No. 62133

Michelle L. Kopnski
PA Id. No. 52096

Minto Law Group, LLC
Stone Quarry Crossing
811 Camp Horne Road, Suite 320
Pittsburgh, PA 15237
412-201-5525
rminto@mintolaw.com
dspear@mintolaw.com
mkopnski@mintolaw.com

Counsel for Plaintiff